**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
**Attorneys for Defendant, Berkshire Life Insurance Company of America**
**Three Gateway Center**
**100 Mulberry Street**
**Newark, NJ 07102-4079**
**(973) 622-7711**

By: _____
        Steven P. Del Mauro

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STUART BITTERMAN, M.D., | : |
| | : |
| Plaintiff, | : |
| | : Civil Action No.  07cv11061 |
| vs. | : |
| | : |
| BERKSHIRE LIFE INSURANCE COMPANY | : |
| OF AMERICA, | : |
| | : |
| Defendant. | : |

## CIVIL ACTION – BRIEF OF BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT

Steven P. Del Mauro,
Of Counsel

Louis P. DiGiaimo,
On Brief

## TABLE OF CONTENTS

PREFATORY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

LEGAL ARGUMENT ................................................................................................ 12

    THE PARTIES' AGREEMENT TO SETTLE
    THIS CASE SHOULD BE ENFORCED.... .................................................................. 12

CONCLUSION ........................................................................................................ 18

## TABLE OF AUTHORITIES

Federal Cases

Delyanis v. Dyna-Empire, Inc.,
    465 F. Supp. 2d 170 (E.D.N.Y. 2006)............................................................13

Garibaldi v. Anixter, Inc.,
    533 F. Supp. 2d 308 (W.D.N.Y. 2008)....................................................12, 13

Powell v. Omnicom,
    497 F.3d 124 (2d Cir. 2007)......................................................................12

United States v. Bank of New York,
    14 F.3d 756 (2d Cir. 1994).........................................................................13

Winston v. Mediafare, Entm't Corp.,
    777 F.2d 78 (2d Cir. 1985).........................................................................12

Wright v. New York State Office of Children and Family Serv.,
    2003 WL 21665633 (N.Y. Sup. 2003)......................................................14, 15

State Cases

Ali-Bawaba.com Inc., v. Nstein Tech. Corp.,
    19 Misc. 3d 1125A (County Ct. 2008).......................................................17

Express Indus. and Terminal Corp. v. New York State Dep't of Transp.,
    93 N.Y.2d 584, 693 N.Y.S.2d 857 (1999)....................................................14

Gaglia v. Nash,
    8 A.D.3d 992, 778 N.Y.S.2d 595 (4th Dep't. 2004)...................................15, 16

Malette v. Chichester,
    568 N.Y.S. 2d 534, 149 Misc.2d 720 (Cty. Crt. 1991)..................................14

Matter of Kaplan,
    529 N.Y.S.2d 158 (2nd Dept. 1988)...........................................................15

Morrison v. Bethlehem Steel Corp.,
    429 N.Y.S. 2d 123 (4th Dep't 1980).......................................................14, 15

Stevens v. Publicis,
    854 N.Y.S.2d 690 (A.D. 2008)...................................................................16

## PREFATORY STATEMENT

On February 12, 2008, the parties to this matter came to a full and complete resolution of all issues involved in this litigation. A final written settlement agreement was negotiated and agreed to by counsel for both parties. Stuart Bitterman, M.D., ("Bitterman") has refused to execute the settlement agreement that was negotiated by his attorney on his behalf. Accordingly, Berkshire Life Insurance Company of America ("Berkshire Life") submits this brief in support of Berkshire Life's motion to enforce the settlement that was agreed to by the parties, and confirmed in writing.

This case was initially filed in New York Supreme Court by plaintiff, Stuart Bitterman, M.D., ("Bitterman"). Thereafter, Berkshire Life removed this case to the United States District Court for the Southern District of New York. Berkshire Life filed its answer, and the parties commenced settlement negotiations. A settlement was reached and was reported to the court on February 12, 2008, at which time the court entered an order of dismissal. The settlement was confirmed by latter dated February 14, 2008, which set forth the material terms of the agreement.

Subsequently, after negotiation of the specific wording of certain terms, a written Settlement Agreement and Complete Release ("Agreement") was agreed to and accepted by Mr. Lipsius, counsel for Bitterman. His email of March 13, 2008 confirms the terms of the Agreement, and states that he is forwarding the Agreement to Bitterman for his signature. Mr. Lipsius also gives instructions for delivery of the settlement check.

As evidenced by Mr. Lipsius' March 13, 2008 email, the parties entered into a binding settlement agreement. For the reasons set forth below, the parties' settlement agreement should be enforced.

1

**STATEMENT OF FACTS**

On October 19, 2007, Bitterman filed a complaint in the Supreme Court of New York, New York County. The complaint alleges that Bitterman is unable to perform the material and substantial duties of his occupation as a dermatologist, and claims entitlement to benefits under a policy of disability income insurance administered by Berkshire Life bearing Policy #H00337962 (the "Policy").

The complaint is brought in four counts. In the first count, Bitterman claims an entitlement to past due disability income benefits from November 1, 2005, through the date of the filing of the complaint. The second count, labeled seeks a cost of living benefit. The third count alleges an entitlement to disability benefits through age 65, and the fourth count alleges bad faith and deceptive settlement practices.

Berkshire Life filed an answer to the complaint, admitting the issuance of the Policy; admitting that Bitterman filed a claim for total disability benefits on or about December 15, 2005; and further admitting that Berkshire Life had not made any payments on that claim. Berkshire Life denied any liability to Bitterman, and sought dismissal of the compliant.

**The Policy**

The policy administered by Berkshire Life provides benefits on account of Total Disability, or Residual Disability (Del Mauro Cert. Exhibit A). The policy defines total disability as:

> **Total disability** means, during the own occupation period, the inability to perform the material and substantial duties of your occupation. After the own occupation period, "total disability" means your inability to engage in any gainful occupation in which you might reasonably be expected to engage, with due regard for your education, training, experience and prior economic status.

The policy defines residual disability as:

2

> **Residual disability** means that due to injury or sickness you are
> unable: (1) to do one or more of your important daily business or
> professional duties; or (2) to perform your duties for the length of
> time that they usually require.

(Del Mauro Cert. Exhibit A). If an insured qualifies for residual disability benefits, the amount

of the residual disability benefit is determined by a formula set forth in the policy. An insured's

monthly earnings during a period of disability are compared to his average monthly earnings

prior to his disability. This ratio is then multiplied by his total disability benefit to determine the

amount of residual disability benefits. For example, if an insured has suffered a 50% loss in

income as a result of his residual disability, he will receive 50% of the total disability benefit. In

order to calculate this ratio, it is important to obtain business and financial documentation to

determine the insured's occupational duties and pre-disability earnings. It is just as important to

obtain business and financial records during the period of disability in order to determine what

occupational duties are being performed, and what loss of income has occurred. Del Mauro Cert.

¶ 6.

**The Claim**

Bitterman submitted a Disability Claimant's Statement dated December 20, 2006,

alleging total disability from "Irritable Bowel Syndrome, Spondylolisthesis, spinal stenosis,

degenerative disc disease, neuroforaminal stenosis, etc." (Del Mauro Cert. Exhibit B) He stated

that the symptoms were first diagnosed in November, 2005, and that he was unable to work from

the "present, due to diagnosis, gradual reduction over the past few years pre-diagnosis." He

stated that he had a greater than 80% reduction in hours, "from in excess of 60 hours per week

pre-disability gradually to fewer than 6 hours per week scheduled and fewer than 10 hours per

week actual." In connection with the Disability Claimant's Statement Bitterman also executed

3

and submitted an Authorization, which would permit Berkshire Life to obtain medical and other records during its investigation of his claim.

Berkshire Life commenced an investigation of his claim and obtained copies of medical records from physicians who treated Bitterman. Berkshire Life also requested that Bitterman provide tax returns and financial records relating to his business. (Del Mauro Cert. Exhibit C).

The documentation reviewed in connection with his claim raised questions as to whether Bitterman had been truthful at the time he submitted his original application for the policy. In particular, he failed to disclose the full value of other disability insurance he had in effect at the time of the application. These misrepresentations, if fraudulent, effected his entitlement to the issuance of the policy. Berkshire Life continued its investigation. Del Mauro Cert. ¶ 9.

Medical records were obtained and reviewed, and it was determined that the records did not substantiate restrictions and limitations that would prevent Bitterman from performing the duties of his occupation on a full-time basis. In addition, as Bitterman acknowledged that he was working and performing some of the duties of his occupation, Berkshire Life sought to determine whether he was eligible for Residual Disability benefits. Del Mauro Cert. ¶ 10.

A representative of Berkshire Life met with and corresponded with Bitterman's attorney, Mr. Lipsius, regarding the information the company sought. In correspondence dated January 12, 2007, Berkshire Life confirmed that it had questions regarding the representations made by Bitterman on his application, and also confirmed the need for additional financial records. Berkshire Life advised that it intended to have the financial records reviewed by an independent accounting firm. (Del Mauro Cert. Exhibit D).

Although certain additional financial documentation was provided, it was insufficient for Berkshire Life to make a determination as to whether Bitterman qualified for Residual Disability

benefits. Requests were made by Berkshire Life to Bitterman for additional records and for a meeting between Bitterman and the independent accountants retained by Berkshire Life to review the financial documentation. Del Mauro Cert. ¶ 12.

Bitterman did not provide the documentation requested, and did not consent to a meeting. By letter dated August 7, 2007, Bitterman, through his attorney, Mr. Lipsius, advised Berkshire Life that the previous authorizations executed by Bitterman were "hereby revoked." (Del Mauro Cert. Exhibit F).

By letter dated August 27, 2007 Berkshire Life advised Mr. Lipsius that although the company remained willing to evaluate Bitterman's eligibility for benefits, the evaluation required a review of additional financial documentation and information by its accounting firm. Since this information had not been provided, and since Bitterman would not meet with the accountants, Berkshire Life was closing its file. Specifically, the correspondence stated, in part:

> To date our understanding of Dr. Bitterman's pre-disability material and substantial duties of his occupation includes his ability to perform dermatological procedures including but not limited to biopsies and excisions as well as managing his practice and supervising a physician's assistant. The documentation and information provided to date indicates that until 2002 Dr. Bitterman has employed a physician's assistant and that currently he still employs one, thereby continuing to supervise the physician's assistant as required by New York State law. As such, it appears that he continues to be able to perform some of his material and substantial duties of his occupation.

> Additionally, although you suggest that Dr. Bitterman worked an eight to twelve hour day(s) prior to his disability, to date we have not received documentation to substantiate the extent to which Dr. Bitterman was working these hours performing office visits and the dermatological procedures prior to his claimed disability.

> Further it is not clear from the medical information provided to date, whether Dr. Bitterman is completely limited from being able to perform office visits and the dermatological procedures.

Based on the above, our file does not appear to support Dr. Bitterman's eligibility for total disability benefits. However we informed you that we did evaluate Dr. Bitterman's eligibility for benefits under the residual disability provision of his policy.

We have also informed you on several occasions that the financial information provided was not in as great detail as we normally require, but nonetheless we evaluated the information and documentation provided, however the documentation provided for the period of November 2005 through May 2006 did not reveal that Dr. Bitterman was suffering a loss of income due to his claimed medical condition, sickness or injury. Further, although there appears to be some income loss in June and July 2006 we are uncertain as to what extent if any of this loss is due to the insured's medical condition. To ensure a complete and proper valuation of Dr. Bitterman's claim we retained an accounting firm and asked that they have access to Dr. Bitterman's financial information, tax returns and monthly production reports.

We await the opportunity for our retained accounting firm to meet with you and your client and review the documentation necessary to evaluate Dr. Bitterman's claim. Further, it may be helpful at this point for Dr. Bitterman to provide us with copies of his 2006 tax returns including all schedules and attachments as well as complete copies of malpractice insurance and applications for malpractice insurance for physician's assistants in his employment from 2002 to the present. We are willing to further discuss and try to resolve the outstanding issues with you, please feel free to call after you have reviewed this letter.

Although we continue to remain willing to evaluate Dr. Bitterman's eligibility for benefits under the terms of his policy it is only through the accounting firm's ability to meet with the insured and evaluate the documentation requested that we are able to evaluate whether Dr. Bitterman is eligible for benefits under the terms of his policy.

*            *            *

As we have not received any of the information requested nor has our retained accounting firm been able to meet with Dr. Bitterman it does not appear that we are able to evaluate Dr. Bitterman's claim any further and are not able to be of assistance to him. At this time we are proceeding with the closing of his file.

(Del Mauro Cert. Exhibit G).

**The Settlement**

This lawsuit was subsequently filed. Berkshire Life's answer was filed, and shortly thereafter Mr. Lipsius, counsel for Bitterman, and Mr. Del Mauro, on behalf of Berkshire Life, commenced settlement negotiations. These negotiations were by telephone and email.

After several telephonic discussions, on February 12, 2008, Mr. Lipsius and Mr. Del Mauro agreed on the terms of a settlement between the parties. On that same day the Court was advised that the matter had been settled. District Judge Scheindlin issued an order of dismissal dated February 12, 2008, docketed February 13, 2008. (Del Mauro Cert. ¶ 17).

Mr. Del Mauro wrote to Mr. Lipsius on February 14, 2008, confirming the terms of the settlement. (Del Mauro Cert. Exhibit H). That correspondence provides all the material terms of the agreement as follows:

> Dear Ira:
>
> This letter shall serve to confirm our telephone conversation on Tuesday, February 12 and Wednesday, February 13, 2008, in connection with the above matter. **That is, we have reached a full and complete settlement of all claims made the subject of this civil action and arising under the policy of disability income insurance issued by Berkshire Life.**
>
> 1.      In particular, we agreed that Berkshire Life shall pay $170,000.00, in lump sum, no later than fourteen (14) days following receipt of a signed release and settlement agreement.
>
> 2.      Dr. Bitterman shall furnish Berkshire Life with a full, complete and comprehensive general release releasing any and all claims which were or could have been asserted in the civil action, together with any matter involving the application for, issuance of, including any claim for benefits arising under the disability policy.
>
> 3.      Dr. Bitterman agrees that the policy of disability income insurance shall be cancelled, terminated and all coverage thereunder, for all times, shall be null and void.

      4.      The parties agree to maintain confidential the settlement which is not to be disclosed absent an authorization executed by Dr. Bitterman, in response to a judicial subpoena or as the parties are reasonably required pursuant to law, regulation, and/or oversight.

      5.      The parties agree that the civil action shall be dismissed with prejudice, without cost and with each party bearing their own attorney fees.

      We will undertake preparation of a draft release and settlement agreement for your review and consideration. We understand Judge Scheindlin has allowed the parties until March 10th to conclude the terms of the settlement.

      Thank you for your kind courtesy and cooperation in this regard. (Emphasis added)

At no time after this letter was sent did Mr. Lipsius ever disagree with the notion that the case had been settled on the terms indicated. Del Mauro Cert. ¶ 18.

On February 25, 2008, Mr. Del Mauro forwarded a copy of the court's order of dismissal to Mr. Lipsius. No objection was received to the advice that the order of dismissal had been entered. (Del Mauro Cert. ¶ 19)

On Monday, March 3, 2008, Mr. Del Mauro forwarded a proposed settlement agreement to Mr. Lipsius for his review and consideration. The draft settlement agreement includes all of the terms set forth in the letter of February 14, 2008. In particular, it provides that the payment by Berkshire Life shall be in the amount of $170,000; it includes a full, complete and general release by Bitterman to Berkshire Life; it includes an agreement by Bitterman that the Policy is cancelled, terminated, and all coverage thereunder shall be null and void; it includes an agreement that the parties maintain confidentially with regard to the settlement; and it includes an agreement that the civil action is dismissed with prejudice.

On Tuesday, March 4, 2008, Mr. Lipsius sent an email to Mr. Del Mauro, acknowledging receipt of the draft settlement agreement and providing his suggested and proposed changes. His email states:

> Good Morning Steve:
>
> Please find my changes to the release (document 478203.doc), your draft, untouched, and a comparison of the documents (document 478378.doc)
>
> I would appreciate your prompt review.
>
> I received a message from client's counsel advising that the delay was not your fault. I hope you did not believe I was blaming you for the delay. I understood your client was responsible for the delay.
>
> **You will note that the only changes were reciprocity on the confidentiality, and language limited the release to the issue of the litigation. Cosmetically, I made "Parties" a defined terms, and your draft mentioned "Policies," I changed to "Policy."** Finally, I trust your client will remove the file from the claims and the underwriting departments so that information will not be inadvertently provided to other insurers. Further, the staff at your client should be advised of the confidential nature of the information.
>
> Thank you for your assistance. (Emphasis added)

(Del Mauro Cert. Exhibit I)

On Friday, March 7, 2008, Mr. Lipsius sent an email to Mr. Del Mauro complaining about the delay in finalizing the agreement and requesting the status of Berkshire Life's review of the proposed changes. Mr. Del Mauro responded to Mr. Lipsius' email on Monday, March 10, 2008, enclosing a revised draft agreement for his review. That revised draft agreement incorporated the revisions which had been requested by Mr. Lipsius. (Del Mauro Cert. Exhibit J).

Mr. Lipsius wrote back with a concern that the confidentiality provision was not fully reciprocal. (Del Mauro Cert. Exhibit K). On that same date, Cheryl Lipsius, Esq., on behalf of

Mr. Lipsius wrote to Judge Scheindlin requesting an extension of the thirty day order of February 12, 2008. She advised that "the parties are in the midst of finalizing the settlement agreement and have not completed the final documentation." The court granted this request, extending the time until April 14, 2008, for the parties to resolve the matter. Mr. Del Mauro telephoned Mr. Lipsius and left a message, but was unable to speak with him. Thereafter, Mr. Del Mauro emailed requesting a telephone conference to finalize the settlement agreement.

On March 11, 2008, Mr. Del Mauro forwarded a revised draft agreement to Mr. Lipsius containing revisions pursuant to further discussions that between the two. (Del Mauro Cert. Exhibit L).

After further negotiations Mr. Lipsius emailed a revised settlement agreement on March 12, 2008, containing minor changes. (Del Mauro Cert. ¶25).

Upon reviewing those changes, Mr. Mr. Del Mauro emailed Mr. Lipsius on March 13, 2008, advising that the revisions requested by Mr. Lipsius were acceptable. (Del Mauro Cert. Exhibit M).   At this point, in addition to agreeing on the material terms of settlement on February 12, 2008, and confirmed by letter on February 14, 2008, the parties had now finally agreed to all of the terms of a written agreement.   Notably, the final form of the written agreement contained the revisions requested by Mr. Lipsius, which were agreed to by Berkshire Life.

Mr. Lipsius sent an email to Mr. Mr. Del Mauro on March 13, 2008, advising that he would have Bitterman execute the Agreement, and forward an executed copy.   In that same email, Mr. Lipsius provided payment instructions as follows:

> Steve:
>
> I have forwarded the agreement to my secretary to finalize.  You should have it before day's end.  I will have Dr. Bitterman execute

> the agreement will forward an executed copy to you. Please hold
> the document in escrow until receipt of the funds by this firm.
>
> The check should be made payable to Dr. Stuart Bitterman and
> Schindel, Farman, Lipsius, Gardiner & Rabinovih LLP [sic]
>
> Dr. Bitterman's social security # is in your client's possession. Our
> firm's employer ID # is **-***-****.
>
> Thank you for your cooperation and professionalism. (Emphasis
> added)

(Del Mauro Cert. Exhibit N).

As of March 13, 2008, this matter was conclusively settled. There were no open items

for negotiation or agreement. All that was necessary to conclude the settlement was Bitterman's

execution of the written Agreement negotiated and consented to by his attorney, and delivery of

the settlement check.

On Monday, March 24, 2008, Mr. Del Mauro received an email from Mr. Lipsius

advising that Dr. Bitterman refused to sign the settlement agreement. (Del Mauro Cert. Exhibit

O). Mr. Lipsius indicated that he would apply to have the matter restored to the court's calendar.

As the foregoing demonstrates, this matter was conclusively settled. The material terms

of the settlement were outlined in Mr. Del Mauro's February 14, 2008, correspondence. The

terms of the formal written agreement were fully and completely negotiated by the parties,

revising it to each party's approval and consent. Those revisions did not make any changes to

any of the material terms of the agreement. The final form of the written agreement was

accepted to in writing by counsel for both parties. Mr. Lipsius confirmed his agreement to the

terms of the settlement by his offer of those terms on March 12, 2008. Further, after Mr. Del

Mauro accepted the terms on March 13, 2008, Mr. Lipsius confirmed the agreement by

requesting the settlement check and indicating that Bitterman would sign the written Agreement in its then final form.

The settlement between the parties should be enforced.

## LEGAL ARGUMENT

### THE PARTIES' AGREEMENT TO SETTLE THIS CASE SHOULD BE ENFORCED

Once the parties to a lawsuit to come to an agreement to settle the case, their settlement agreement is a contract that is interpreted according to general principles of contract law. *Powell v Omnicom*, 497 F.3d 124 (2d Cir. 2007). "When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect." *Id.* Generally, New York law applies in this diversity action. In *Powell,* the court noted that there was some uncertainty as to whether the settlement of federal claims is governed by state law or federal common law. Despite this uncertainty, the court noted that it need not decide the issue, because as to enforcement of settlements "New York law and federal common law (are) materially indistinguishable." *Id.*, at f.n. 1.

Under federal common law, a settlement may be entered into orally, and the intention to commit to a later written document, standing alone, will not prevent formation of an enforceable agreement. *Powell,* at 129, citing *Winston v. Mediafare, Entm't Corp.*, 777 F.2d 78 (2d Cir. 1985)(applying New York law). "The settlement remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms were reduced to writing." *Powell,* at 129. "(An) offer, once accepted, (become's) binding on the parties, and no amount of "buyer's remorse" can effect its undoing." *Garibaldi v. Anixter, Inc.*, 533 F. Supp. 2d 308, (W.D.N.Y. 2008); *See also, Wesley v. Correction Officer Badge # 9417,* 2008 U.S. Dist. LEXIS 2 at *5-*6 (E.D.N.Y. 2008) (noting that "[w]hen a party makes a deliberate, strategic

choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences were incorrect or because he had a change of mind.")

In *Garibaldi v. Anixter, Inc.*, the parties orally agreed to a settlement by telephone. Counsel for the defendant forwarded a draft settlement agreement to the *pro se* plaintiff. Plaintiff called back to ask that the agreement include a provision that the payment was tax-free. The defendant refused, stating that that issue had never been discussed as a term of the settlement. The plaintiff, like Bitterman, refused to sign the settlement agreement. The court acknowledged the general rule that a settlement agreement is a contract to be interpreted according to general principles of contract law. *Id.* at 310, citing *Powell*. The court further noted:

> A district court "has the power to enforce summarily, on motion, a settlement agreement reached in a case . . . pending before it." *Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 173 (E.D.N.Y. 2006).... A "preliminary" oral agreement, entered into in anticipation of a later writing memorializing its terms, is no less binding than a written agreement, so long as the parties have not expressly reserved the right not to be bound in the absence of a writing.

*Garibaldi, at* 310. After reviewing the record, the court determined the there was no condition in the agreed settlement that the payment would be tax free.

> While Garibaldi may now regret that his offer did not include such a term, that offer, once accepted, became binding on the parties, and no amount of "buyer's remorse" can effect its undoing. *See Wesley v. Correction Officer Badge # 9417*, 2008 U.S. Dist. LEXIS 2 at *5-*6 (E.D.N.Y. 2008) (noting that "[w]hen a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences were incorrect or because he had a change of mind," and that this maxim applies equally to *pro se* litigants), *citing United States v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994).

*Garibaldi, at* 311-312.

Under federal common law, Mr. Del Mauro's February 14, 2008 letter, accepted without objection by Mr. Lipsius, and Mr. Lipsius' subsequent email of March 13, 2008 is sufficient evidence of an enforceable agreement. All of the material terms of the agreement are set forth, and there was no express reservation that the parties intended not to be bound absent a written agreement.

Under New York law, it is well settled that a settlement agreement is a contract that will be enforced when the parties have agreed on material terms. See *Express Indus. and Terminal Corp. v New York State Dep't of Transp.*, 93 N.Y.2d 584, 590 693 N.Y.S.2d 857 (1999)("[g]enerally, courts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract."). CPLR 2104 provides that "[a]n agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in writing subscribed by him or his attorney or reduced to the form of an order and entered."

A signed letter setting forth the terms of the parties' agreement constitutes an enforceable writing pursuant to CPLR 2104. In *Morrison v Bethlehem Steel Corp.*, 429 N.Y.S. 2d 123, 124 (4th Dep't 1980) the court determined that letters signed by plaintiff's counsel acknowledging the verbal settlement agreement reached with defense counsel satisfied the CPLR 2104 requirement of a subscribed writing ("In this case the letters acknowledging the settlement and signed by the plaintiff's attorney satisfy the requirement of a subscribed writing.") *See also*, *Malette v. Chichester*, 568 N.Y.S. 2d 534, 535, 149 Misc.2d 720, 721-22 (Cty. Crt. 1991).

In *Wright v New York State Office of Children and Family Serv.*, 2003 WL 21665633 (N.Y. Sup. 2003), the court specifically confronted the issue of whether a settlement confirmed

14

in an attorney's correspondence was enforceable. Wright commenced a CPLR Article 78 proceeding against the State of New York seeking to annul a determination of an administrative law judge and to amend the State Register's report that formed the basis of the administrative law judge's determination. *Wright*, 2003 WL 21665633, at * 2. Thereafter, by letter dated November 13, 2002, the State agreed to annul the administrative law judge's determination. *Id.* Wright then sought to clarify the State's position and requested that the State agree to annul the administrative law judge's findings and amend the State Register's report. *Id* By letter dated November 22, 2002, the State advised that it would be expunging the administrative determinations that were the subject of Wright's complaint. *Id*    The court then dismissed Wright's proceeding. *Id*

Following the court's dismissal, the State argued that the parties never settled their dispute. After reciting the requirements of CPLR 2104, the Court disagreed and enforced the parties' agreement:

> The signed writings by [the State's] counsel in the two letters agreeing to Petitioner Wright's terms bind those Respondents pursuant to ordinary contract law and CPLR Rule [] 2104 (see gen. *Matter of Kaplan*, 529 N.Y.S.2d 158 (2nd Dept. 1988), *Morrison v Bethlehem Steel Corp.*, 429 N.Y.S. 2d 123 (4th Dept. 1980). As such they manifest all of the necessary formalities for an enforceable settlement agreement in New York.

*Id*

In *Gaglia v Nash*, 8 A.D.3d 992, 778 N.Y.S.2d 595 (4th Dep't. 2004), the parties reached an oral agreement of settlement, the terms of which were subsequently set forth in a letter sent from plaintiffs' counsel to defense counsel. Defense counsel did not countersign that letter, but, like Mr. Lipsius, did author subsequent letters acknowledging the settlement. The court found

that the defense counsel's letters satisfied the requirement of a "subscribed writing" pursuant to

CPLR 2104:

> Although defendant's attorney did not countersign the letter dated
> September 13, 2002, in which plaintiff's attorney set forth the
> terms of the settlement agreement, the subsequent letters
> acknowledging the settlement and signed by the [defendant's]
> attorney satisfy the requirement of a subscribed writing pursuant to
> CPLR 2104.

*Gaglia,* 8 A.D. 3d 992.

Finally the Appellate Division has recently confirmed that an email correspondence, like

the one sent by Mr. Lipsius, satisfies the "subscribed writing" requirement. In *Stevens v.*

*Publicis,* 854 N.Y.S.2d 690 (A.D. 2008), the plaintiff's business was sold to the defendant

pursuant to two agreements. First, there was a stock purchase agreement whereby the defendant

agreed to purchase all of the stock of the plaintiff's business, and form a new company. In

connection therewith, there was an employment agreement whereby the defendant agreed to

employ the plaintiff as CEO of the newly formed company for three years, with his

compensation dependent upon the revenues generated during that time. When revenue targets

were not met in the first year, defendant removed plaintiff from his position as CEO of the newly

formed company, and gave him several options for employment within the company. In a series

of emails between the plaintiff and president of the parent company, plaintiff agreed to a new

position. He thereafter denied agreement, and brought an action for breach of contract.

The trial court denied the plaintiff's motion for partial summary judgment, finding that

"the parties had agreed in writing to modify plaintiff's duties under the employment agreement."

*Id* at 692. The Appellate Division affirmed, stating:

> The emails from plaintiff constitute 'signed writings" within the
> meaning of the statute of frauds, since plaintiff's name at the end
> of the email signified his intent to authenticate the contents.

> (citation omitted) Similarly, (the defendant's) name at the end of his email constituted a "signed writing" and satisfied the requirement ... of the employment agreement that any modification be signed by all parties.

*Stevens,* at 692. *See also, Ali-Bawaba.com Inc., v. Nstein Tech. Corp.*, 19 Misc. 3d 1125A (County Ct. 2008)("Contrary to movant's contentions, the... email from defendant constitutes a "signed writing" within the meaning of the Statute of Frauds.").

Similarly, Mr. Lipsius' email of March 13, 2008, confirms and signifies that the parties have agreed upon the material terms of the settlement, and satisfies the requirement of a "signed writing" under CPLR 2104. Mr. Lipsius' email of March 13, 2008, incorporates the terms of the written agreement, setting forth the material terms of payment, release, surrender of the policy, and confidentiality. These terms were accepted by Mr. Lipsius on Bitterman's behalf. The email satisfies the "signed writing" requirement, signifying acceptance and a general meeting of the minds. Mr. Lipsius "signed" the email, signifying his consent to its contents. Moreover, this email, along with the course of negotiations between the parties, signifies not only that the parties had agreed upon the material terms, but that they had agreed upon *all* of the terms of the settlement, not just the material terms. There was nothing left to negotiate. All that remained was to obtain the parties' signatures and issue the settlement check.

Pursuant to CPLR 2104, as interpreted in *Morrison, Wright, Gaglia* and *Stevens*, Mr. Lipsius' March 13, 2008 email, incorporating the written settlement Agreement, satisfies the requirement of a "signed writing."

Accordingly, for the reasons set forth above, there is an enforceable agreement set forth in a writing that has been "subscribed to" by the parties, and that contains all of the material terms of the parties' agreement. The court should enter an order enforcing the settlement as agreed to by the parties.

17

## CONCLUSION

In light of the parties' clearly expressed desire to enter into a settlement of this case, it is respectfully submitted that the Court enter an order enforcing the settlement agreement as set forth in the finalized document agreed to by the parties.

McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Attorneys for Defendant,
Berkshire Life Insurance Company of America

By:_____
Steven P. Del Mauro

Dated:   July 9, 2008
1109805 doc