**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
**Three Gateway Center**
**100 Mulberry Street**
**Newark, NJ 07102-4079**
**(973) 622-7711**
**Attorneys for Defendant, Berkshire Life Insurance Company of America**

By:_____
      Steven P. Del Mauro

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| **STUART BITTERMAN, M.D.,** | : |
|  | : |
| **Plaintiff,** | : |
|  | : **Civil Action No. 07cv11061** |
| **vs.** | : |
|  | : |
| **BERKSHIRE LIFE INSURANCE COMPANY** | : |
| **OF AMERICA,** | : |
|  | : |
| **Defendant.** | : |

---

## CIVIL ACTION – CERITIFICATION OF STEVEN DEL MAURO IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT

---

I, Steven P. Del Mauro, Esq., of full age, being duly sworn according to law and upon my oath depose and say:

1.     I am an attorney at law of the State of New Jersey and am a member of the firm of McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for defendant, Berkshire Life Insurance Company of America ("Berkshire Life") in connection with the above matter. I am admitted to practice in the United States District Court for the Southern District of New York. I make this certification in support of the motion by Berkshire Life to enforce the settlement agreed upon between the parties. The statements contained herein are based upon my personal

knowledge from my review of records maintained by Berkshire Life in connection with the claim for disability income benefits made by Stuart Bitterman, MD ("Bitterman"), and my personal involvement in negotiations regarding the settlement of this suit.

2.      This matter was begun by the filing of a complaint by Stuart Bitterman, MD ("Bitterman") in the Supreme Court of the State of New York, County of New York. The complaint was removed to the United States District Court for the Southern District of New York by notice of removal dated December 6, 2007. The removal was based upon diversity of citizenship pursuant to 28 U.S.C. §1332.

3.      Bitterman alleges that he is unable to perform the material and substantial duties of his occupation as a dermatologist, and claims entitlement to benefits under a policy of disability income insurance administered by Berkshire Life bearing Policy #H00337962 (the "Policy"). The complaint is brought in four counts. In the first count, Bitterman claims entitlement to past due total disability income benefits from November 1, 2005, through the date of the filing of the complaint. The second count seeks a cost of living benefit. The third count alleges entitlement to total disability benefits through age 65, and the fourth count alleges bad faith and deceptive settlement practices.

4.      Berkshire Life filed an answer to the complaint, admitting the issuance of the Policy; admitting that Bitterman filed a claim for total disability benefits on or about December 15, 2005; and further admitting that Berkshire Life had not made any payments on that claim. Berkshire Life denied any liability to Bitterman, and sought dismissal of the compliant.

5.      The policy administered by Berkshire Life provides benefits on account of Total Disability, or Residual Disability (Exhibit A). The policy defines total disability as:

> **Total disability** means, during the own occupation period, the inability to perform the material and substantial duties of your occupation. After the own occupation period, "total disability"

2

means your inability to engage in any gainful occupation in which you might reasonably be expected to engage, with due regard for your education, training, experience and prior economic status.

6.    The policy defines residual disability as:

**Residual disability** means that due to injury or sickness you are unable: (1) to do one or more of your important daily business or professional duties; or (2) to perform your duties for the length of time that they usually require.

(Exhibit A). If an insured qualifies for residual disability benefits, the amount of the residual disability benefit is determined by a formula set forth in the policy. An insured's monthly earnings during a period of disability are compared to his average monthly earnings prior to his disability. This ratio is then multiplied by his total disability benefit to determine the amount of residual disability benefits. For example, if an insured has suffered a 50% loss in income as a result of his residual disability, he will receive 50% of the total disability benefit. In order to calculate this ratio, it is important to obtain business and financial documentation to determine the insured's occupational duties and pre-disability earnings. It is just as important to obtain business and financial records during the period of disability in order to determine what occupational duties the insured was performing and what loss of income has occurred.

7.    Bitterman submitted a Disability Claimant's Statement dated December 20, 2006, alleging total disability from "Irritable Bowel Syndrome, Spondylolisthesis, spinal stenosis, degenerative disc disease, neuroforaminal stenosis, etc." (Exhibit B) He stated that the symptoms were first diagnosed in November, 2005, and that he was unable to work from the "present, due to diagnosis, gradual reduction over the past few years pre-diagnosis." He stated that he had a greater than 80% reduction in hours, "from in excess of 60 hours per week pre-disability gradually to fewer than 6 hours per week scheduled and fewer than 10 hours per week actual." In connection with the Disability Claimant's Statement Bitterman also executed and

3

submitted an Authorization, which would permit Berkshire Life to obtain medical and other records during its investigation of his claim.

8.      Berkshire Life commenced an investigation of his claim and obtained copies of medical records from physicians who treated Bitterman. Berkshire Life also requested that Bitterman provide tax returns and financial records relating to his business. (Exhibit C).

9.      The documentation reviewed in connection with his claim raised questions as to whether Bitterman had been truthful at the time he submitted his original application for the policy. In particular, he failed to disclose the full value of other disability insurance he had in effect at the time of the application. These misrepresentations, if fraudulent, effected his entitlement to the issuance of the policy. Berkshire Life continued its investigation.

10.     Medical records were obtained and reviewed, and it was determined that the records did not substantiate restrictions and limitations that would prevent Bitterman from performing the duties of his occupation on a full-time basis. In addition, as Bitterman acknowledged that he was working and performing some of the duties of his occupation, Berkshire Life determined that he was not eligible for Total Disability benefits, and sought to determine whether he was eligible for Residual Disability benefits.

11.     A representative of Berkshire Life met with and corresponded with Bitterman's attorney, Mr. Lipsius, regarding the information the company sought. In correspondence dated January 12, 2007, Berkshire Life confirmed that it had questions regarding the representations made by Bitterman on his application, and also confirmed the need for additional financial records. Berkshire Life advised that it intended to have the financial records reviewed by an independent accounting firm. (Exhibit D).

12.     Although certain additional financial documentation was provided, it was insufficient for Berkshire Life to make a determination as to whether Bitterman qualified for

4

Residual Disability benefits. Requests were made by Berkshire Life to Bitterman for additional records and for a meeting between Bitterman and the independent accountants retained by Berkshire Life to review the financial documentation. (Exhibit E).

13.. Rather than provide the documentation requested, and consent to a meeting, Bitterman, through his attorney, Mr. Lipsius, advised Berkshire Life by letter dated August 7, 2007 that the previous authorizations executed by Bitterman were "hereby revoked." (Exhibit F).

14. By letter dated August 27, 2007 Berkshire Life advised Mr. Lipsius that although the company remained willing to evaluate Bitterman's eligibility for benefits, the evaluation required a review of additional financial documentation and information by its retained accounting firm. Since this information had not been provided, and since Bitterman would not meet with the accountants, Berkshire Life was closing its file. (Exhibit G).

15. It is Berkshire Life's position that the information submitted by Bitterman does not establish eligibility for Total Disability benefits, and at most indicates that he may be eligible for Residual Disability benefits. However, since Bitterman refused to provide documentation, refused to meet with Berkshire Life's accountants, and revoked his Authorization, Berkshire Life was unable to conclude its investigation and make a final determination.

16. This lawsuit was subsequently filed. Berkshire Life's answer was filed, and shortly thereafter Mr. Lipsius, counsel for Bitterman, and I commenced settlement negotiations. These negotiations were by telephone and email. On February 3, 2008, I received an email from Mr. Lipsius in connection with our discussions. I responded to Mr. Lipsius' email on Monday, February 4, 2008. In my email I advised that Bitterman's income tax returns did not suggest a loss of income as large as suggested by Mr. Lipsius.

17. After several telephonic discussions, on February 12, 2008, Mr. Lipsius and I were able to agree on the terms of a settlement between the parties. On that same day we advised

5

the court that the matter had been settled. District Judge Scheindlin issued an order of dismissal dated February 12, 2008, docketed February 13, 2008.

18.    On February 14, 2008, I wrote to Mr. Lipsius confirming the terms of the settlement:

> Dear Ira:
>
> This letter shall serve to confirm our telephone conversation on Tuesday, February 12 and Wednesday, February 13, 2008, in connection with the above matter. **That is, we have reached a full and complete settlement of all claims made the subject of this civil action and arising under the policy of disability income insurance issued by Berkshire Life.**
>
> 1.    In particular, we agreed that Berkshire Life shall pay $170,000.00, in lump sum, no later than fourteen (14) days following receipt of a signed release and settlement agreement.
>
> 2.    Dr. Bitterman shall furnish Berkshire Life with a full, complete and comprehensive general release releasing any and all claims which were or could have been asserted in the civil action, together with any matter involving the application for, issuance of, including any claim for benefits arising under the disability policy.
>
> 3.    Dr. Bitterman agrees that the policy of disability income insurance shall be cancelled, terminated and all coverage thereunder, for all times, shall be null and void.
>
> 4.    The parties agree to maintain confidential the settlement which is not to be disclosed absent an authorization executed by Dr. Bitterman, in response to a judicial subpoena or as the parties are reasonably required pursuant to law, regulation, and/or oversight.
>
> 5.    The parties agree that the civil action shall be dismissed with prejudice, without cost and with each party bearing their own attorney fees.
>
> We will undertake preparation of a draft release and settlement agreement for your review and consideration. We understand Judge Scheindlin has allowed the parties until March 10[th] to conclude the terms of the settlement.

> Thank you for your kind courtesy and cooperation in this regard. (Emphasis added)

(Exhibit H). After issuing this correspondence, I did not receive any objection to my assertion that the case had been settled.

19.    On February 25, 2008, I forwarded a copy of the court's order of dismissal to Mr. Lipsius as I noticed that his firm had not yet entered an appearance electronically. No objection was received to the confirmation that the court had entered an order of dismissal.

20.    On Monday, March 3, 2008, I forwarded a proposed Settlement Agreement and Complete Release ("Agreement") to Mr. Lipsius for his review and consideration. (Exhibit I). The draft Agreement includes all of the terms set forth in the letter of February 14, 2008. In particular, it provides that the payment by Berkshire Life shall be in the amount of $170,000. (¶1); it includes a full, complete and general release by Bitterman to Berkshire Life (¶2); it includes an agreement by Bitterman that the Policy is cancelled, terminated, and all coverage thereunder shall be null and void (¶3); it includes an agreement that the parties maintain confidentially with regard to the settlement (¶15); and it includes an agreement that the civil action is dismissed with prejudice (¶4).

21    On Tuesday, March 4, 2008, I received an email from Mr. Lipsius acknowledging receipt of the draft Agreement and providing his suggested and proposed changes. His email states:

> Good Morning Steve:
>
> Please find my changes to the release (document 478203.doc), your draft, untouched, and a comparison of the documents (document 478378.doc)
>
> I would appreciate your prompt review.
>
> I received a message from client's counsel advising that the delay was not your fault. I hope you did not believe I was blaming you

for the delay. I understood your client was responsible for the delay.

**You will note that the only changes were reciprocity on the confidentiality, and language limited the release to the issue of the litigation. Cosmetically, I made "Parties" a defined terms, and your draft mentioned "Policies," I changed to "Policy."** Finally, I trust your client will remove the file from the claims and the underwriting departments so that information will not be inadvertently provided to other insurers. Further, the staff at your client should be advised of the confidential nature of the information.

Thank you for your assistance. (Emphasis added) (Exhibit I).

22     On Friday, March 7, 2008, I received an email from Mr. Lipsius complaining about the delay in finalizing the agreement and requesting the status of Berkshire Life's review of his proposed changes. I responded to Mr. Lipsius' email on Monday, March 10, 2008, enclosing a revised agreement for his review. That revised Agreement incorporated the revisions which had been requested by him. (Exhibit J).

23.     Mr. Lipsius wrote back with a concern that the confidentiality provision was not fully reciprocal. (Exhibit K). On that same date, Cheryl Lipsius, Esq., on behalf of Mr. Lipsius, wrote to District Judge Scheindlin requesting an extension of the thirty day order of February 12, 2008. She advised that "the parties are in the midst of finalizing the settlement agreement and have not completed the final documentation." The court granted this request, extending the time until April 14, 2008, for the parties to resolve the matter.

24.     On March 11, 2008, I forwarded to Mr. Lipsius a revised Agreement incorporating revisions pursuant to settlement discussions that we I had conducted. (Exhibit L).

25.     Mr. Lipsius and I spoke further regarding the outstanding issues and as a result of that conversation, Mr. Lipsius emailed a revised Agreement on March 12, 2008, containing minor changes.

26.    Upon reviewing those changes, I emailed Mr. Lipsius on March 13, 2008, advising that his requested revisions were acceptable. (Exhibit M).   At this point, in addition to orally agreeing on the essential terms of settlement on February 12, 2008, the parties had now finally agreed to all of the terms of the written Agreement.  Notably, the final form of the written Agreement contained the revisions requested by Mr. Lipsius which were agreed to by Berkshire Life.

27.    In response to my email, Mr. Lipsius wrote back to me on March 13, 2008, advising that his secretary would finalize the Agreement and he would have Bitterman execute it and forward an executed copy.  In that same email, Mr. Lipsius provided payment instructions as follows:

> Steve:
>
> I have forwarded the agreement to my secretary to finalize.  You should have it before day's end.  **I will have Dr. Bitterman execute the agreement will forward an executed copy to you**. Please hold the document in escrow until receipt of the funds by this firm.
>
> The check should be made payable to Dr. Stuart Bitterman and Schindel, Farman, Lipsius, Gardiner & Rabinovih LLP [sic]
>
> Dr. Bitterman's social security # is in your client's possession.  Our firm's employer ID # is (**-***-****).
>
> Thank you for your cooperation and professionalism.  (Tax ID number deleted, emphasis added)

(Exhibit N).  I responded shortly thereafter confirming our receipt of the payment instructions. Id.

28.    As of March 13, 2008, this matter was conclusively settled.  There were no open items for negotiation or agreement.  All that was necessary to conclude the settlement was

Bitterman's execution of the written Agreement negotiated and consented to by his attorney, and delivery of the settlement check.

29.    On March 24, 2008, I received an email from Ms. Lipsius advising that Bitterman refused to sign the Agreement. (Exhibit O). Ms. Lipsius stated that she would apply to have the matter restored to the court's calendar.

30.    As the foregoing demonstrates, this disputed matter was conclusively settled. The essential terms of the settlement were outlined in the February 14, 2008, correspondence. The terms of the formal written Agreement were fully and completely negotiated by the parties, revising it to each party's approval and consent. Those revisions did not make any changes to any of the essential terms of the agreement memorialized in the February 14, 2008, correspondence. The final form of the Agreement was accepted by counsel for Bitterman without objection, and in that same email he requested payment instructions, indicating that the Agreement would be signed by Bitterman.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Steven P. Del Mauro

Dated:  July 8, 2008
11110358_1 DOC

# EXHIBIT A

**Berkshire Life Insurance Company**
**700 South Street**
**Pittsfield, Massachusetts 01201**

When used in this policy, the words *we, us,* and *our* mean the Berkshire Life Insurance Company of Pittsfield, Massachusetts; the words *you* and *your* mean the insured, who is named on the Policy Schedule on Page 1.

## Non-Cancellable and Guaranteed Renewable to Age 65 with Conditional Continuation of Limited Benefits After Age 65

This policy is issued in consideration of the written application and the payment of premiums as provided. The policy and the application make up the entire contract. Subject to the terms of this policy, we insure you against loss resulting from sickness which is first diagnosed or treated or accidental bodily injuries sustained while this policy is in force.

## Pre-Existing Conditions Excluded

No benefits will be paid for any disability beginning within two years after the policy issue date for a pre-existing condition. A pre-existing condition is an injury or sickness for which symptoms existed within two years prior to the effective date of coverage that would have caused an ordinarily prudent person to seek diagnosis, care or treatment or for which medical advice or treatment was recommended by or received from a physician within the two years prior to the effective date of coverage. Such condition will only be covered from the effective date of this policy if it is fully disclosed on the application for insurance and we have not excluded that condition by rider.

716 (3/94) NY

## Right To Cancel

This policy is a legal contract between the owner and us. The owner may cancel this policy by delivering or sending a written notice or telegram to us and by returning the policy to us before midnight of the tenth day after the date he or she receives the policy. Written notice by mail and return of the policy by mail are effective as of the postmark date, if the mailing is properly addressed and the postage is prepaid. We must return all payments made for this policy within ten days after we receive both notice of cancellation and the policy.

READ THIS POLICY CAREFULLY.

Signed at Pittsfield, Massachusetts

*James Bzdziuski*

President

Secretary

Countersigned by _____
                              Licensed Resident Agent

This is a participating policy.



**Berkshire**

Berkshire Life Insurance Company
A mutual company founded in 1851

☒ The Guardian Life Insurance
Company of America

☐ **Berkshire Life**
**Insurance Company of America**
700 South Street
Pittsfield, MA 01201

**DUPLICATE/SPECIMEN POLICY DISCLAIMER**

Please check the appropriate company(ies). Any insurer checked above is herein referred to as the "Company."

*Berkshire Life Insurance Company of America is a wholly owned stock subsidiary of and an administrator for The Guardian Life Insurance Company of America, New York, NY*

This policy is a duplicate of the original policy, No. H0337962_____, dated AUGUST 28, 1996_____, with the following exceptions.

1. The typestyle and location of information in certain portions of this policy may be different from the originally issued policy.

2. The signatures of any company officers which appear on the duplicate policy may differ from those on the original policy if at the time the duplicate policy was produced, those company officers were not the same as when the original policy was issued.

3. The address of the company home office may be different from that on the original policy.

POL.002

## Policy Schedule

INSURED:  STUART BITTERMAN

AGE: 39

POLICY NUMBER: NC H0337962

POLICY DATE:  28 AUG 1996

MONTHLY INDEMNITY FOR
TOTAL DISABILITY:  $2,200

WAITING PERIOD:  90 DAYS

MAXIMUM INDEMNITY PERIOD:
TO AGE  65

OWN OCCUPATION PERIOD:
LATER OF 10 YEARS,
OR TO AGE 65

*************************************

SUPPLEMENTARY BENEFITS:

COST OF LIVING FIXED RATE-4%

RESIDUAL DISABILITY

FUTURE PURCHASE OPTION

DUPLICATE

*************************************

EXECUTIVE
OWN OCCUPATION
DISABILITY INCOME POLICY

---

DPS

### PREMIUM SUMMARY

|  | FIRST THREE POLICY YEARS | THEREAFTER AND PRIOR TO AGE 65 |
|---|---|---|
| ANNUAL PREMIUM FOR DISABILITY BENEFITS | $776.20 | $910.40 |
| ANNUAL PREMIUM FOR SUPPLEMENTARY BENEFITS | $489.60 | $489.60 |
| TOTAL ANNUAL PREMIUM | $1,265.80 | $1,400.00 |

THIS AND FUTURE PREMIUMS INCLUDE THE NO TOBACCO USE DISCOUNT.

PREMIUMS FOR THE POLICY WILL BE REDUCED WHEN PREMIUMS FOR ANY
SUPPLEMENTARY BENEFITS ARE NO LONGER PAYABLE.  PREMIUMS AFTER
AGE 65 ARE SUBJECT TO THE COMPANY'S RIGHT TO CHANGE RATES AND
THE PREMIUM MAY REASONABLY BE EXPECTED TO INCREASE AT AGE 65.

*********************************************

### SUPPLEMENTARY BENEFITS

| ANNUAL PREMIUM | YEARS PAYABLE | MAXIMUM PERIOD OF INDEMNITY | BENEFIT AMOUNT |
|---|---|---|---|
| $226.60 | 27 | TO AGE 65 | VARIES * |
| $189.20 | 27 | TO AGE 65 | VARIES |
| $73.80 | 16 | | $1,800 AGGREGATE OPTION AMOUNT |

*********************************************

* BENEFITS PAYABLE AFTER 360 DAYS OF DISABILITY.
THIS POLICY IS IN A STANDARD PREMIUM CLASS.
FORM 715-1(3/94) NY

1

## Table of Contents

This policy contains the following provisions in the order listed:

Berkshire Life Insurance
  Company . . . . . . . . . . . . . . .front cover
Non-Cancellable and
  Guaranteed Renewable . . . . . .front cover
Pre-Existing Conditions
  Excluded . . . . . . . . . . . . . . .front cover
Right to Cancel . . . . . . . . . . . . .front cover

Policy Schedule . . . . . . . . . . . . . . . . . . . . .1

Table of Contents . . . . . . . . . . . . . . . . . . .3

Definitions . . . . . . . . . . . . . . . . . . . . . . . .5
Non-Cancellable and
  Guaranteed Renewable to Age 65 . . . . .5
Conditional Continuation of
  Limited Benefits After Age 65 . . . . . . . . .5

Total Disability Indemnity . . . . . . . . . . . . . .6
Recurrent Disabilities . . . . . . . . . . . . . . . . .6
Waiver of Premium . . . . . . . . . . . . . . . . . .6
Rehabilitation . . . . . . . . . . . . . . . . . . . . . .6
Transplant Donor Benefit . . . . . . . . . . . . . .6
Prorating Monthly Indemnity . . . . . . . . . . .6
Concurrent Disabilities . . . . . . . . . . . . . . . .6
Entire Contract; Changes . . . . . . . . . . . . .7
Pre-existing Conditions . . . . . . . . . . . . . . .7
Incontestable . . . . . . . . . . . . . . . . . . . . . .7
Owner . . . . . . . . . . . . . . . . . . . . . . . . . . .7
Grace Period . . . . . . . . . . . . . . . . . . . . . .7
Reinstatement . . . . . . . . . . . . . . . . . . . . .7
Notice of Claim . . . . . . . . . . . . . . . . . . . .7
Claim Forms . . . . . . . . . . . . . . . . . . . . . .7

Proof of Loss . . . . . . . . . . . . . . . . . . . . . .8
Time of Payment of Claims . . . . . . . . . . . .8

Payment of Claims . . . . . . . . . . . . . . . . . .8
Physical Examination . . . . . . . . . . . . . . . .8
Legal Actions . . . . . . . . . . . . . . . . . . . . . .8
Misstatement of Age . . . . . . . . . . . . . . . . .8
Conformity with State Statutes . . . . . . . . . .8
Payment of Premiums . . . . . . . . . . . . . . . .8

Assignments . . . . . . . . . . . . . . . . . . . . .8a
Dividends . . . . . . . . . . . . . . . . . . . . . . . .8a

Endorsements . . . . . . . . .inside back cover

Notice of Annual Meeting . . . . . .back cover

3

POL004

FORM xxxx P485 xxxxxx    POLICY H0237862

## Definitions

Whenever they are used in this policy, the following words are defined as they are set forth below:

**waiting period** means the number of days after the commencement of each period of total disability for which no monthly indemnity is to be paid (see the Policy Schedule on Page 1). The waiting period with respect to normal pregnancy shall be the greater of 90 days or the number of days stated in the Policy Schedule. For the purpose of satisfying the waiting period, you must be disabled either continuously for the number of days required, or in successive periods which total the number of days required. Such successive periods of disability must be separated by less than six months, and result from the same cause or causes.

**own occupation period** means the period of time identified on the Policy Schedule on Page 1 that begins immediately after the waiting period. At the end of this period the definition of total disability changes.

**maximum indemnity period** means the maximum length of time for which benefits are to be paid during any period of total disability (see the Policy Schedule on Page 1). Benefits will not be paid beyond the policy anniversary that falls on or most nearly after your sixty-fifth birthday, or for 24 months, if longer, except as provided in this policy.

**monthly indemnity** means the amount to be paid as a monthly benefit under the terms of this policy (see the Policy Schedule on Page 1).

**physician** means a legally qualified provider of medical services other than the insured who is acting within the scope of his or her license.

**injury** means an accidental bodily injury that is sustained while this policy is in force.

**sickness** means an illness, disease or pregnancy which is diagnosed or treated while this policy is in force.

**total disability** means, during the own occupation period, the inability to perform the material and substantial duties of your occupation. After the own occupation period, "total disability" means your inability to engage in any gainful occupation in which you might reasonably be expected to engage, with due regard for your education, training, experience and prior economic status.

**your occupation** means the occupation in which you are engaged immediately preceding the onset of disability.

## Non-Cancellable and Guaranteed Renewable to Age 65

Until the policy anniversary that falls on or most nearly after your sixty-fifth birthday, there is only one condition for the renewal of this policy: the premiums must be paid as is required in this policy. Before such anniversary and while this policy is in full force, we cannot cancel the policy; nor can we increase the premiums (the premium is shown on the Policy Schedule on Page 1); nor can we reduce benefits because of a change to a more hazardous occupation; nor can we unilaterally add any restrictive riders to this policy.

## Conditional Continuation of Limited Benefits for Total Disability After Age 65

You may renew this policy after your sixty-fifth birthday. To do so you must continue to be actively and regularly working full-time.

You must also make periodic payment of the premiums at our then applicable rates; applicable rates are those which are in effect for your age on the premium due dates. We may change these rates at any time. We shall provide a notice of any increase in rates which may affect you. Such notice will be given at least 30 days before the rate increase takes place.

Any benefits to be paid for a disability that commences after the policy anniversary which falls on or most nearly after your sixty-fifth birthday will be the same benefits, and will be subject to the same terms, as those in the policy, except: (1) the maximum indemnity period will be 24 months for total disability that commences before your seventy-fifth birthday; and (2) the maximum indemnity period will be twelve months for total disability that commences after your seventy-fifth birthday.

We reserve the right to require proof from time to time after you have reached age sixty-five that you continue to be actively and regularly working full-time. If you cease to be so employed, the policy will terminate at the end of the period for which we have accepted premiums except that any claim arising within 30 days from any accident occurring while the policy was in force shall be treated as if the policy remained in force for that period of thirty days. A period of total disability in itself will not be considered evidence that you are no longer actively and regularly working full-time.

## Total Disability Indemnity

While this policy is in force, if you become totally disabled as the result of an injury or sickness, and if you require the care of a physician we will pay the monthly indemnity. We will waive the requirement for medical care

5

POL005

if proof satisfactory to us is furnished that continued care would be of no benefit to you.

Payment will be made only for periods of disability following the waiting period but not for longer than the maximum indemnity period during any disability. Except as is provided in this policy, payments will not be made beyond the policy anniversary that falls on or most nearly follows your sixty-fifth birthday. If a disability begins while this policy is in force, and on or after your sixty-third birthday, we will still pay the monthly indemnity. However, such payment will not be made for more than 24 consecutive months after the waiting period. If a premium for any period not covered by this policy is paid to us, we will refund a pro-rated portion of said premium.

## Recurrent Disabilities

Successive periods of disability will be considered the same period of disability if:
(a) you have returned to work full-time, doing all your duties, for a period of less than twelve months between the disabilities, and
—twelve months between the disabilities if the maximum indemnity period shown on the policy schedule on page 1 is "To age 65" or "lifetime"; or
—six months between the disabilities if the maximum indemnity period shown on the policy schedule on page 1 is "2 years" or "5 years", and
(b) the current period of disability results entirely or in part from the same cause or causes as the previous disability.
If the above conditions are not satisfied, the current period of disability will be considered a new and separate period of disability.

## Waiver of Premium

We will waive the payment of any premium which becomes due after you have been disabled for the waiting period; such waiver will be made only while you remain disabled.

We will also refund any premium which became due and was paid during the waiting period. After a period of disability during which we have waived premiums ends, you will have the right to resume the payment of premiums as they become due.

## Rehabilitation

We will consider helping you pay the cost of a professionally planned vocational rehabilitation program if you are receiving benefits payable under this policy. The extent of our participation will be determined by written agreement and will be in addition to any other benefits payable under this policy. Your participation in a rehabilitation program will not in itself be deemed recovery from your disability.

## Transplant Donor Benefit

If you become totally disabled as a result of the transplant of a part of your body to the body of another, such total disability will be considered caused by sickness in the determination of any benefits to be paid under the terms of this policy. In this event, the waiting period will be waived and benefits will be payable from the date the total disability begins. Such surgery must take place while the policy is in force, and more than twelve months after the policy date.

## Prorating Monthly Indemnity

Any benefits which are to be paid for less than a full month will be prorated on the basis of a 30-day month.

## Concurrent Disabilities

Duplicate payments will not be made for a disability that is caused by more than one injury or sickness, or by a combination of an injury and a sickness.

6

POL006

POL007

## Entire Contract; Changes

This policy, the application, and the attached papers, if any, make up the entire contract. No change in this policy will be valid until it is approved by one of our executive officers. This approval must be endorsed on or attached to this policy. No agent has the authority to change this policy or to waive any of its provisions.

## Pre-existing Conditions

No benefits will be paid for any disability beginning within two years after the policy issue date for a pre-existing condition. A pre-existing condition is an injury or sickness for which symptoms existed within two years prior to the effective date of coverage that would have caused an ordinarily prudent person to seek diagnosis, care or treatment or for which medical advice or treatment was recommended by or received from a physician within the two years prior to the effective date of coverage. Such condition will only be covered from the effective date of this policy if it is fully disclosed on the application for insurance and we have not excluded that condition by rider.

## Incontestable

This policy will be incontestable as to the statements, except fraudulent statements, contained in the application after it has been in force for a period of two years during your lifetime. No claim for a disability, as it is defined in the policy, that begins after two years from the effective date will be reduced

or denied because a disease or physical condition existed prior to the effective date. This assumes that such disability was not excluded from coverage, by name or description, under this policy.

## Owner

The owner, who is the person named as insured on the Policy Schedule on Page 1, is vested with all rights, privileges, options and benefits granted by this policy or allowed by us, including the right to transfer ownership. The owner may exercise all such rights without the consent of any other person.

## Grace Period

After the first premium, a grace period of thirty-one days is allowed for the payment of each premium that is due; during this grace period the policy will still be in full force.

## Reinstatement

If any renewal premium is not paid within the grace period, this policy may be reinstated; reinstatement takes place when we accept a subsequent premium. Such premium may be received by us or by an agent who is duly authorized by us to accept such premium without requiring with it an application for reinstatement. If we or one of our agents requires an application for reinstatement and issues a conditional receipt for the premium tendered, the policy will be reinstated as of the date we approve such application. If we notify you in writing that we have disapproved of such application, the policy is not reinstated. If

such notice of disapproval is not given before the forty-fifth day following the date of such conditional receipt, the policy will be reinstated on the forty-fifth day.

The reinstated policy will only cover loss resulting from such accidental injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin more than 10 days after such date. A condition for which you have sought medical attention will be among those considered to have been treated. In all other respects, you and we will have the same rights under the reinstated policy that we both had under the policy just before the due date of the premium in default. Such rights are subject to any provisions endorsed on or attached to this policy in connection with the reinstatement.

## Notice of Claim

We must receive written notice of claim within twenty days after the occurrence or start of any disability covered by the policy; if this is not possible, notice must be received as soon after the start of such disability as is reasonably possible. Notice we receive by you or on your behalf at our home office or through any of our authorized agents will be deemed notice to us. Such notice must contain information that is sufficient to identify you.

## Claim Forms

When we receive a notice of claim, we will furnish to the claimant our usual forms for filing proof of loss. If we do not furnish such forms within fifteen days after the claimant has

7

given such notice, the claimant will be deemed, upon submitting such claim form, to have complied with the applicable requirements of this policy for submitting proof of loss.

## Proof of Loss

We must receive written proof of loss at our home office within ninety days after the end of the period for which we are liable. If such proof is not furnished within the time required, this will not invalidate or reduce any claim if it was not reasonably possible to give proof within such time; such proof must then be furnished as soon as is reasonably possible. Proof which is furnished later than one year from the time it is otherwise required will not be deemed valid, except in the absence of legal capacity.

## Time of Payment of Claims

Any benefits to be paid under this policy other than as periodic payments will be paid immediately when we receive written proof of such loss. Subject to such proof of loss, all accrued benefits for the loss that are to be paid as periodic payments will be paid each month; any balance that remains unpaid at the end of liability will be paid when we receive written proof.

## Payment of Claims

All of the indemnities of this policy will be payable to you with this exception: any accrued indemnity unpaid at your death may be paid to your estate. We may pay such indemnity in an amount up to but not exceeding $1,000 to any of your relatives by blood or connection by marriage whom we

deem to be equitably entitled to such amount in the following events: the indemnity of this policy is payable to your estate; you are a minor; or you are otherwise not competent to give a valid release. Any payment we make in good faith pursuant to this provision will fully discharge us to the extent of such payment. If we refuse to make payment on the basis of a pre-existing condition, we will give you documented evidence of specific instances of actual treatment or observation of such pre-existing condition.

## Physical Examination

If a claim is presented under this contract, we will have the right and opportunity to have you examined by a physician of our choice at our own expense. Such examination will take place as often as may reasonably be required.

## Legal Actions

No action at law or in equity may be brought to recover on this policy until sixty days after written proof of loss has been furnished; such proof must be furnished in accordance with the terms of this policy. No such action may be brought after three years from the time that written proof of loss is required to be furnished.

## Misstatement of Age

If your age has been misstated, all amounts that are payable under this policy will be what the premium that was paid would have bought at your correct age; if, on the basis of your correct age, no coverage would have been effective, our liability will be limited to the refund of premium for the period in which no coverage was effective.

## Conformity with State Statutes

Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which you reside on such date is hereby amended to conform to the minimum requirements of such statutes.

## Payment of Premiums

All premiums are to be paid in advance at our home office or to any of our authorized agents. The first premium is to be paid when this policy is delivered, in accordance with the terms of the application for the policy or any amendment to the policy. Renewal premiums will fall due on the first day of each premium term. Premiums may be paid for premium terms of 12, 6, or 3 months; such payments will be in accordance with our premium rates in force on the policy date. Such payments are as elected in the application. After age 65 the premium that then applies may be paid if the policy is continued. Unless you are disabled, you may change to one of the other premium terms on any premium due date. The payment of any premium will not continue this policy in force beyond the date when the next premium is due, except for the grace period, as it is defined in the policy.

## Assignments

No assignment of this policy will be binding on us until we receive a written copy at our home office. We are not responsible for the validity of any assignment.

8

## Dividends

This policy is entitled to share in our divisible surplus. Such surplus is determined from time to time by our Board of Directors and your share will be credited to this policy as a dividend. We do not expect that there will be any dividends before the end of the third policy year.

8a

EOC-7 (9/90) NY

FORM ✗✗✗✗ P158 ✗✗✗✗✗✗    POLICY H0337862

## Berkshire Life Insurance Company
**700 South Street**
**Pittsfield, Massachusetts 01201**

## Supplementary Agreement

### Presumptive Total Disability

As of the policy date, this agreement is part of the policy to which it is attached. (The policy date is shown on Page 1.)

The policy to which this supplementary agreement is attached is amended by the addition of the following provision.

### Presumptive Total Disability

The entire and irrecoverable loss of any of the following will constitute total disability:

1) Speech;
2) hearing;
3) sight of both eyes;
4) use of both hands;
5) use of both feet;
6) use of one hand and one foot.

If any of these events occur, the waiting period will be waived and the monthly indemnity will be payable.

## General Provision

All of the provisions of this policy that are not inconsistent with the provisions of this agreement will apply to this agreement.

## Berkshire Life Insurance Company

Signed at Pittsfield, Massachusetts

Secretary

PRES (6/87)

**Berkshire Life Insurance Company**
700 South Street
Pittsfield, Massachusetts 01201

## Supplementary Agreement

## Cost Of Living Indemnity Benefit

As of the policy date, this agreement is part of the policy to which it is attached; it is issued in consideration of the application and payment of the premium for this agreement (see Policy Schedule on Page 1).

## Definitions

When they are used in this agreement, the following terms are defined as:

**maximum monthly indemnity**—The amount payable for total disability under the terms of this policy.

**indexed monthly indemnity**—The amount to be used in place of the maximum monthly indemnity. This amount is initially equal to the maximum monthly indemnity. On each anniversary of the start of your disability, this amount will be increased by the applicable index rate. All increases will be on a compound basis.

If this policy contains provisions for residual disability benefits, and you meet the requirements for residual benefits, then indexed monthly indemnity will be used in place of maximum monthly indemnity to determine the monthly indemnity payable under the terms of the residual provisions.

**index month**—The fourth month prior to each anniversary of the start of your disability.

**base month**—The fourth month prior to the start of your disability.

**applicable index rate**—either
(1) **fixed rate**—The interest rate shown in the Cost of Living rider description on Page 1; or
(2) **flexible rate**—
   a. **maximum index rate**—The maximum interest rate shown in the Cost of Living rider description on Page 1;
   b. **minimum index rate**—The minimum interest rate shown in the Cost of Living rider description on Page 1.

**CPI**—The monthly Consumer Price Index for All Urban Consumers. This index is published by the Bureau of Labor Statistics of the U.S. Department of Labor. We have the right to use another nationally published index if:
(1) such index is similar to the CPI in scope and purpose; or
(2) any change in the composition, base, or method of computation makes the CPI inappropriate for this agreement; or
(3) the CPI is discontinued.

In any case, CPI means the index we select. The Commissioner of Insurance of your state has the right to approve this change.

## Indexed Monthly Indemnity

We will pay the indexed monthly indemnity in place of the maximum monthly indemnity, or compute your residual benefit using the indexed monthly indemnity in place of the maximum monthly indemnity, if:
(1) you become disabled while this policy is in force; and
(2) your disability begins before you reach age 65 and lasts for more than 360 days; and
(3) you qualify for the monthly indemnity for total disability under the terms of the policy to which this agreement is attached; or
(4) you qualify for the monthly indemnity for residual disability under the terms of the policy to which this agreement is attached, if the policy has provisions for residual disability.

## Indexing Limits

This section describes the methods by which benefits are indexed under this agreement. The method which applies to you, either fixed or flexible as described below, is indicated on the Policy Schedule.

**fixed rate**—If your policy includes the fixed rate (see Policy Schedule on Page 1), we will increase your indexed monthly indemnity by your fixed index rate on each anniversary of the start of your disability.

**flexible rate**—If your policy includes the flexible rate (see Policy Schedule on Page 1), we will increase your indexed monthly indemnity on each anniversary of the start of your disability by the percentage increase in the CPI between such consecutive anniversaries, but by no less than your minimum index rate. Increases in the indexed monthly index rate will be no greater than what would be granted by your maximum index rate applied on a cumulative basis, measured from the base month.

We will continue to increase your indexed monthly indemnity by the applicable index rate on each anniversary of the start of your disability until you cease to qualify for benefits under the policy to which this agreement is

7766 (3/94) NY

POL0011

attached or until the anniversary on or most nearly after your 65th birthday, whichever comes first. If your disability starts after you are age 63 and before you are age 65, however, we will increase your indexed monthly indemnity by the applicable index rate on the next two anniversaries of the start of your disability.

## Option To Purchase Increases

If you are receiving benefit increases under the terms of this rider, you may, after your disability ends and benefits cease, purchase from us an additional policy provided:

(1) The amount of the new policy may not be more than the indexed monthly indemnity in your last complete month of disability, less the original covered monthly indemnity. The amount of the new policy may not be less than $100;

(2) you must be actively and regularly working full-time performing all the duties of the occupation in which you are engaged at the time you exercise this option. You must apply within 90 days after your disability ends and benefits cease and before your 60th birthday.

The premiums for any additional policies will be based on your age on the Policy Date of the new policy.

Lifetime Injury and Sickness, Cost of Living and Residual Disability benefits may be included in the additional policy if they were included in the original policy.

## Termination Provision

This agreement will end on the policy anniversary that falls on or most nearly after your 65th birthday. The premiums that are payable for this policy on and after that date will not include the additional charge for this agreement.

## General Provisions

All of the provisions of this policy that are not inconsistent with the provisions of this agreement will apply to this agreement.

## Berkshire Life Insurance Company

Signed at Pittsfield, Massachusetts

Secretary

**Berkshire Life Insurance Company**
**700 South Street**
**Pittsfield, Massachusetts 01201**

## Supplementary Agreement

## Residual Disability Benefits For Injury or Sickness

As of the policy date, this agreement is a part of the policy to which it is attached; it is issued in consideration of the application and the payment of the premium for this agreement (see the Policy Schedule on Page 1).

## Definitions

When they are used in this agreement, the following terms are defined as:

**residual disability** means that due to injury or sickness you are unable: (1) to do one or more of your important daily business or professional duties; or (2) to perform your duties for the length of time that they usually require.

**waiting period** means the number of days after the commencement of each period of disability for which no monthly indemnity is to be paid. The waiting period with respect to normal pregnancy shall be the greater of 90 days or the number of days stated in the Policy Schedule. For the purpose of satisfying the waiting period, you must be disabled for the number of days required; however, with respect to total disability benefits only, you may be disabled in successive periods which total the number of days required; such successive periods of disability must be separated by not more than six months, and

result from the same cause or causes.

**residual monthly indemnity** is equal to (A÷B) x C, where: A equals your loss of monthly income; B equals your prior monthly income; and C equals your maximum monthly indemnity.

**maximum monthly indemnity** is the same as the monthly indemnity for total disability (see the Policy Schedule on Page 1). If the Agreement for Short Term Indemnity Benefits is a part of this policy, then these benefits will be included in the maximum monthly indemnity. Such benefits will cease to be included at the end of their maximum indemnity period.

**loss of monthly income** means the amount that is equal to your prior monthly income less your current monthly income. To be deemed a loss under the terms of this policy, this amount must be equal to at least 20% of your prior monthly income. If such a loss is more than 75% of such income, we will deem it to be a 100% loss.

**current monthly income** means your monthly income during the current month of disability for which a claim is being made.

**prior monthly income** is equal to (A÷B) x D, where:

A is the CPI for the last index month;
B is the CPI for the base month; and
D is your highest average monthly income in the 12 months just before the start of your disability, or in any 2 consecutive years in the 5 years before the start of your disability.

However, in the first year of disability the prior monthly income is equal to D.

**index month:** the fourth month prior to each anniversary of the start of your disability.

**base month:** the fourth month prior to the start of your disability.

**CPI:** the monthly Consumer Price Index for

all Urban Consumers. This index is published by the Bureau of Labor Statistics of the U.S. Department of Labor. We have the right to use another nationally published index if:

(1) such index is similar to the CPI in scope and purpose;
(2) any alteration in the composition, base or method of computation makes the CPI inappropriate for this agreement; or
(3) the CPI is discontinued.

In any case, CPI means the index selected. The Commissioner of Insurance of your state has the right to approve this change.

**monthly income** means your monthly salary, wages, bonuses, commissions, fees, deferred compensation or other compensation or income earned by you or attributable to you by a business in which you are an owner. This amount is arrived at after deduction of normal and customary unreimbursed business expenses but before deduction of any of your personal income taxes. It does not include any forms of unearned income except as derived from a business in which you are an owner. If we allow monthly income to be credited to a period in which it is actually received, rather than the period in which it is earned, it must be consistently credited in the same manner to determine prior monthly income and current monthly income during a period of disability.

## Residual Disability Indemnity

We will pay the residual monthly indemnity if:

(1) you become disabled for the waiting period (such disability may be total, residual or both);
(2) after the waiting period you continue to be residually disabled;

(3) you suffer a loss of your monthly income that is at least 20% of your prior monthly income;

(4) such loss is a result of your residual disability;

(5) you are under the regular care of a physician; and

(6) you are not totally disabled (as defined in the policy).

During the first 6 months of a residual disability following the waiting period, the minimum benefit payable will be 50% of the maximum monthly indemnity without regard to actual loss of monthly income.

We will waive the requirement for medical care if proof satisfactory to us is furnished that continued care would be of no benefit to you.

## Residual Indemnity Period

The maximum indemnity period is the same for total as for residual disability; but no residual monthly indemnity will be paid after the policy anniversary that falls on or most nearly after your sixty-fifth birthday, unless disability occurs on or after your sixty-third birthday.

If residual disability begins on or after your sixty-third birthday, we will still pay the benefit for such disability; but such payment will not be made for more than 24 consecutive months after the waiting period.

The combined benefit periods for total and residual disability cannot be longer than the maximum indemnity period for total disability.

## Waiver of Premium

We will waive the payment of any premium that falls due after you have been either residually or totally disabled for the waiting period; such waiver will be made only while you remain disabled.

We will also refund any premium which became due and was paid during the waiting period. After a period of disability during which we have waived premiums, you will have the right to resume the payment of premiums as they become due.

## Return To Work Benefit

If you:
(1) Are under age 65;
(2) have returned to full-time work doing all your duties immediately following a period for which we have paid a monthly indemnity; and
(3) have a loss of income as a result of your disability equal to at least 20% of your prior monthly income:

we will continue to pay you a monthly indemnity benefit for a period equal to the lesser of:
(1) 12 months, or
(2) the period for which your loss of income is at least 20% of your prior monthly income.

## Evidence of Monthly Income

We may ask you to prove your current or prior monthly income. Such proof can include, but not be limited to, copies of your U.S. income tax returns, certified audits, or other evidence that is satisfactory to us. You must prove your current monthly income as often, within reason, as we require it. If you do not provide such proof, we may stop paying the monthly disability indemnity.

## Termination

This agreement will cease to be in effect on the policy anniversary that falls on or most nearly after your sixty-fifth birthday, if this policy is still in force after such anniversary, the premium that is then in effect will not include a charge for this agreement.

## General Provisions

All of the provisions of this policy that are not inconsistent with the provisions of this agreement will apply to this agreement.

## Berkshire Life Insurance Company

Signed at Pittsfield, Massachusetts

Secretary

# Berkshire Life Insurance Company
700 South Street
Pittsfield, Massachusetts 01201

## Supplementary Agreement

## Future Purchase Option

As of the policy date, this agreement is a part of the policy to which it is attached; it is issued in consideration of the application and payment of the premium for this agreement.

## Definitions

Wherever they are used in this agreement, the following words have the following meanings: Option means any of the options to purchase additional policies under this agreement.

Option Date means every anniversary of the policy date while this agreement is in effect. The policy date is stated on the Policy Schedule. (See Page 1.)

Option Period means the 63-day period beginning 31 days before the Option Date and ending 31 days after the Option Date.

Special Option Date means the date you cease to be insured by a group long-term disability insurance plan sponsored by your current or former employer. Despite anything to the contrary in this agreement, this Option may be exercised only once.

Special Option Period means the 123-day period beginning 31-days before the Special Option Date and ending on the 91st day after it. The Aggregate Option Amount means the most additional monthly coverage you may buy under this agreement. The Aggregate Option Amount is stated on the Policy Schedule. (See Page 1.)

## Benefit Provision

While this policy is in full force you may buy additional policies from us: during any of the Option Periods; or, once during a Special Option Period. You do not have to give evidence of your health or of the nature of your occupation in order to buy an additional policy. Any such purchase must meet the limitations that follow. During Option Periods, or a Special Option Period, such purchase may be made up to and including the Option Period nearest your forty-fifth birthday. You may purchase additional policies that provide monthly coverage in an amount up to the Aggregate Option Amount. From then on you may buy additional policies in an amount up to the Aggregate Option Amount, if:

(1) the purchase is made during an Option Period or a Special Option Period up to and including the one nearest your forty-fifth birthday;

(2) you have not already bought additional policies in a total amount equal to the Aggregate Option Amount; and

(3) no one purchase of an additional policy exceeds one-third of your Aggregate Option Amount.

The total coverage of all additional policies under this agreement cannot exceed the Aggregate Option Amount.

All such additional policies are subject to these conditions:

(1) Each additional policy applied for, together with all disability coverage from this policy and any other disability income policies, will be subject to our published issue and participation limits in effect on the date an Option is exercised.

(2) Each additional policy will be issued only on a policy form that we then use on a regular basis. The renewal provisions in the additional policy must be no less favorable than those in this policy.

(3) The waiting and maximum benefit periods in the additional policy will be the same as those in this policy.

(4) Lifetime Injury and Sickness, Cost of Living and Residual benefits may be added to the additional policy if they are included in this policy.

(5) The premium for each additional policy will be based on the table of premium rates in use on the effective date of the additional policy. The premium will be based on the following factors: your age on the effective date of the additional policy; the class of risk to which you belonged on the effective date of this agreement; and the plan of insurance that is issued to you. If you submit to us satisfactory evidence that your class of risk on the effective date of the additional policy is more favorable than it was when this agreement went into effect, then we will apply the more favorable risk classification to the additional policy.

(6) Subject to the terms of this agreement, you may buy an additional policy during a period of disability. Benefits will be paid under the terms of the additional policy, including the applicable elimination period. However: (1) benefits will not be paid sooner than 90 days after the effective date of the additional policy; and (2)

776B (3/94) NY

benefits shall not exceed the lesser of 10% of the Aggregate Option Amount or $500. We will waive premiums for the additional policy for as long as we continue to waive premiums for this policy. Your income prior to the onset of disability will be used to determine if you are eligible for such insurance.

(7) Only conditions that are excluded under the terms of this policy will be excluded on the additional policy.

(8) Any representations you make in exercising an Option to purchase an additional policy will be subject to the time period of the incontestable provision of such policy.

(9) The effective date of an additional policy will be the Option Date (or Special Option Date); or the date on which the application and premium payment requirements are met, if later.

(10) We must receive both the written application and payment of the first premium for each additional policy during the Option Period or Special Option Period.

## Termination

This agreement will cease to be in effect on the earlier of (1) the last day of the Option Period nearest your fifty-fifth birthday; or (2) the date your total coverage purchased under this Agreement equals the Aggregate Option Amount. After this agreement ends, we will no longer charge you a premium for it.

## General Provisions

All the provisions of the policy that are not inconsistent with the provisions of this agreement will apply to this agreement.

## Berkshire Life Insurance Company

Signed at Pittsfield, Massachusetts

Secretary

## Endorsement

Endorsement Date: July 1, 2001

As of the Endorsement Date, the following changes are made:

The contract or certificate to which this is attached was issued in the name of Berkshire Life Insurance Company ("Berkshire Life"). That company has merged with The Guardian Life Insurance Company of America ("Guardian"). Guardian has assumed by operation of law all duties, liabilities and responsibilities under the contract or certificate as fully as though it had been issued in the name of Guardian instead of Berkshire Life. Therefore, all references in this policy and attached riders to Berkshire Life Insurance Company are hereby changed to The Guardian Life Insurance Company of America.

You should continue to use the same telephone numbers and addresses as before to send in requests, ask questions or otherwise receive service under the contract or certificate unless we have asked you to use different ones.

If the contract or certificate allowed you to vote for Berkshire Life's Board of Directors you may now vote for Guardian's Board of Directors. For details on how to vote write to our Secretary at The Guardian Life Insurance Company of America, 7 Hanover Square, New York, New York 10004-2616.

**The Guardian Life Insurance Company of America**
Administrative Office: 700 South Street
Pittsfield, Massachusetts 01201

*President*                    *Secretary*



RECEIVED JAN 17 1997

It is agreed that these amendments and declarations are to be taken and considered a part of said application and subject to the representations and agreements therein, and that the said application and these amendments are to be taken as a whole and considered as the basis, and form part of the contract or policy issued thereon.

It is further represented that the statements and answers in said application were complete and true when made and that no changes have occurred which would make said statements and answers incorrect or incomplete as of the present date.

The undersigned declare that a duplicate copy of the foregoing amendment to application is attached to the policy.

Jan 8-1997

This is made a part of Policy No. ...B0337902...
...shire Life Insurance Company attached and becomes effective on the Policy...

...by requested that the application for insurance ...Insurance Company on August 29, 1996
...as follows:

...20a.
...the "Executive"
...20a.
...Indemnity:        "$2,200"
...20c.
...ental Benefits        "$2,300 Mo tal:"
...re Purchase Option    "..."

**Berkshire**

**Application for Insurance/Annuity to Berkshire Life Insurance Company (Part 1)**

**1.** Full Name of Proposed Insured (Print—First Name, Middle Initial, Last Name—Leave space between names) **1b.** Sex
Stuart B. Fleishman
☐ Male ☐ Female

**2a.** Date of Birth   **b.** Birthplace   **c.** Citizen of
Mo. Day Yr     (State or Country)
1 10 57   Queens NY   USA

**7b.** Amount paid with application: Life $ _____
Disability $ 1173.75
Annuity $ _____

**c.** Was receipt for amount paid with application for Life and/or Disability Insurance delivered to you?   ☐ Yes ☐ No

**d.** Mail Premium Notices to   ☐ Business ☐ Residence
☐ Other _____

**e.** Who is to pay premiums? SELF

**3.** Social Security Numbers
**a.** Owner
Social Security No   110 52 4770
**b.** Proposed Insured Social Security No
**c.** Taxpayer I D No   1 05 24 770

**4.** Marital Status
☐ Married ☐ Single ☐ Separated ☐ Widowed ☐ Divorced

**8.** Annual income
(a) Earned income after business expenses and before taxes)   $ 170,780
(b) Other income (if more than 10% of earned income, describe in Item 13)   $ —0
(c) Net worth   $ 591,000

Complete the Financial Supplement when
a The amount of life insurance being applied for and in force with all companies is $1,000,000 or more;
b The amount of disability income being applied for and in force with all companies is $6,000 or more per month;
c The insurance applied for is for business reasons.

**5.** Residence Address   How long? 3 Yrs
No 217 Street Steven Place
City Woodmere   State NY
Zip Code 11598 Telephone (516) 569-7225

**6.** Occupation
**a.** Job Title Dermatologist
**b.** Exact Duties Director of Dermatology, Treatment of Skin Disorders

**9a.** Have you ever applied for a Life or Health Insurance policy that was declined, postponed, modified, amended, rated up, cancelled or had renewal or reinstatement refused?   ☐ Yes ☐ No

**b.** Have you applied for, or been examined for Life or Health insurance in any other company within the past twelve months?   ☐ Yes ☐ No

**c.** Have you during the past five years received, requested, or been refused disability, hospital, or medical benefits or a disability pension?   ☐ Yes ☐ No
(Give details of YES answers to a, b and c in Item 13)

Status of ___ % Travel   d. ___ % Supervision

**c.** Nature of Business Dermatologist

**e.** Name of Employer SELF Stuart B. Fleishman MD
(If more than one, use space in Item 13)
How long employed? 11 Yrs

**g.** Business Address   How long? 11 Yrs
No 77-34 Street 113½ St
City Forest Hills   State NY
Zip Code 11375 Telephone (718) 544-6659

**h.** Other Employment Full or Part Time _____
(If Yes, state details) _____

**10** Aviation, Travel, Activities   Yes No
**a.** Have you within the past three years, flown, or do you contemplate flying as a student pilot, pilot, crew member or with any duties aboard an aircraft in flight?   ☐ Yes ☐ No
(If YES complete Aviation Supplement)

**b.** Do you contemplate a change in residence to or travel in a foreign country?   ☐ Yes ☐ No

**c.** Have you during the past three years participated in or do you contemplate participating in scuba diving, skydiving, hang gliding, any form of motor racing, or any other hazardous activities?   ☐ Yes ☐ No
(Give details of YES answers to b and c in Item 13)

**7a.** Premiums Payable
☐ Annually ☐ Semi Annually ☐ Quarterly
☐ Monthly (for group billing only) ☐ Single Premium
☐ Check-O-Matic
☐ New C-O-M Service (Automatic Payment Plan Authorization required)
☐ Add to my existing C-O-M Service
☐ Other _____

Page 1

(Signatures required on pages 4 and 5)

71074

POL0019

**11. Insurance (including Group) and Annuities (in force or applied for)**

| Company | Face Amt. of Insurance | Accidental Death Benefit | Bus. or Pers. | Year of Issue |
|---|---|---|---|---|
| Equitable | $1 million | $ | Pers | 1994 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | Yes | No |
|---|---|---|
| b. Is policy applied for intended to replace or change any existing insurance or annuities in this or any other company? (If YES, state details in Item 13) | ☐ | ☒ |
| c. If above answer is Yes, have you received a disclosure statement? | ☐ | ☒ |
| | ☐ | ☒ |

**12. Disability Income Insurance**
(Describe all coverage in force including individual, franchise, association, group, or government plans)

| Company | Monthly Benefit | Year of Issue | Benefit Period | Other Benefits | To Be Terminated? |
|---|---|---|---|---|---|
| Equitable | $4000 | 1994 | 90/90/to 65 | | ☐ Yes Date _____ ☒ No |
| | | | | | ☐ Yes Date _____ ☐ No |
| | | | | | ☐ Yes Date _____ ☐ No |
| | | | | | ☐ Yes Date _____ ☐ No |

**13. Details and Special Requests** (Include requests for any additionals or alternate policies or for policy date other than provided by terms of this application. Identify questions and give details of YES answers.)

Date Plan 8/27/96

Page 2
Signatures required on Pages 4 and 5

| LIFE INSURANCE | | DISABILITY INSURANCE |
|---|---|---|

**20 a. Plan** ☒ Own Occupation ☐ Income Replacement
- ☒ Executive—Limited Issue
- ☐ Executive
- ☐ Executive II
- ☐ Berkshire

Step Rate ☐

Monthly Indemnity $4000
Indemnity Period ☐ _____ Months or ☒ To Age 65
Waiting Period __0__ __90__ Days

**b.** Occupational Class __4A 1__

**c. Supplemental Benefits**
- ☒ Residual Disability or ☐ Partial Disability
- ☒ Cost of Living—☒ 4% or ☐ 8%
- ☐ Contingent Monthly Income    $_____ Monthly
- ☐ Lifetime Accident
- ☐ Lifetime Accident and Sickness
- ☐ Future Purchase Option    $_____ Monthly
- ☐ Short Term Rider    $_____ Monthly
  - Indemnity Period_____Months, Wait Period____Days
- ☐ Other _____

**d** Is this part of a Salary Continuation Plan?  ☐ Yes ☒ No
If Yes, will the employer pay premiums for all
disability income coverage on this insured? ☐ Yes ☐ No
If Yes, include Presumptive Total Disability? ☐ Yes ☐ No

**21 a.** Overhead Expense—Occupational Class _____
- ☐ Professional   ☐ Business
- Indemnity Amount   $_____ per (monthly)
- Indemnity Period_____Months; Wait Period____Days

**b** Your share of covered expenses? $_____ and ____%
**c** ☐ Future Purchase Option $_____
**d.** ☐ Residual Disability (monthly)
**e.** Owner other than the Insured _____
**f.** Existing O E Coverage ☐ $ _____Monthly  ☐ None
To terminate? ☐ Yes—Date _____  ☐ No
Company _____

**22 a. Disability Buy Out**—Occupational Class _____
Premium Structure   ☐ Level   ☐ Step Rate
Funding ☐ Monthly   ☐ Lump Sum   ☐ Down Payment
(Combination of Monthly & Lump Sum)

Indemnity Amount $_____ (Monthly)   $_____ (Lump Sum)

Indemnity Period____Months   Wait Period____Months
☐ Presumptive Permanent Disability Benefit
☐ Future Purchase Option
Funding ☐ Monthly ☐ Lump Sum ☐ Down Payment
(Combination of Monthly & Lump Sum)

Option Amount $_____ (Monthly)   $_____ (Lump Sum)

Owner & Loss Payee _____
**b.** Is Disability Buy Out Ins now in force? ☐ Yes ☐ No
If YES, Name of Company _____
Will it be terminated? ☐ Yes — Date _____ ☐ No

---

| LIFE INSURANCE (left column) |
|---|

**Basic Plan** _____
**b.** Amount applied for $_____

**Supplemental Benefits**
- ☐ Waiver of Premium
- ☐ Accidental Death    $_____
- ☐ Guaranteed Insurability Option   $_____
- ☐ Annual Renewable Term Rider   $_____
- ☐ _____ (enter rider desired)   $_____
- ☐ Paid-Up Additions Rider
  - Additional Premium at Issue   $_____
  - or Additional Insurance at Issue   $_____

**16. Dividends**
- a. ☐ Paid in Cash
- b. ☐ Reduce Premium
- c. ☐ Paid up Additions
- d. ☐ Interest Accumulation
- e. ☐ 1 Year Term—Balance Interest Accumulation
- f. ☐ 1 Year Term—Balance Reduce Premium
- g. ☐ 1 Year Term and Paid up Additions
- h. ☐ Full 1 Year Term

**17. Is Automatic Premium Loan Provision elected, if available?**   ☐ Yes   ☐ No

**18. Beneficiary**—Print full name and relationship of each, including date of birth if under 18 (Class beneficiaries will share equally unless otherwise provided)
**a. Primary**

Spouse

**b. Contingent**

**19. Owner**—In whom is ownership, together with right to change beneficiaries to vest?
- ☐ In Proposed Insured
- ☐ In Applicant, if living otherwise in Applicant's estate
- ☐ In Applicant Corporation or its successors or assigns
- ☐ _____

---

| ANNUITY (Non-Qualified) | |
|---|---|

**23 a.** Annuity applied for   ☐ Immediate   ☐ FPA
**b.** Annuity Benefit Payable (if immediate)
☐ Annually ☐ Semi-annually ☐ Quarterly ☐ Monthly
**c.** Amount of Annuity benefit (if immediate) $_____
**d.** First Annuity payment
Date if Immediate Annuity _____
Age if FPA _____

**e.** Premium for mode selected in Item 7a   $_____
**d.** Form of Annuity (if Immediate)
- ☐ Life—No Refund     ☐ Joint and ____ Survivor*
- ☐ Life—Cash Refund     ☐ Joint and ____ Survivor*
- ☐ Life—Instalment Refund    _____ Years Certain
- ☐ Life—____Years Certain ☐
- *Give Joint Annuitant details in Item 13

Page 3
(Signatures required on pages 4 and 5)

710/4

POL0021



Berkshire Life Insurance Company
700 South Street
Pittsfield, Massachusetts 01201-8285

**Fraud Warning-New York**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

I (we) represent that the answers in this Part 1 are true and complete to the best of my (our) knowledge and belief; and that together with the statements of the Proposed Insured in Part 2, they shall form the basis and be a part of the contract of insurance, if issued. I (we) agree that except as otherwise stated in the receipt bearing the same number as this application, any policy or policies issued shall not be in effect unless and until (1) the full first premium has been paid and the policy or policies have been delivered to the owner, and (2) the health and other conditions that affect insurability of the Proposed Insured to the best of my (our) knowledge and belief are as described in this application. If life insurance becomes effective in the manner stated in the receipt, the amount of such insurance shall not exceed the limits set forth in such receipt.

No information acquired by any representative of the Company shall bind the Company unless it shall have been set out in writing in Part 1 or Part 2 of this application. Only the President, a Vice-President, the Secretary or an Assistant Secretary may make, modify, or discharge contracts or waive any of the Company's requirements, and then only in writing.

I, the Proposed Insured, acknowledge receipt of the Notice of Insurance Information Practices, the Fair Credit Reporting Act Disclosure, and the Medical Information Bureau Pre-Notice.

Under the penalties of perjury, I certify: (1) that the Number shown on this application is my correct Taxpayer Identification Number and (2) that I am not subject to backup withholding under the Internal Revenue Code either because: (a) I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends; or (b) the Internal Revenue Service has notified me that I am no longer subject to backup withholding.

Signed at Woodmere NY 8/29/96 (City-State) (Mo-Day-Yr)

Signed [signature] (Proposed Insured)

Witness Robert S[signature]

Signed ____________ (Applicant) (If Other Than Proposed Insured)

N/A

Signed ____________ (Owner) (For Life Insurance and Annuity Only If Other Than Applicant or Proposed Insured)

Signatures required on Pages 4 and 5

71074

DISABILITY INSURANCE

POL0023

|||||0018415753|

Berkshire Life Insurance Company
700 South Street
Pittsfield, Massachusetts 01201

## Application For Insurance/Annuity (Part 2—Medical)
## To Berkshire Life Insurance Company

1. Full Name of Proposed Insured — **STUART ROSS BITTERMAN**    Date of Birth — **12/10/57**

2. Your Personal Physician (If none, so state)
Name — **DR. JAFF BITTERMAN**
Address — **WOODBURY HOSPITAL**
City — **CONNECTICUT** ___ State **CT** Zip ___
How long has he/she known you, personal physician?
When last seen? — **OCT - 1996**
Reason last seen? — **PHYSICAL EXAMINATION**

ANSWER ALL QUESTIONS. CIRCLE APPROPRIATE ITEMS.
MARK YES OR NO WITH X. GIVE DETAILS IN SECTION 11.

| | Yes | No |
|---|---|---|
| 3. During the past five years have you | | |
| a. Consulted, been examined or treated by any physician or other practitioner? | | X |
| b. Been a patient in a hospital, clinic or sanatorium for observation, treatment or operation? | | X |
| c. Had periodic health examinations, X-rays electrocardiograms, stress test, special heart studies or blood or other diagnostic tests? | | X |
| 4. Are you now under treatment or taking medicine for any medical, surgical or psychiatric condition or are you scheduled for hospitalization, operation or diagnostic studies? | | X |
| 5. Have you ever had or been treated for | Yes | No |
| a. Chest pain, angina, heart attack, heart murmur, irregular heart, high blood pressure, arteriosclerosis or other disorder of the heart or blood vessels? | | X |
| b. Asthma, bronchitis, emphysema, pleurisy, tuberculosis, coughing of blood or other disorder of the lungs? | | X |
| c. Paralysis, stroke, epilepsy, convulsions, fainting or dizzy spells, recurring headaches or other disorder of the brain or nervous system? | | X |
| d. Anxiety, depression or other mental, emotional or psychiatric disorder? | | X |
| e. Nephritis, kidney stone? Albumin, sugar, blood or pus in the urine? Bladder or prostate trouble? Or any disorder of the male or female genital organs? | | X |
| f. Ulcer, gallbladder, liver, pancreas or intestinal disease? Hepatitis, cirrhosis, colitis or rectal disease? | | X |
| g. Arthritis, bursitis, gout, rheumatism, disc, sciatica or other disorder of the back, muscles, bones or joints? | | X |
| h. Diabetes, thyroid or other gland or blood disease? Cancer, tumor, or cyst of any kind? Anemia or other blood disease? Skin disease? Breast trouble? | | X |
| i. Any disease or disorder of the eyes, ears, nose or throat, or any significant loss of sight or hearing? | | X |

| | Yes | No |
|---|---|---|
| 6a. During the past ten years, have you been treated or have you been advised to be treated for alcoholism or any drug habit? | | X |
| b. Have you ever used barbiturates, narcotics, heroin, amphetamines, cocaine, or any drugs except as prescribed by a physician? | | X |
| 7. Have you used tobacco in any form in the past twelve months? | | X |
| 8. Have you ever been treated for, or been diagnosed as having deficiency of the immune system such as Acquired Immune Deficiency Syndrome (AIDS), or AIDS Related Complex (ARC)? | | X |
| 9. Are you now pregnant? (Due date) | | X |

| 10 FAMILY RECORD | Age if Living | State of Health or Cause of Death | Age at Death |
|---|---|---|---|
| Father | | Natural Cause | 71 |
| Mother | | Natural Cause | 69 |
| Siblings | ONE Brother — ONE Sister | | |
| No. Alive | 47 — 49 | | |
| No. Dead | | | |

11. DETAILS. (Identify question, include diagnosis, dates, and names and addresses of physicians and medical facilities.)

IMR - LOC # 857
REMIT TO: 1801 OAKLAND PLAZ
WALNUT CREEK , CA. 94596
68-0297864

I understand and agree that the statements and answers in this Part 2 are written as made by me are full, complete and true to the best of my knowledge and belief and that they shall be a part of the contract of insurance if issued. I expressly waive to the extent permitted by law on behalf of myself and any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has attended me or examined me from disclosing any knowledge or information thereby acquired, and I authorize any such disclosure to the extent as may be lawful.

Signed at — **WOODMERE N.Y.** (City-State)    Date — **11/11/1996** (Mo-Day-Yr)

Witness ____    Signed ____ (Proposed Insured)

|||||||||18415753|||||||

**Medical Examiner's Report**

Berkshire    Examination to be made in private and all items completed by the Medical Examiner in his own handwriting.

| 1. Name of Proposed Insured | | Age |
|---|---|---|
| STUART ROSS BITTERMAN | | 39 yrs |

2. Do you know this person ☐ Well ☐ Casually ☒ Not at all?

3. Is general appearance healthy? ☒ Yes ☐ No

| 4. | | |
|---|---|---|
| a. Measured height (in shoes) | 6 Ft | 2 In |
| b. Scale weight (clothed) : | | 210 lbs |
| c. How long has present weight been stationary? | | 10 yrs. |
| d. Weight one year ago? | | 210 lbs. |
| e. If a significant weight change, explain in Section 10. | | |

| 5. | | |
|---|---|---|
| a. Chest at full inspiration | | 51 In |
| b. Chest at expiration | | 47 In |
| c. Girth of abdomen at umbilicus | | 36 In |

**6. BLOOD PRESSURE, PULSE AND HEART**

| a. Blood Pressure | 1st Reading | 2nd Reading | 3rd Reading |
|---|---|---|---|
| Systolic | 120 | 120 | |
| Diastolic | 80 | 80 | |

| | |
|---|---|
| b. Pulse rate resting | 74 |
| Immediately after exercise (15 step ups) | |
| Pulse rate two minutes after exercise | |
| Any dysprea or pain with the exercise? | |
| c. Is the heart enlarged? | |
| Are there any murmurs? | |
| Any irregularity of rhythm? | |

d. Details of cardiovascular abnormalities

Your cardiac diagnosis here

7. Do you find any evidence of past or present disease of the (Give details in Section 10)  Yes  No

a. Eyes, ears nose, mouth or throat? ☐ ☒
b. Skin, lymph gland or musculo-skeletal system? ☐ ☒
c. Thyroid? Endocrine system? ☐ ☒
d. Brain or nervous system? ☐ ☒
e. Lungs or chest wall? ☐ ☒
f. Peripheral vessels, including varicose veins? ☐ ☒
g. Abdominal organs or hernia? ☐ ☒
h. Genito-urinary organs or breasts? ☐ ☒

8. a. Is there any marked impairment of sight or hearing? ☐ ☒
b. Any deformities or amputations? ☐ ☒

**9. Urine**

Spec grav _____ Albumin _____ Sugar _____
Please send specimen to our lab  If there is abnormality in current urine, if there is history of urinary tract disease or hypertension or diabetes, or if requested by agent

**10.** Details of YES answers to questions 7 and 8
Comments

IMR - LOC # 857
REMIT TO: 1801 OAKLAND #245
WALNUT CREEK , CA. 94596
68-0297864

I have examined the Proposed Insured and witnessed his (her) signature herein at

☐ My office   ☒ His (her) residence
☐ His (her) place of business   ☐ Other
on this _11/15_ day of _Nov_ 19 _96_ at _1:30_ ☐ A M ☒ P M

Agency Requesting Examination _____

Sign here _____  M

Please print your name and office address

**Financial Supplement**

Berkshire Life Insurance Company
700 South Street
Pittsfield, Massachusetts 01201

Full Name of Proposed Insured (Print — First Name, Middle Initial, Last Name — Leave space between names)  Date of Birth Mo Da Yr

Name: B i t t e r m a n    12 1 57

**Personal Insurance — Complete when**
The amount of life insurance being applied for and in force with all companies is $1,000,000 or more.
The amount of disability income being applied for and in force with all companies is $6,000 or more per month

**Income of Proposed Insured**
1. What are the earnings from your occupation or profession?
   Annual Rate

| | Current Year | Last Year |
|---|---|---|
| a. Salary, Wages, Fees and/or Commissions | 280,000 | 278,000 |
| b. Pension and Profit Sharing Plan Contributions (if self-employed) | | |
| c. Bonus | | |
| d. Earnings from any other occ (Give details in section C) | | |
| e. Total Earnings (a)+(b)+(c)+(d) | | |
| f. Deductible Business Expenses | | |
| g. Net Earnings Before Taxes | 170,780 | 168,000 |

2. What was your other income for the previous calendar year?

Dividends $ 6,000   Rental Income (gross less cash spent but before depreciation) $
Interest $ 5,000
Net Realized Capital Gains $   Other (Give details in sec C) $

3. Estimate your Net Worth (gross worth less any mortgage loans and other debts) $ ____ (Give details in sec C)

Cash, Savings, Stocks, Bonds, Cash Value of Life Insurance $ 150,000   Real Estate Res only $ 400,000
Interest in your business (excluding goodwill) $ 200,000   Other Real Estate $ —
Personal Property $ 5,000   Other (give details in sec C) $

**B. Business Insurance — complete for all Business Insurance Applications**  NA
1. Give names of all officers, key men or partners. (If there are any on whom business insurance is not carried or proposed, explain in section C.)

| Name | Title | % Owned | Amount of Business Ins. In Force | Amount of Business Ins. Proposed |
|---|---|---|---|---|
| | | | $ | $ |
| | | | | |
| | | | | |

2. If to cover loan, give loan amount, purpose, and repayment schedule in section C.

3. Financial
   a Total Assets $ 691,000
   b Total Liabilities $ 100,000
   c Net Worth (a−b) $ 591,000
   d Gross Annual Sales
      Current Year $ ____ Last Year $ ____
   e Net Profit after Taxes
      Current Year $ ____ Last Year $ ____
4. Estimated Fair Market Value $ ____

**C. Remarks** (Show any details to your answers here)

1991 Gross Income $ 280,254

**It is understood and agreed as follows**
The statements and answers made above are, to the best of my knowledge and belief, true and complete and correctly recorded. The Company may rely on them to determine the amount, if any, of insurance it will issue

Signed at  Woodmere NY   Date 8/29 19 96

Witness _____   Proposed Insured _____

Applicant (if other than Proposed Insured)

POL0026

THIS IS A DUPLICATE POLICY ISSUED IN LIEU OF LOST POLICY NUMBER H0337962 ORIGINALLY ISSUED AUGUST 28, 1996.

THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA

PITTSFIELD, MASSACHUSETTS
NOVEMBER 7, 2007

SECRETARY

AA914-4-2005

**Endorsements** (For Home Office Use Only)

# Executive/Executive Limited Issue Own Occupation Disability Income Policy

## Notice of Annual Meeting

By virtue of this policy, the owner is a member of the Berkshire Life Insurance Company. As such, the owner can vote either in person or by proxy at any annual meeting. The annual meetings are held at the home office at 10:00 a.m. on the first Monday in April each year.



**Berkshire**

Berkshire Life Insurance Company
700 South Street • Pittsfield, Massachusetts 01201-8285

4) NY

# EXHIBIT B

**Berkshire Life Insurance Company of America**
700 South Street
Pittsfield, Massachusetts 01201

*Berkshire Life Insurance Company of America*
*is a subsidiary of and an administrator for*
*The Guardian Life Insurance Company of America, New York, NY*

## DISABILITY CLAIMANT'S STATEMENT
For Assistance, Call Toll Free 1-888-275-7473

Please answer **every** question and complete the authorization. An incomplete form or authorization could delay the processing of your claim.

Stuart Bitterman
Name of Insured

Date of Birth: December 10, 1957

☐ Single
☒ Married

Height ___ Weight ___

217 Steven Place
Present Residence Address: No. and Street

Mailing Address (if different) ___

Woodmere, NY. 11598
City    State    Zip Code    Telephone

Policy #(s): H0337962

Social Security #: 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

---

### 1. Nature of Disability (Complete A **or** B)

A. ☐ Injury

Date and Time of Injury _____

Place Injury Occurred (Name and Address) _____

Description of Accident and Resulting Injuries _____

Names of witnesses _____

Was a report filed? ☐ Yes ☐ No   If "Yes," please provide copy of report

Any other injuries in past five years? ☐ Yes ☐ No   If "Yes," please provide date(s) and nature of injury(ies)

B. ☒ Sickness

Nature of Sickness *Irritable Bowel Syndrome, Spondylolisthesis, Spinal Stenosis, Degenerative disc disease, Neuroforaminal Stenosis, etc.*

Date of First Symptoms *Diagnosed 11/05/12/05 + gradual, but not diagnosed symptoms over past number of years*

Any other sickness in past 5 years? ☐ Yes ☐ No   If "Yes," please provide date(s) and nature of sickness. *Pneumonia (March, 2003), (Herpes Zoster 2/05, 12/05)*

Have you ever had the same or similar illness? ☐ Yes ☒ No

---

### 2. Period of Disability

A. I was totally unable to work in my occupation due to disability from *present, due to diagnosis, gradual reduction over past few years, pre-diagnosis.*
to _____ (date/time)

B. I was partially unable to work in my occupation due to disability from _____
to _____ (date/time)

C. Describe loss due to disability (i.e., time from work, specific duties of occupation, income) *Limited examination of patients and limited in-office surgery. Reduction consultations in office hours ~~scheduled~~ from in excess of 60 hours per week pre-disability gradually to fewer than 6 hours per week scheduled + fewer than 10 hours/week actual*

D. Since disability began have you been engaged in any other occupation or work activity? If so, please provide employer's name, address, dates worked and duties performed. *Supervision of Physician's Assistant. Included with hours set forth in C.*

2835-6-2001   *\* greater than 80% reduction in hours.*   CLAIMS JAN 1 3 2006

**3. Treatment**

A. Date of first treatment by a physician (or other medical care provider) for this condition ① *Irritable Bowel Syndrome*
   Name and address of primary care provider:
   *by Dr. Lewis Genuth, 2832 Linden Blvd. Brooklyn, N.Y. 11208 718-240-2099 11/05-present*
   *Orthopedic Issues by Dr. Isaac Cohen, 2 Lincoln Ave. Rockville Centre, NY 11570*

B. List all treating physicians:

| Name | Address | Telephone # | Dates of Treatment |
|---|---|---|---|
| *Lewis Genuth, MD. 2832 Linden Blvd. Brooklyn, NY 11208* | | *718-240-2099* | *11/05-present* |
| *Isaac Cohen, MD. 2 Lincoln Ave. Rockville Centre, N.Y. 11570* | | *516-536-2800* | *12/05-present* |

C. List the name and address of all hospitals where you have received treatment for this injury or sickness. Include dates for each

| Name | Address | Telephone # | Dates of Treatment |
|---|---|---|---|
| *N/A* | | | |

**4. Premium Payments**

What percentage of your premium is paid by your employer?

☐ All    ☒ None    ☐ _____ % (specify percentage)

**5. Other Benefits**

A. List all other companies with which you are insured for Disability (Health) and/or Medical Benefits (if "none," so state)

| Company | Policy No. | Type of Coverage | Group/ Individual | Effective Date of Coverage | Amount of Benefits (State Weekly or Monthly) |
|---|---|---|---|---|---|
| *AXA Equitable* | *22-957034290* | *Disability* | *Individual* | *7/10/94* | *'w $8,000* |
| *Met Life* | *6352166AH* | *Disability* | *Individual* | *11/15/96* | *$8,750* |

B. List all other benefits for which you are eligible, have applied, or you are now receiving:

| | Applied Yes No | Receiving Yes No | Eligible Yes No | Date Applied For | Amount Received Weekly Monthly | Effective Date |
|---|---|---|---|---|---|---|
| (1) Social Security (Self) | ☐ ☒ | ☐ ☒ | ☐ ☐ | | | |
| If denied, have you reapplied? | ☐ ☐ | ☐ ☐ | ☐ ☐ | | | |
| Social Security (Family) | ☐ ☐ | ☐ ☐ | ☐ ☐ | | | |
| If denied, have you reapplied? | ☐ ☐ | ☐ ☐ | ☐ ☐ | | | |
| (2) Workers' Compensation | ☐ ☒ | ☐ ☒ | ☐ ☐ | | | |
| (3) State Disability Insurance | ☐ ☒ | ☐ ☒ | ☐ ☐ | | | |
| (4) Retirement or Pension | ☐ ☒ | ☐ ☒ | ☐ ☐ | | | |
| (5) Salary Continuation | ☐ ☒ | ☐ ☒ | ☐ ☐ | | | |
| (6) Unemployment | ☐ ☒ | ☐ ☒ | ☐ ☐ | | | |
| (7) Government Retirement | ☐ ☒ | ☐ ☒ | ☐ ☐ | | | |
| (8) Union | ☐ ☒ | ☐ ☒ | ☐ ☐ | | | |
| (9) Other | ☐ ☒ | ☐ ☒ | ☐ ☐ | | | |

I declare that all answers, statements and information made or given by me, or at my direction, in connection with this claim and are have been complete and true. I further understand Berkshire Life Insurance Company of America or its representative(s) may request from time to time any documents which I have in my possession, supporting this statement, and I hereby agree to furnish them upon request.

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, may be committing a fraudulent insurance act, which is a crime and subject to criminal prosecution, substantial civil penalty and the stated value of the claim for each such violation.

| *12/26/05* | *Sb.* |
|---|---|
| Date | Signature of Insured |

- 2 -

CLAIM     form 1-8-2008

Claims Management Services
Berkshire Life Insurance Company of America
700 South Street
Pittsfield, MA 01201

Stuart Bitterman
217 Steven Place
Woodmere, NY. 11598.

Berkshire Life Insurance Company of America
700 South Street
Pittsfield, Massachusetts 01201
*Berkshire Life Insurance Company of America
is a subsidiary of and an administrator for
The Guardian Life Insurance Company of America, New York, NY*

**AUTHORIZATION TO OBTAIN INFORMATION**
For Assistance, Call Toll Free 1-888-275-7473

| | |
|---|---|
| Stuart Bitterman | 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 |
| Name of Insured | Social Security Number |
| 217 Steven Place, Woodmere NY  11578 | December 10, 1957 |
| Address of Insured | Date of Birth |
| H0337962 | *File #: 60001* |
| Policy Number(s) | |

## Permission to Obtain and Disclose Information

**I AUTHORIZE** any physician, medical or mental health professional, medical practitioner, hospital, clinic, healthcare or other medical or medically related facility, healthcare provider, pharmacy, pharmacy benefit manager, therapist, benefit plan administrator, business associate, insurer or reinsurer, consumer reporting agency subject to the Fair Credit Reporting Act, insurance support organization, insurance agent, employer, financial institution, Governmental Agency including The Social Security Administration, The Veteran's Administration or any other organization or person having any knowledge of me or my health to give Berkshire Life Insurance Company of America ("Berkshire") or its employees and agents, or its authorized representatives any information in its possession about me. This information includes, but is not limited to, medical information as to cause, treatment, diagnoses, prognoses, consultations, examinations, tests or prescriptions with respect to my physical or mental condition or treatment of me. This may include (but is not limited to) HIV infection, any disorder of the immune system, including acquired immune deficiency syndrome (AIDS), mental illness or use of alcohol or drugs. This information also includes non-medical information concerning me, my occupation, employment history, driving history, earnings or finances or information otherwise needed to determine policy claim benefits that may be due me

**I UNDERSTAND** that this authorization is part of the policy's Proof of Loss requirement and if I revoke or fail to sign this authorization or alter its content in any way, it may affect the handling of my claim, including the denial of benefits under my policy. Any information obtained will not be released by Berkshire Life Insurance Company of America to any person or organization except to: reinsuring companies, other persons (including my attending medical provider) or insurance support organizations performing business or legal services in connection with my claim or application for insurance or as may be otherwise lawfully required or as I may further authorize

I understand that I have the right to revoke this authorization in writing at any time by sending a written request for revocation to 700 South Street, Pittsfield, MA 01201  I understand that a revocation is not effective to the extent that Berkshire has already relied on this authorization, or to the extent that the company has a legal right to contest a claim under an insurance policy or to contest the policy itself

**I UNDERSTAND some states require that I be informed that:** "Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, may be committing a fraudulent insurance act, which is a crime and subject to criminal prosecution, substantial civil penalty and the stated value of the claim for each violation."

**I AGREE** the information obtained with this authorization may be used by Berkshire Life Insurance Company of America to determine eligibility for benefits under my policy. A photocopy of this form is as valid as the original, and I may request one. This form will be in force for the term of coverage of the policy or up to 24 months from the date shown below (12 months in Kansas)

**I, Stuart Bitterman, Date of Birth December 10, 1957, Social Security Number 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, AUTHORIZE** the Social Security Administration to release information or records about me to Berkshire or its authorized representative. This information is to be released in order to properly adjudicate my claim or continue my eligibility for benefits. Please release detailed earnings for up to the last ten years and/or summary record of total earnings and/or information from master benefit records regarding award, denial or continuing benefits.

I declare that all answers, statements and information made or given by me, or at my direction, in connection with this claim are and have been complete and true.

| | |
|---|---|
| *[signature]* | *12/15/05* |
| Authorizing Signature | Date |

_____
Relationship or authority, if other than Insured

2884-1-2005

# EXHIBIT C

Stuart Bitterman                                              February 16, 2006
217 Steven Place
Woodmere, NY 11598

Rebecca Bissaillon
Claims Management Services
Berkshire Life Insurance Company of America
700 South Street
Pittsfield, MA 01201
Tel: 888-275-7473 (ext. 4173)
Fax: 413-395-5984

To Rebecca Bissaillon:

Subject:  File No. 60001
          Policy No. H0337962

This will acknowledge receipt of your letter of January 20, 2006 and February 7, 2006.

I am pleased to enclose the summary of billings for the six month period ending 11/30/05.

I caution, the report provides the gross billing, actual approved amounts are frequently substantially less than the gross billed amounts.

As you may recall a substantial portion of the work is performed by a Physicians Assistant. When the data was input, no distinction was made between services provided by me and services provided by the Physicians Assistant.

I also enclose a similar report for the month of December 2005 and January 2006.

I would like to note that I believe that the matter does not fall within the residual disability provisions, as I believe I am totally disabled, as that term is defined by the policy of insurance.

My accountant has been advised to forward copies of the tax returns to you.

In the normal course of business I do not issue monthly profit and loss statements.

Sincerely,

Stuart Bitterman, MD

**CLAIMS**  FEB 2 1 2006

# EXHIBIT D

January 12, 2007

Attorney Ira Lipsius
Schindel, Farman, Lipsius
14 Penn Plaza
New York NY 10122

Dear Attorney Lipsius:

Subject:  Insured: Stuart Bitterman
          File No. 60001
          Policy No. H0337962

Thank you for taking the time to meet with Lance Faniel and myself on December 21,
2006.

As you are aware, we have been evaluating Dr. Bitterman's claim for benefits under the
above referenced policy.  In order to fully evaluate your client's claim we need to resolve
apparent inconsistencies in the information Dr. Bitterman provided on his application for
insurance and information we have received from Unum and Metropolitan Life Insurance
Company (Met Life).   Additionally, we need to clarify some issue with regard to Dr.
Bitterman's claim that he is totally disabled.  Resolution of these inconsistencies is
essential to our making a determination regarding Dr. Bitterman's eligibility for benefits
and the validity of his contract.

The issues that we are currently evaluating regarding the validity of Dr. Bitterman's
policy are set forth herein.  As you know, Dr. Bitterman applied for his policy with
Berkshire Life Insurance Company (Berkshire) on August 29, 1996 on the application he
informed Berkshire that he had coverage with Equitable Insurance Company (Equitable)
in the amount of $4,000.  Upon completion of the underwriting process a decision was
made on December 18, 1996 to offer Dr. Bitterman coverage in the amount of $2200.
However, due to the time that elapsed between when Dr. Bitterman signed the
Application for insurance and the decision to offer him coverage based on the
representations on the application, Dr. Bitterman was required to complete an
Amendment to Application.

On January 8, 1997 Dr. Bitterman signed the amendment to his application.  The
amendment states in part that it is further represented that the statements and answers in
said application were complete and true when made and that no changes have occurred

2

which would make said statements and answers incorrect or incomplete as of the present date. Berkshire relied on the statements made by Dr. Bitterman on the application along with his representations on the Amendment that nothing had changed that would make his representations incorrect on the Application.

During our evaluation of Dr. Bitterman's claim it has come to our attention that on August 11, 1996 Dr. Bitterman was applying for disability insurance with MetLife and that on November 18, 1996 he was issued disability coverage through MetLife in the amount of $7,000 with another $1400 in optional benefit. Considering this addition of coverage occurred during the period of time Dr. Bitterman signed his Application and signed the Amendment to Application he should have disclosed this information to Berkshire.

Additionally, on April 3, 1996 Dr. Bitterman received a letter from Equitable indicating that his current benefit was $4200 and that he could receive an approval for the maximum FIO increase. However, Dr. Bitterman had to submit an application and documentation of his most recent earnings. On June 23, 1996 Dr. Bitterman completed an application and afterwards he submitted documentation requested by Equitable on August 19, 1996. Subsequently a letter/ Policy Bill change was sent to Dr. Bitterman on August 21, 1996 informing him that a payment due for his recent policy change in the amount of $1,154.00. A follow up letter was sent on October 16, 1996 again requesting this information.

On October 29, 1996 Dr. Bitterman contacted Equitable with a question regarding what was used for income on his policy as he felt that the correct amount was not used to determine his eligibility for the FIO increase. On October 30, 1996, after leaving a message on October 29, 1996, Dr. Bitterman informed the representative from Equitable that he would be sending in new income documentation via the fax and on October 30, 1996 Dr. Bitterman forwarded a W-2 to the representative he spoke to the prior day.

After not receiving a response as to whether Dr. Bitterman accepted the increased change he applied for on July 10, 1996, Dr. Bitterman was again sent another letter dated December 10, 1996 from Equitable indicating that his premiums had increased due to a change in his policy. Finally, after not hearing from Dr. Bitterman another letter was sent informing him that he needed to submit $1443.30 by December 24, 1996 in order to accept the policy change that he requested on July 10, 1996. If they did not receive the monies the enhancement would not be effective. Indeed Dr Bitterman did forward the monies and accepted the increase in benefits he requested on July 10, 1996.

When Dr. Bitterman completed his application for insurance with Berkshire he was aware that his coverage through Equitable was $4200 not $4000. Additionally, when Dr. Bitterman signed the Amendment to his application for disability insurance with Berkshire he failed to inform us that he had new coverage through MetLife in the amount of $7000 with another $1400 in optional benefit and increased his amount of coverage with Equitable. Nor did he inform Berkshire that he had increased his Equitable insurance from 4200 to $7200. Had we known of Dr. Bitterman's coverage with

3

MetLife and increased coverage with Equitable, Berkshire would not have issued the policy as applied for, as Dr. Bitterman did not have the income to qualify for Berkshire coverage beyond his coverage with MetLife or the Equitable. .

However his policy Incontestable Provision states: *"This policy will be incontestable as to the statements, **except fraudulent statements**, contained in the application after it has been in force for a period of two years during your lifetime. No claim for disability, as it is defined in the policy, that begins two years from the effective date will be reduced or denied because a disease or physical condition existed prior to the effective date. This assumes that such disability was not excluded from coverage, by name or description, under this policy."*

Additionally, the policy includes a Fraud Warning which states: *"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation."*

So that we have a clear understanding as to why Dr. Bitterman did not disclose his newly issued policy with Met Life for $7000 or his newly increased coverage to $7200 with Equitable on the Amendment to Application please have Dr. Bitterman provide us with a written statement explaining why he failed to disclose this information.

We are currently evaluating the following issues with regard to Dr. Bitterman's claim. As you know Dr. Bitterman's policy provides for total disability benefits and residual disability benefits. His policy states that total disability means during the own occupation period the inability to perform the material and substantial duties of your own occupation. Your occupation means the occupation in which you are engaged immediately preceding the onset of disability.

Residual disability means that due to injury or sickness you are unable to (1) to do one or more of your important daily business or professional duties; or (2) to perform your duties for the length of time that they usually require.

Our understanding of Dr. Bitterman's pre-disability major and substantial duties of his occupation includes his ability to perform dermatological procedures including but not limited to biopsies and excisions as well as the supervision of a physician's assistant. Dr. Bitterman has informed us that the dermatological procedures he performed could take any where from 15/20 minutes up to an hour and a half.

In our field interview with Dr. Bitterman, he indicates that since 2003 he has had a physician's assistant in his office and currently employs one at this time and continues to supervise the physician's assistant as required by New York State Law. This information

4

indicates that Dr. Bitterman continues to perform at least one of his pre disability material and substantial duties.

While we note that the medical information in our file to date has not provided us with enough information to determine that the level of the claimed conditions rises to a disability we do note that Dr. Isaac Cohen has certified to a restriction/limitation on his Attending Physician's Statement dated June 14, 2006. This restriction/limitation states that Dr. Bitterman is unable to sit/stand for more than an hour. Based on our understanding of the time that Dr. Bitterman's procedures take, it does not appear that the restriction/limitation of not being able to sit/stand for more than an hour would prevent him from performing a significant number if not all of his pre disability procedures. It would also not appear to limit him from supervising his physician's assistant as required by New York state law.

If our understanding of this is not correct please have Dr. Bitterman explain to us in writing why he is unable to perform procedures within the limitation and restrictions outlined by his Attending Physician Dr. Cohen. Further, please have Dr. Bitterman explain in writing why he is unable to supervise his physician's assistant within the limitations and restrictions outlined by his attending physician.

Although the information in our file does not appear to support Dr. Bitterman's eligibility for total disability benefits, we have evaluated his eligibility for benefits under the residual disability provision of his policy.

As stated in the definition of residual disability it must be because of sickness or injury that the insured is unable to do one or more of his important daily or professional duties or to perform duties for the length of time they usually require. In our evaluation process we have obtained medical records from Dr. Joel Teicher which indicate that in December 2005 Dr. Bitterman treated for his back condition. The record states Dr. Bitterman is presently working at his regular duties of his profession and is capable of continuing to do so while receiving treatment. Additionally, Dr. Bitterman stated in our field interview that he did not reduce his hours significantly until April 2006. As such, it would appear most appropriate to evaluate any claim for disability as of that date.

We have completed an analysis of the financial information including tax returns and profit and loss statements provided by Dr. Bitterman. Although the profit and loss statements Dr. Bitterman provided are not in great detail as we usually require when determining eligibility for residual disability benefits, we nonetheless used the information you provided to determine whether or not you were suffering the requisite amount of loss under the policy. For the period of November 2005 through May 2006 the statements Dr. Bitterman provided do not support that he is suffering the requisite 20% loss due to claimed medical condition. June and July 2006 profit and loss statements do appear to indicate there is a loss, however, we are still uncertain as to what extent if any of this loss is due to the claimed disability.

5

Of course before making a final decision regarding his eligibility for benefits during this time, we would like the benefit of having greater detail with regard to Dr. Bitterman's revenues and expenses associated with his practice. In accordance with Dr. Bitterman's policy provisions we have retained the accounting firm of Callahan and Nawrocki to audit Dr. Bitterman's financial information in order to get more detailed documentation of Dr. Bitterman's profit and loss. In addition we would need current detailed profit and loss statements with regard to his earnings from August 2006 to the present. Furthermore, we request a complete copy of Dr. Bitterman's 2005 tax returns with all schedules and attachments and the monthly production reports from his office for the period of August 2006 to the present.

As you know in our correspondence dated September 12, 2006 we requested a progress report be completed by Dr. Bitterman and his treating physician. As of the date of this letter we have not received the requested progress report and have not received any additional medical documentation from Dr. Bitterman's attending physician supporting limitations and restrictions since receiving the June 14, 2006 report. At this time we have enclosed a progress report to be completed by Dr. Bitterman and his attending physician and ask that it be returned as soon as possible.

While we await receipt of the above requested information we will continue to evaluate Dr. Bitterman's claim. If you have any questions with regard to this correspondence or Dr. Bitterman's claim please contact the undersigned at 1-888-275-7473 ext. 4173.

Sincerely,

Rebecca J. Bissaillon ALHC
Claims Consultant

# EXHIBIT E

July 12, 2007

Attorney Ira Lipsius
Schindel, Farman, Lipsius
14 Penn Plaza
New York NY 10122

Dear Attorney Lipsius:

Subject:  Insured: Stuart Bitterman
          File No. 60001

This letter is in response to your correspondence dated June 29, 2007.

Please refer to our correspondence dated January 12, 2007, a copy of which is enclosed, we indicated to you that there are issues with regard to the issuance of Dr. Bitterman's policy which are still not resolved.  Additionally, there are outstanding issues with regard to Dr. Bitterman's claim that need to be clarified in order to determine whether or not he is eligible for benefits under his policy.  As of the date of this letter and despite our repeated requests, we have not received any documentation that would clarify any of the issues raised in that correspondence and enable us to make a claim decision regarding eligibility for benefits.

As you know, Dr. Bitterman's policy provides for total disability benefits and residual disability benefits.  His policy states that total disability means during the own occupation period the inability to perform the material and substantial duties of his occupation.  Your occupation means the occupation in which you are engaged immediately preceding the onset of disability.  Residual disability means that due to sickness or injury you are unable to (1) to do one or more of your important daily business or professional duties; or (2) to perform your duties for the length of time that they usually require.

As we explained our understanding of Dr. Bitterman's pre disability material and substantial duties of his occupation includes his ability to perform dermatological procedures including but not limited to biopsies and excisions as well as managing his practice and supervising a physician's assistant.  The documentation and information provided to date indicates that since 2002 Dr. Bitterman has employed a physician's assistant and that currently he still employs one, thereby continuing to supervise the physician's assistant as required by New York State law.  As such, it appears he

continues to be able to perform some of his material and substantial duties of his occupation.

Additionally, although you suggest that Dr. Bitterman worked an eight to twelve day prior to his disability, to date we have not received documentation to substantiate the extent to which Dr. Bitterman was working these hours performing office visits and dermatological procedures prior to disability.

Further it is not clear from the medical information you have provided and we have gathered that Dr. Bitterman is completely limited and restricted from being able to perform office visits and dermatological procedures. The records from Dr. Joel Teicher, who treated Dr. Bitterman in December 2005, stated that Dr. Bitterman was presently working his regular duties of his profession and capable of continuing to do so while receiving treatment. Also Dr. Bitterman stated in our field interview that he did not significantly reduce his hours until April 2006.

Based on the above we informed you in our last correspondence that our file does not appear to support Dr. Bitterman's eligibility for total disability benefits. However we informed you that we did evaluate Dr. Bitterman's eligibility for benefits under the residual disability provision of his policy.

We also informed you that the financial information provided was not in as great detail as we normally require, but nonetheless we evaluated the information and documentation provided, however the documentation provided for the period of November 2005 through May 2006 did not reveal that Dr. Bitterman was suffering a loss of income due to his claimed medical condition, sickness or injury. Further although there appeared to be some loss in June and July 2006 we were uncertain as to what extent if any this loss is due to the insured's medical condition. To ensure a complete and proper evaluation of Dr. Bitterman's claim we retained an accounting firm and asked that they have access to Dr. Bitterman's financial information, tax returns and monthly production reports.

On April 18, 2007 you received a correspondence from Callaghan and Nawrocki requesting information from and a meeting with Dr. Bitterman, in response we received a request to sign a non disclosure agreement in May 2007 and then on June 29, 2007 you indicated that only if we are prepared to approve Dr. Bitterman's claim, deposit the total benefit due plus 9% interest in an interest bearing account are you willing to allow the independent audit to take place.

Although we continue to remain willing to evaluate Dr. Bitterman's eligibility for benefits under the terms of his policy it is only through the accounting firm's ability to meet with the insured and evaluate the documentation requested that we are able to evaluate whether Dr. Bitterman is eligible for benefits under the terms of his policy.

We await the opportunity for our retained accounting firm to meet with you and your client and review the documentation necessary to evaluate Dr. Bitterman's claim. Further, it may be helpful at this point for Dr. Bitterman to provide us with copies of his

3

2006 tax returns including all schedules and attachments as well as complete copies of malpractice insurance and applications for mal practice insurance for physician's assistants in his employment for 2002 to the present. We are willing to further discuss and try to resolve the outstanding issues with you, please feel free to call after you have reviewed this letter.

We note that you have requested a complete copy of Dr. Bitterman's claim file. Please be advised that it is not our practice to disseminate any contents of our file, which is assembled to evaluate a claim. Accordingly, at this time, we decline to provide you with a copy of our complete claim file. It is not our practice to provide any contents of our file that may include proprietary information, work product and confidential communications. Similarly, we decline to provide those items and particulars in our file that are available from third parties, such as medical and employment records.

We are, however, happy to provide you copies of documentation in our claim file submitted directly by you, i.e claim forms, progress reports, financial records, correspondence, as well as our correspondence to you. If you do not already have copies of this information, please let us know, and we will be happy to provide it to you.

Upon receipt of the requested information Dr. Bitterman's file will receive our prompt attention, in the meantime should you have any questions or concerns or need additional assistance please contact Claims Management Services toll free at 1-888-275-7473 ext. 4173.

Sincerely,

Rebecca J. Bissaillon ALHC
Claims Consultant

# EXHIBIT F

**FAX** SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP

ATTORNEYS AT LAW

14 PENN PLAZA

SUITE 500

NEW YORK, N.Y. 10122

NEW JERSEY OFFICE
4 CORNWALL DRIVE, SUITE 101
EAST BRUNSWICK, NJ 08816
(738) 390 0186
FACSIMILE (738) 432-7706

Writer's Extension 226
E-Mail: clipsius@sfl-legal.com

(212) 563-1710
FACSIMILE (212) 695-6602
WEBSITE: www.sfl-legal.com

August 7, 2007

*VIA E-MAIL AND FACSIMILE*

Ms. Rebecca J. Bissaillon, ALHC
Claims Consultant
Berkshire Life Insurance Company of America
700 South Street
Pittsfield, MA 01201
E-Mail: Rebecca_bissaillon@berkshirelife.com

     Re:   Stuart Bitterman
           Your File No.: 60001
           Policy No.: H0337962
           Our File No.: 4060.0001

Dear Ms. Bissaillon:

     You are presently in possession of authorizations to secure records and information concerning Dr. Bitterman. All authorizations signed by Dr. Bitterman are hereby revoked. Pursuant to the revocation of the authorizations, you are to cease and desist from utilizing these authorizations to secure any records or information.

     In addition, any records received by Berkshire Life Insurance Company based on prior authority are not to be opened and are to be returned to either the originator or forwarded to our office? If these records are opened, do not copy or review the records and have them sent immediately back to the originator or forward the records to our offices.

     Thank you for your cooperation in this matter.

                Very truly yours,

                SCHINDEL, FARMAN, LIPSIUS,
                GARDNER & RABINOVICH, LLP

                Cheryl D. Lipsius

CDL/ea

CLA... AUG 0 8 2007

# EXHIBIT G

August 27, 2007

Attorney Ira Lipsius
Schindel, Farman, Lipsius
14 Penn Plaza
New York NY 10122

Dear Attorney Lipsius:

Subject: Insured: Stuart Bitterman
         File No. 60001

We have received your letter dated August 7, 2007. We note that you have revoked the
authorization and will not utilize it any further in our evaluation of Dr. Bitterman's claim.

On January 12, 2007 and again on July 12, 2007, copies enclosed, we have outlined the
issues regarding Dr. Bitterman's policy and claim. At this time, these issues have not
been resolved and as of the date of this letter and despite our repeated requests, we have
not received any documentation that would clarify any of the issues raised in those
correspondences and enable us to make a claim decision regarding eligibility for benefits.

As you know, Dr. Bitterman's policy provides for total disability benefits and residual
disability benefits. His policy states that total disability means during the own occupation
period the inability to perform the material and substantial duties of his occupation. Your
occupation means the occupation in which you are engaged immediately preceding the
onset of disability. Residual disability means that due to sickness or injury you are
unable to (1) to do one or more of your important daily business or professional duties; or
(2) to perform your duties for the length of time that they usually require.

To date our understanding of Dr. Bitterman's pre disability material and substantial
duties of his occupation includes his ability to perform dermatological procedures
including but not limited to biopsies and excisions as well as managing his practice and
supervising a physician's assistant. The documentation and information provided to date
indicates that since 2002 Dr. Bitterman has employed a physician's assistant and that
currently he still employs one, thereby continuing to supervise the physician's assistant as
required by New York State law. As such, it appears he continues to be able to perform
some of his material and substantial duties of his occupation.

Additionally, although you suggest that Dr. Bitterman worked an eight to twelve hours day prior to his disability, to date we have not received documentation to substantiate the extent to which Dr. Bitterman was working these hours performing office visits and dermatological procedures prior to his claimed disability.

Further it is not clear from the medical information provided to date, whether Dr. Bitterman is completely limited from being able to perform office visits and dermatological procedures.

Based on the above, our file does not appear to support Dr. Bitterman's eligibility for total disability benefits. However we informed you that we did evaluate Dr. Bitterman's eligibility for benefits under the residual disability provision of his policy.

We have also informed you on several occasions that the financial information provided was not in as great detail as we normally require, but nonetheless we evaluated the information and documentation provided, however the documentation provided for the period of November 2005 through May 2006 did not reveal that Dr. Bitterman was suffering a loss of income due to his claimed medical condition, sickness or injury. Further, although there appeared to be some income loss in June and July 2006 we were uncertain as to what extent if any this loss is due to the insured's medical condition. To ensure a complete and proper evaluation of Dr. Bitterman's claim we retained an accounting firm and asked that they have access to Dr. Bitterman's financial information, tax returns and monthly production reports.

We await the opportunity for our retained accounting firm to meet with you and your client and review the documentation necessary to evaluate Dr. Bitterman's claim. Further, it may be helpful at this point for Dr. Bitterman to provide us with copies of his 2006 tax returns including all schedules and attachments as well as complete copies of malpractice insurance and applications for malpractice insurance for physician's assistants in his employment for 2002 to the present. We are willing to further discuss and try to resolve the outstanding issues with you, please feel free to call after you have reviewed this letter.

Although we continue to remain willing to evaluate Dr. Bitterman's eligibility for benefits under the terms of his policy it is only through the accounting firm's ability to meet with the insured and evaluate the documentation requested that we are able to evaluate whether Dr. Bitterman is eligible for benefits under the terms of his policy.

To be of service to Dr. Bitterman and in good faith of his cooperation with our need to evaluate his claim, we placed his policy on waiver of premium. Since DR. Bitterman is no longer willing to assist us in providing us with information and documentation necessary to evaluate his claim we are returning his policy to premium paying status. Should Dr. Bitterman wish to continue coverage with Berkshire Life Insurance Company of America, he must remit payment when requested by our Premium Payments Department. The request for payment of premiums will be sent under separate cover.

As we have not received any of the information requested nor has our retained accounting firm been able to meet with Dr. Bitterman it does not appear that we are able to evaluate Dr. Bitterman's claim any further and are not able to be of assistance to him. At this time we are proceeding with the closing of his file. If you feel that we have reached this decision in error, please be advised that you have at least 180 days in which to appeal this decision. If you wish to appeal, you must request an appeal in writing, to include identification of those aspects of our decision that you may feel are in error and your reasons why. You may also contact the Department of Insurance in your state, whose address and telephone number appears below. Should you have any questions or concerns or need additional assistance please contact Claims Management Services toll free at 1-888-275-7473 ext. 4173.

Sincerely,

Rebecca J. Bissaillon ALHC
Claims Consultant

State of New York
Department of Insurance
25 Beaver Street
New York NY  10004-2319
Phone:  (212) 480-2301

# EXHIBIT H

# McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

### ATTORNEYS AT LAW

1300 MOUNT KEMBLE AVENUE
P.O. BOX 2075
MORRISTOWN, NEW JERSEY 07962-2075
(973) 993-8100
FACSIMILE (973) 425-0161

STEVEN P. DEL MAURO
Direct Dial: (973) 425-8206
sdelmauro@mdmc-law.com

February 14, 2008

**VIA FACSIMILE**
Ira Lipsius, Esq.
Schindel, Farman, Lipsius, Gardner & Rabinovich, LLC
14 Penn Plaza, Suite 500
New York, NY 10122

RE:  **Stuart Bitterman, M.D. v. Berkshire Life Insurance Company of America**
**Civil Action No.:  07-cv-11061**

Dear Ira:

This letter shall serve to confirm our telephone conversation on Tuesday, February 12 and Wednesday, February 13, 2008, in connection with the above matter. That is, we have reached a full and complete settlement of all claims made the subject of this civil action and arising under the policy of disability income insurance issued by Berkshire Life.

1.    In particular, we agreed that Berkshire Life shall pay $170,000.00, in lump sum, no later than fourteen (14) days following receipt of a signed release and settlement agreement.

2.    Dr. Bitterman shall furnish Berkshire Life with a full, complete and comprehensive general release releasing any and all claims which were or could have been asserted in the civil action, together with any matter involving the application for, issuance of, including any claim for benefits arising under the disability policy.

3.    Dr. Bitterman agrees that the policy of disability income insurance shall be cancelled, terminated and all coverages thereunder, for all times, shall be null and void.

4.    The parties agree to maintain confidential the settlement which is not to be disclosed absent an authorization executed by Dr. Bitterman, in response to a judicial subpoena or as the parties are reasonably required pursuant to law, regulation, and/or oversight.

5.    The parties agree that the civil action shall be dismissed with prejudice, without cost and with each party bearing their own attorney fees.

McElroy, Deutsch, Mulvaney & Carpenter, LLP

Page 2

We will undertake preparation of a draft release and settlement agreement for your review and consideration. We understand Judge Scheindlin has allowed the parties until March 10th to conclude the terms of the settlement.

Thank you for your kind courtesy and cooperation in this regard.

Very truly yours,

McElroy, Deutsch, Mulvaney & Carpenter, LLP

Steven P. Del Mauro

SPD:bk
1053248_1.doc

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO            0945
RECIPIENT ADDRESS   12126956602
DESTINATION ID
ST  TIME            02/15 17.29
TIME USE            00'27
PAGES SENT          3
RESULT              OK
```

# MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
### ATTORNEYS AT LAW

1300 MOUNT KEMBLE AVENUE
P.O. BOX 2075
MORRISTOWN, NEW JERSEY 07962-2075
(973) 993-8100
FACSIMILE (973) 425-0161

### FACSIMILE TRANSMITTAL SHEET

| TO: Ira Lipsius | FAX: 212-695-6602 |
|---|---|
| From: Steven P. Del Mauro | Date: February 15, 2008 |
| Client Number: b0566 | Matter Number: 1005 |
| RE: Bitterman | # of Pages: 3 (Including Fax Cover Sheet) |
| If you do not receive all pages, please contact Bridgett at (973) 993-8100 X8793 | |

Notes/Comments:

Please see attached.

# EXHIBIT I

# Bridgette Kliesh

**From:** Steven P  Del Mauro

**Sent:** Wednesday, March 05, 2008 10:59 AM

**To:** Bridgette Kliesh

**Subject:** FW: Bitterman

Please copy each

> **Steven P. Del Mauro**
> **McElroy, Deutsch, Mulvaney&Carpenter,LLP**
> **973 425-8206**
> **973 425-0161 (fax)**
> **sdelmauro@mdmc-law.com**

THE INFORMATION CONTAINED IN THIS MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE.

This message may be an attorney-client communication. and as such is privileged and confidential  If the reader of this message is not the intended recipient or any agent responsible for delivering it to the intended recipient. you are hereby notified that you have received this document in error. and that any review. dissemination. distribution or copying of this message is strictly prohibited  If you have received this communication in error. please notify us immediately by reply e-mail message or by telephone and delete the original message from your e-mail system and/or computer database  Thank you

-----Original Message-----
**From:** Ira S. Lipsius [mailto:iral@sfl-legal.com]
**Sent:** Tuesday, March 04, 2008 9:47 AM
**To:** Steven P. Del Mauro
**Subject:** Bitterman

Good Morning Steve:
Please find my changes to the release (document 478203 doc), your draft, untouched, and a comparison of the documents (document 478378 doc)
I would appreciate your prompt review
I received a message from client's counsel advising that the delay was not your fault  I hope you did not believe I was blaming you for the delay   I understood your client was responsible for the delay
You will note that the only changes were reciprocity on the confidentiality, and language limiting the release to the issue of the litigation  Cosmetically, I made "Parties" a defined terms, and your draft mentioned "Policies," I changed it to "Policy "
Finally, I trust your client will remove the file from the claims and the underwriting departments so that information will not be inadvertently provided to other insurers   Further, the staff at your client should be advised of the confidential nature of the information
Thank you for your assistance


Ira S. Lipsius
Schindel, Farman, Lipsius, Gardner & Rabinovich, LLP
14 Penn Plaza
New York, NY 10122
212-563-1710 ext. 202
fax: 212-695-6602

**From:** Steven P. Del Mauro [mailto:sdelmauro@mdmc-law.com]
**Sent:** Monday, March 03, 2008 2:42 PM

Attached is a draft of the release and settlement agreement. It does not include the confidentiality provision that you wanted to propose for our consideration. I do realize there are a few typos, which will be cleaned up when we get to a final form. I wanted to get this quickly to you to follow our last conversation. S

Steven P. Del Mauro

McElroy, Deutsch, Mulvaney&Carpenter,LLP

973 425-8206

973 425-0161 (fax)

sdelmauro@mdmc-law.com

THE INFORMATION CONTAINED IN THIS MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE.

This message may be an attorney-client communication. and as such is privileged and confidential. If the reader of this message is not the intended recipient or any agent responsible for delivering it to the intended recipient. you are hereby notified that you have received this document in error. and that any review. dissemination. distribution or copying of this message is strictly prohibited. If you have received this communication in error. please notify us immediately by reply e-mail message or by telephone and delete the original message from your e-mail system and/or computer database. Thank you

## SETTLEMENT AGREEMENT AND COMPLETE RELEASE

This Settlement Agreement and Complete Release (the "Agreement") is entered into between Stuart Bitterman ("PLAINTIFF") of 217 Steven Pl. Woodmere NY 11598, and The Guardian Life Insurance Company of America ("Guardian") of 7 Hanover Square, New York, NY as successor-in-interest to Berkshire Life Insurance Company ("Berkshire") and Berkshire Life Insurance Company of America ("BLICOA") of 700 South Street, Pittsfield, Massachusetts, on the last date acknowledged below.

### W I T N E S S E T H:

**WHEREAS,** on or about August 28, 1996 Berkshire issued Disability Income Policy No. HO337962 (the "Policy") to PLAINTIFF;

**WHEREAS,** Effective July 1, 2001, Berkshire merged into and with Guardian, Guardian became the successor-in-interest to the Policy, and BLICOA, a wholly-owned subsidiary of Guardian, assumed administration of the Policy and any claims and liabilities thereunder; and

**WHEREAS**, PLAINTIFF claims that on or about November 1, 2005 he became totally disabled under the Policies, and thereafter filed a claim for benefits (the "Claim") under the Policies alleging the disability (the "Disability"); and

**WHEREAS**, a dispute arose between PLAINTIFF, Guardian and BLICOA as to the Disability, the payment of benefits and the effectiveness of coverage under the Policies; and

**WHEREAS**, on or about October 19, 2007 PLAINTIFF filed an action against BLICOA in the Supreme Court of the State of New York, County of New York, Index No. 07113844 and thereafter BLICOA removed the matter to the United States District Court for the Southern District of New York Case No. 07 CV 11061 (the "Suit"); and

WHEREAS, the parties desire to settle and resolve their controversies under the Claim, the Disability, the Suit and the Policy; and

WHEREAS, the parties intend that the full terms and conditions of the compromise and settlement be set forth in this Agreement.

NOW, THEREFORE, in consideration of the amounts to be paid hereunder and mutual promises and covenants herein set forth, and for other good and valuable consideration, the parties AGREE as follows:

1. **Payment.** Guardian, through its administrator BLICOA, shall within ten (10) business days of its receipt of this Agreement signed by PLAINTIFF and acknowledged before a Notary Public and signed as to form and confidentiality by PLAINTIFF's attorneys, McMahon, Martine & Gallagher, LLP, and its receipt of the original Policies (as referenced above) and of all other documents specified and required by this Agreement, pay PLAINTIFF the total sum of ONE HUNDRED SEVENTY THOUSAND AND NO/100 Dollars ($170,000.00), which PLAINTIFF accepts in full consideration for signing the Agreement. No representation is made by Guardian, Berkshire or BLICOA regarding any potential tax consequences of the above-cited payment, and PLAINTIFF agrees and understands that neither Guardian, Berkshire nor BLICOA have any responsibility for any tax consequences of the settlement payment made herein.

2. **Release.** PLAINTIFF, for himself, his heirs, representatives, assigns, and agents, RELEASES, ACQUITS, AND FOREVER DISCHARGES Guardian, Berkshire and BLICOA and their predecessors, representatives, parent companies, subsidiaries, affiliates, Policyholders, officers, directors, employees, agents, brokers, attorneys, successors, and assigns, any and all other entities and person in privity with any of them, from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts,

controversies, agreements, promises, variances, trespasses, damages, judgments, extents,

executions, claims, liabilities and demands whatsoever, in law, admiralty or equity, which

against Guardian, Berkshire and/or BLICOA, PLAINTIFF, PLAINTIFF's heirs, representatives,

agents, executors, administrators, successors and assigns ever had, now have or hereafter can,

shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the

beginning of the world to the day of the date of this Agreement, including, but not limited to, any

and all claims, counterclaims, demands, debts, liabilities, actions and causes of action, known or

unknown, past, present, or future, arising out of or relating to: (1) the Policies and any and all

claims (past, present, or future) for coverage or benefits thereunder; (2) the Claim and

Guardian's, Berkshire's, and BLICOA's processing, investigation and/or evaluation thereof; (3)

the Disability; (4) the Suit; (5) all claims assertable against Guardian, Berkshire and/or BLICOA,

including all contractual and extra-contractual, federal or state, statutory or common law, causes

of action, including, without limitation, all claims for benefits, actual damages, treble damages,

attorneys' fees and costs, prejudgment and post-judgment interest, statutory penalties, and

punitive and exemplary damages and the like; (6) any claim for bad faith, fraud or violation of

New York Statutes and/or the New York Insurance Code; and (7) any act, transaction, or

occurrence through the date hereof.

3. **Cancellation/Surrender of Policy.**  To the extent the Policy is or would be deemed

to be in effect as of the date of this Agreement, PLAINTIFF hereby surrenders the Policy, and

the Policy is hereby canceled and forever terminated.  PLAINTIFF understands and agrees that

no further benefits whatsoever will be payable under the Policy and that no rights or coverage

will exist under the Policy.  The original Policy shall be returned to BLICOA as administrator for

Guardian, or, if lost, an affidavit to that effect shall be executed by PLAINTIFF. PLAINTIFF further agrees that he will not seek to be insured under any policy of insurance issued by Guardian or any of its subsidiaries (including but not limited to BLICOA) nor will he permit anyone to enroll him for coverage or otherwise cause him to be covered under any Guardian or BLICOA insurance policy

4. **Dismissal.** By executing this Agreement, the parties authorize and instruct their respective attorneys to file a Stipulation of Discontinuance with Prejudice of the Suit, with each party to bear its own costs and attorneys' fees.

5. **Indemnification.** PLAINTIFF warrants and represents that he is the sole owner of the claims being released herein and has not assigned any such claims. In that regard, PLAINTIFF agrees to indemnify, defend, and hold Guardian, Berkshire and BLICOA harmless from any claim that might be asserted by or through him against Guardian, Berkshire and/or BLICOA relating to the Policy, or any other matter which is the subject of PLAINTIFF's release herein, including, without limitation, reasonable attorneys' fees and costs of court.

6. **No Admission.** The parties to this Agreement expressly recognize that any payments or agreements made herein are not considered admission of any liability or responsibility for, or of the correctness of, any of the claims which were or may have been asserted by PLAINTIFF, but are made solely for purposes of avoiding the costs and/or risks of further litigation.

7. **No Further Actions**. PLAINTIFF agrees never to commence, prosecute, or cause to be prosecuted against Guardian, Berkshire or BLICOA any complaint, suit, or proceedings based on the Policies, the Disability, the Claim, or the Suit. PLAINTIFF represents that he is unaware of any claim or cause of action he has against Guardian, Berkshire and/or BLICOA which is not released by this Agreement and DEFENDANT promises that he shall not commence any civil

action against Guardian, Berkshire and/or BLICOA in the future based on acts, transactions, or occurrences known or unknown to him at the date of the execution of this Agreement.

8.  **Careful Review of Agreement and Understanding Thereof.**    PLAINTIFF represents that he has CAREFULLY read this Agreement, and understands its terms and conditions without reservation.  PLAINTIFF acknowledges that he has had ample opportunity to consult with his legal counsel and has not relied on any representations or statements of Guardian, Berkshire or BLICOA, or their counsel with respect to the subject matter of this Agreement.  PLAINTIFF further understands that this is a FULL, COMPLETE, AND FINAL release and that PLAINTIFF is forever relinquishing and releasing any and all claims he has or may have against Guardian, Berkshire and BLICOA.  PLAINTIFF acknowledges that he understands the terms and provisions of the Agreement, and that the Agreement contains the entire agreement between the parties and supersedes any and all prior agreements, arrangements, or understandings between the parties relating to the subject matter.  PLAINTIFF further represents and acknowledges that he has taken into account not only the known and anticipated claims and defenses, but also unknown and unanticipated claims and defenses which he hereby recognizes and agrees are covered by this Agreement and the releases contained herein. PLAINTIFF further acknowledges that this Agreement has not been procured through coercion, duress, fraud or any other improper means.

9.  **Capacity.**  PLAINTIFF represents and warrants that he is of legal age, under no legal disability which would preclude him from entering into this Agreement and that he executes this Agreement freely, voluntarily, and with full knowledge of its terms and conditions.

10. **Severability.**  If any portion or portions of this Agreement may be held by a court of competent jurisdiction to conflict with any federal, state or local law, and as a result such portion

or portions are declared to be invalid and of no force or effect in such jurisdiction, all remaining

provisions of this Agreement shall otherwise remain in full force and effect and be construed as

if such invalid portion or portions has not been included herein.

11. **Governing Law.**  This Agreement shall be governed and construed by the laws of the

State of New York, without reference to choice of law principles.

12. **Counterparts.**  This Agreement may be signed in several counterparts, but all when

taken together shall constitute but a single document when executed by all parties.  This

Agreement shall not constitute the agreement of the parties until such time as it has been

executed by all parties.

13. **Binding effect.**  This Agreement shall be binding upon and shall inure to the benefit

of the parties, their respective heirs, beneficiaries, personal representatives, successors, and

assigns.

14. **Amendments.**  This Agreement and all documents and instruments executed in

connection herewith or in furtherance hereof may not be amended, modified or supplemented,

except by an instrument in writing signed by all parties hereto.

15. **Confidentiality of this Agreement.**   PLAINTIFF and his attorneys agree that they

will not divulge, reveal to or discuss with anyone or provide any materials or documents

concerning, other than as may be mutually agreed to by the parties in writing, any of the terms of

this Agreement, the content of the discussions and negotiations leading to the Agreement, and

the facts or allegations concerning the handling of the Claim.

PLAINTIFF and his attorneys further agree that from the date of the Agreement, and

forward, neither they nor their representatives shall initiate contact with the Trial Reporter, or

any proprietary database such as LEXIS, Nexus, or ATLA, or any newspaper, magazine,

television or radio station, or program or representative, agent or employee thereof, or any other public medium or institution regarding the Claim and/or the Suit nor shall they, in any case, where the contact is initiated by the media under any circumstances disclose the terms or amount of the settlement reached herein.

PLAINTIFF understands that this is an important and material part of the Agreement. If asked about the Suit, he shall respond that it has been either "concluded" or "settled" "to the satisfaction of all parties." He shall not provide any further information.

PLAINTIFF and his attorneys shall not suggest to other attorneys or the clients of other attorneys that there has been a settlement of the Suit such that it prompts a subpoena to either of them to produce this Agreement. Should either PLAINTIFF or his attorneys receive a subpoena, they shall immediately fax a copy of the subpoena to the following person so that Guardian and BLICOA have an opportunity to intervene and quash or otherwise oppose the subpoena:

Sean D. Quinn, Esq., Vice President & Lead Counsel
Berkshire Life Insurance Company of America
700 South Street, Pittsfield MA 01242
Fax: 413-395-4600

PLAINTIFF and his attorneys may disclose the information discussed in this paragraph only (a) upon receipt of a currently dated and executed authorization by Guardian and/or BLICOA, (b) upon receipt of a valid court order, (c) as reasonably necessary to his attorneys, accountants, tax advisors, financial planners and financial managers, and then only if such persons are expressly made aware of this confidentiality provision and agree to be bound hereby, notwithstanding being obligated by law or professional ethical standards to maintain the confidentiality of such information, (d) to immediate family members, and then only if such persons are expressly made aware of this confidentiality provision and agree to be bound hereby, or (e) as otherwise required by law.

Breach of the confidentiality provisions shall entitle Guardian and/or BLICOA to bring legal action to recover all remedies to which they are entitled, including, but not limited to, compensatory, indirect and consequential damages, rescission or reformation of the Agreement, attorneys' fees and costs.

16. **Further Assurances.**  Each party agrees to execute such further and additional documents, instruments and writing as may be necessary, proper, required, desirable or convenient for the purpose of fully effectuating the terms and provisions of this Agreement.

17. **Joint Preparation of Agreement**.  This Agreement shall not be construed against the party preparing it, but shall be construed as if it were prepared jointly by PLAINTIFF and Guardian and BLICOA, and any uncertainty or ambiguity, or both, shall not be interpreted against any person or entity.

**IN WITNESS WHEREOF**, the parties and their respective counsel have executed this

Agreement on the dates acknowledged below.

DATE:_____        _____
                                 STUART BITTERMAN

DATE:_____        Agreed as to form and confidentiality:
                                 SCHINDEL, FARMAN, LIPSIUS, GARDNER &
                                 RABINOVICH LLP

                                 By:    _____
                                        Ira Lipsius ESQ
                                 14 Penn Plaza, Suite 500
                                 New York, New York 10122
                                 (212) 563-1710
                                 *Counsel for Plaintiff Stuart Bitterman*

DATE:_____        THE GUARDIAN LIFE INSURANCE COMPANY
                                 OF AMERICA, BERKSHIRE LIFE INSURANCE
                                 COMPANY and BERKSHIRE LIFE INSURANCE
                                 COMPANY OF AMERICA

                                 By:    _____
                                        Jeffiey Yeager, Vice President
                                        Berkshire Life Insurance Company of
                                        America as Administrator for The Guardian
                                        Life Insurance Company of America

DATE:_____        Agreed as to form and confidentiality:
                                 McELROY, DEUTSCH, MULVANEY,&
                                 CARPENTER LLP

                                 By:    _____
                                        Steven P. Del Mauro
                                 1300 Mount Kimble Avenue
                                 P.O. Box 2075
                                 Morristown, New Jersey 07962-2075
                                 (973) 993-8100
                                 *Counsel for The Guardian Life Insurance Company*
                                 *of America, Berkshire Life Insurance Company and*
                                 *Berkshire Life Insurance Company of America*

## ACKNOWLEDGMENT

STATE OF NEW YORK          )
                                          : ss.:
COUNTY OF                     )

On this _____ day of _____, 2007, before me, the

undersigned, a Notary Public in and for said State, personally appeared MICHAEL D. TRUE,

personally known to me or proved to me on the basis of satisfactory evidence to be the individual

whose name is subscribed to the within instrument and acknowledged to me that he executed the

same in his capacity and that by his signature on the instrument, the individual, or the person

upon behalf of which the individual acted, executed the instrument.

_____
      NOTARY PUBLIC

### SETTLEMENT AGREEMENT AND COMPLETE RELEASE

This Settlement Agreement and Complete Release (the "Agreement") is entered into between Stuart Bitterman ("PLAINTIFF") of 217 Steven Pl. Woodmere NY 11598, and The Guardian Life Insurance Company of America ("Guardian") of 7 Hanover Square, New York, NY as successor-in-interest to Berkshire Life Insurance Company ("Berkshire") and Berkshire Life Insurance Company of America ("BLICOA") of 700 South Street, Pittsfield, Massachusetts, on the last date acknowledged below.  PLAINTIFF, Guardian, Berkshire and BLICOA shall hereinafter be collectively referred to as the "Parties."

### W I T N E S S E T H:

**WHEREAS,** on or about August 28, 1996 Berkshire issued Disability Income Policy No. HO337962  (the "Policy") to PLAINTIFF;

**WHEREAS,** Effective July 1, 2001, Berkshire merged into and with Guardian, Guardian became the successor-in-interest to the Policy, and BLICOA, a wholly-owned subsidiary of Guardian, assumed administration of the Policy and any claims and liabilities thereunder; and

**WHEREAS,** PLAINTIFF claims that on or about November 1, 2005 he became totally disabled under the Policy, and thereafter filed a claim for benefits (the "Claim") under the Policy alleging the disability (the "Disability"); and

> **Deleted: Policies**
> **Deleted: Policies**

**WHEREAS,** a dispute arose between PLAINTIFF, Guardian and BLICOA as to the Disability, the payment of benefits and the effectiveness of coverage under the Policy; and

> **Deleted: Policies**

**WHEREAS,** on or about October 19, 2007 PLAINTIFF filed an action against BLICOA in the Supreme Court of the State of New York, County of New York, Index No. 07113844 and

{10424750:1}

thereafter BLICOA removed the matter to the United States District Court for the Southern

District of New York Case No. 07 CV 11061 (the "Suit"); and

      WHEREAS, the Parties desire to settle and resolve their controversies under the Claim,

the Disability, the Suit and the Policy; and

      WHEREAS, the Parties intend that the full terms and conditions of the compromise and

settlement be set forth in this Agreement.

      NOW, THEREFORE, in consideration of the amounts to be paid hereunder and mutual

promises and covenants herein set forth, and for other good and valuable consideration, the

Parties AGREE as follows:

      1.   **Payment**.  Guardian, through its administrator BLICOA, shall within ten (10)

business days of its receipt of this Agreement signed by PLAINTIFF and acknowledged before a

Notary Public and signed as to form and confidentiality by PLAINTIFF's attorneys, Schindel,

Farman, Lipsius, Gardner & Rabinovich LLP, and its receipt of the documentation as provided

for in paragraph 3, herein, pay PLAINTIFF the total sum of ONE HUNDRED SEVENTY

THOUSAND AND NO/100 Dollars ($170,000.00), which PLAINTIFF accepts in full

consideration for signing the Agreement.  No representation is made by Guardian, Berkshire or

BLICOA regarding any potential tax consequences of the above-cited payment, and PLAINTIFF

agrees and understands that neither Guardian, Berkshire nor BLICOA have any responsibility for

any tax consequences of the settlement payment made herein.

      2.   **Release**.  PLAINTIFF, for himself, his heirs, representatives, assigns, and agents,

RELEASES, ACQUITS, AND FOREVER DISCHARGES Guardian, Berkshire and BLICOA

and their predecessors, representatives, parent companies, subsidiaries, affiliates, Policyholders,

officers, directors, employees, agents, brokers, attorneys, successors, and assigns, any and all

**Deleted:** parties

**Deleted:** parties

**Deleted:** parties

**Deleted:** McMahon, Martine & Gallagher,

**Deleted:** original Policies (

**Deleted:** referenced above) and of all other documents specified and required by this Agreement

other entities and person in privity with any of them, from all actions, causes of action, suits,

debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts,

controversies, agreements, promises, variances, trespasses, damages, judgments, extents,

executions, claims, claims, counterclaims, demands, debts, liabilities, actions and causes of

action, known or unknown, past, present, or future, liabilities and demands whatsoever, in law,

admiralty or equity, which against Guardian, Berkshire and/or BLICOA, PLAINTIFF,

PLAINTIFF's heirs, representatives, agents, executors, administrators, successors and assigns

ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter,

cause or thing whatsoever from the beginning of the world to the day of the date of this

Agreement, arising out of or relating to:  (1) the Policy and any and all claims (past, present, or

future) for coverage or benefits thereunder; (2) the Claim and Guardian's, Berkshire's, and

BLICOA's processing, investigation and/or evaluation thereof; (3) the Disability; (4) the Suit;

(5) all claims assertable against Guardian, Berkshire and/or BLICOA, including all contractual

and extra-contractual, federal or state, statutory or common law, causes of action, including,

without limitation, all claims for benefits, actual damages, treble damages, attorneys' fees and

costs, prejudgment and post-judgment interest, statutory penalties, and punitive and exemplary

damages and the like arising from the Suit and the Claim; (6) any claim for bad faith, fraud or

violation of New York Statutes and/or the New York Insurance Code arising from the Suit and

the Claim..

    3.  **Cancellation/Surrender of Policy.**  To the extent the Policy is or would be deemed

to be in effect as of the date of this Agreement, PLAINTIFF hereby surrenders the Policy, and

the Policy is hereby canceled and forever terminated.  PLAINTIFF understands and agrees that

no further benefits whatsoever will be payable under the Policy and that no rights or coverage

| Deleted: including, but not limited to, any and all claims, counterclaims, demands, debts, liabilities, actions and causes of action, known or unknown, past, present, or future, |
| Deleted: Policies |

| Deleted: ; and (7) any act, transaction, or occurrence through the date hereof. |

| Deleted: ¶ |

will exist under the Policy. The original Policy shall be returned to BLICOA as administrator for

Guardian, or, if lost, an affidavit to that effect shall be executed by PLAINTIFF. PLAINTIFF

further agrees that he will not seek to be insured under any Policy of insurance issued by

| Deleted: policy |
|---|

Guardian or any of its current subsidiaries (including but not limited to BLICOA) nor will he

permit anyone to enroll him for coverage or otherwise cause him to be covered under any

Guardian or BLICOA insurance Policy.

| Deleted: policy¶ |
|---|

| Deleted: parties |
|---|

    4.  **Dismissal**.  By executing this Agreement, the Parties authorize and instruct their

respective attorneys to file a Stipulation of Discontinuance with Prejudice of the Suit, with each

party to bear its own costs and attorneys' fees.

    5.  **Indemnification**.  PLAINTIFF warrants and represents that he is the sole owner of

the claims being released herein and has not assigned any such claims.  In that regard,

PLAINTIFF agrees to indemnify, defend, and hold Guardian, Berkshire and BLICOA harmless

from any claim that might be asserted by or through him against Guardian, Berkshire and/or

BLICOA relating to the Policy, or any other matter which is the subject of PLAINTIFF's release

herein, including, without limitation, reasonable attorneys' fees and costs of court.

| Deleted: parties |
|---|

    6.  **No Admission**.  The Parties to this Agreement expressly recognize that any

payments, compromises, or agreements made herein are not considered admission of any liability

or responsibility for, or of the correctness of, any of the claims or assertionm, which were or may

have been asserted by PLAINTIFF, or by Guardian, Berkshire and BLICOA but are made solely

for purposes of avoiding the costs and/or risks of further litigation.

    7.  **No Further Actions**.  PLAINTIFF agrees never to commence, prosecute, or cause to

be prosecuted against Guardian, Berkshire or BLICOA, any complaint, suit, or proceedings

based on the Policy, the Disability, the Claim, or the Suit. PLAINTIFF represents that he is

| Deleted: Policies |
|---|

unaware of any claim or cause of action he has against Guardian, Berkshire and/or BLICOA which is not released by this Agreement, Guardian, Berkshire or BLICOA agree never to commence, prosecute, or cause to be prosecuted against PLAINTIFF, any complaint, suit, or proceedings based on the Policy, the Disability, the Claim, or the Suit.

> **Deleted:** and DEFENDANT promises that he shall not
>
> **Deleted:** any civil action
>
> **Deleted:** Guardian, Berkshire and/or BLICOA in
>
> **Deleted:** future based on acts, transactions, or occurrences known or unknown to him at
>
> **Deleted:** date of
>
> **Deleted:** execution of this Agreement.

8.  **Careful Review of Agreement and Understanding Thereof.**     PLAINTIFF represents that he has CAREFULLY read this Agreement, and understands its terms and conditions without reservation  PLAINTIFF acknowledges that he has had ample opportunity to consult with his legal counsel and has not relied on any representations or statements of Guardian, Berkshire or BLICOA, or their counsel with respect to the subject matter of this Agreement.  PLAINTIFF further understands that this is a FULL, COMPLETE, AND FINAL release and that PLAINTIFF is forever relinquishing and releasing any and all claims he has or may have against Guardian, Berkshire and BLICOA.  PLAINTIFF acknowledges that he understands the terms and provisions of the Agreement, and that the Agreement contains the entire agreement between the Parties and supersedes any and all prior agreements, arrangements, or understandings between the Parties relating to the subject matter.  PLAINTIFF further represents and acknowledges that he has taken into account not only the known and anticipated claims and defenses, but also unknown and unanticipated claims and defenses which he hereby recognizes and agrees are covered by this Agreement and the releases contained herein  PLAINTIFF further acknowledges that this Agreement has not been procured through coercion, duress, fraud or any other improper means

> **Deleted:** parties
>
> **Deleted:** parties

9.  **Capacity.**  PLAINTIFF represents and warrants that he is of legal age, under no legal disability which would preclude him from entering into this Agreement and that he executes this Agreement freely, voluntarily, and with full knowledge of its terms and conditions.

10. **Severability.**  If any portion or portions of this Agreement may be held by a court of competent jurisdiction to conflict with any federal, state or local law, and as a result such portion or portions are declared to be invalid and of no force or effect in such jurisdiction, all remaining provisions of this Agreement shall otherwise remain in full force and effect and be construed as if such invalid portion or portions has not been included herein.

11. **Governing Law.**  This Agreement shall be governed and construed by the laws of the State of New York, without reference to choice of law principles.

12. **Counterparts.**  This Agreement may be signed in several counterparts, but all when taken together shall constitute but a single document when executed by all Parties.  This Agreement shall not constitute the agreement of the Parties until such time as it has been executed by all Parties.

13. **Binding effect.**  This Agreement shall be binding upon and shall inure to the benefit of the Parties, their respective heirs, beneficiaries, personal representatives, successors, and assigns.

14. **Amendments.**  This Agreement and all documents and instruments executed in connection herewith or in furtherance hereof may not be amended, modified or supplemented, except by an instrument in writing signed by all Parties hereto.

15. **Confidentiality of this Agreement.**  The Parties and their attorneys agree that they will not divulge, reveal to or discuss with anyone or provide any materials or documents concerning, other than as may be mutually agreed to by the Parties in writing, any documents contained in the underwriting file, the claims file or any other file, whether that file be hard copy or on computer, of Guardian, Berkshire or BLICOA regarding PLAINTIFF, the Policy, the Claim or the Disability, any of the terms of this Agreement, the content of the discussions and

| Deleted: parties |
| Deleted: parties |
| Deleted: parties |
| Deleted: parties |
| Deleted: parties |
| Deleted: PLAINTIFF |
| Deleted: his |
| Deleted: parties |

negotiations leading to the Agreement, and the facts or allegations concerning the handling of the

Claim.

The Parties and their attorneys further agree that from the date of the Agreement, and

forward, neither they nor their representatives shall initiate contact with the Trial Reporter, or

any proprietary database such as LEXIS, Nexus, or ATLA, or any newspaper, magazine,

television or radio station, or program or representative, agent or employee thereof, or any other

public medium or institution, or any insurer, representative of any insurer, any database

maintained by insurers or to which insurers provide information, regarding the Claim, the Suit or

the Disability, nor shall they, in any case, where the contact is initiated by the media, or any

insurer, under any circumstances disclose the terms or amount of the settlement reached herein.

The Parties understands that this is an important and material part of the Agreement. If

asked about the Suit, the Parties shall respond that it has been either "concluded" or "settled" "to

the satisfaction of all Parties." The Parties shall not provide any further information.

The Parties and their attorneys shall not suggest to other attorneys, the clients of other

attorneys, or other insurers that there has been a settlement of the Suit such that it prompts a

subpoena to produce this Agreement, or any filed maintained by any party regarding the Claim,

the Suit or the Disability..

Should either PLAINTIFF and/or his attorneys receive a subpoena, they/he shall

immediately fax a copy of the subpoena to the following person so that Guardian and BLICOA

have an opportunity to intervene and quash or otherwise oppose the subpoena:

_____Sean D. Quinn, Esq., Vice President & Lead Counsel
Berkshire Life Insurance Company of America
700 South Street, Pittsfield MA 01242
Fax: 413-395-4600

Should Guardian, Berkshire or BLICOA, or its attorneys receive a subpoena, they/it/he

| Deleted: PLAINTIFF |
| Deleted: his |
| Deleted: and/or |
| Deleted: PLAINTIFF |
| Deleted: he |
| Deleted: parties." He |
| Deleted: PLAINTIFF and his |
| Deleted: or |
| Deleted: either of them to |
| Deleted: . |
| Formatted: p5, Tabs: 0.5", Left |

{10424750:1}                    7

shall immediately fax a copy of the subpoena to the following person so that PLAINTIFF shall

have an opportunity to intervene and quash or otherwise oppose the subpoena:

> Ira S. Lipsius
> Schindel, Farman, Lipsius, Gardner & Rabinovich, LLP
> 14 Penn Plaza
> New York, NY 10122
> Fax: 212-695-6602

PLAINTIFF and his attorneys may disclose the information discussed in this paragraph

only (a) upon receipt of a currently dated and executed authorization by Guardian and/or

BLICOA, (b) upon receipt of a valid court order, (c) as reasonably necessary to his attorneys,

accountants, tax advisors, financial planners and financial managers, and then only if such

persons are expressly made aware of this confidentiality provision and agree to be bound hereby,

notwithstanding being obligated by law or professional ethical standards to maintain the

confidentiality of such information, (d) to immediate family members, and then only if such

persons are expressly made aware of this confidentiality provision and agree to be bound hereby,

or (e) as otherwise required by law.

Breach of the confidentiality provisions shall entitle Guardian and/or BLICOA to bring

legal action to recover all remedies to which they are entitled, including, but not limited to,

compensatory, indirect and consequential damages, rescission or reformation of the Agreement,

attorneys' fees and costs.

Guardian, Berkshire and BLICOA and their attorneys may disclose the information

discussed in this paragraph only (a) upon receipt of a currently dated and executed authorization

by PLAINTIFF (b) upon receipt of a valid court order, (c) as reasonably necessary to their

attorneys, accountants, tax advisors, financial planners and financial managers, and then only if

such persons are expressly made aware of this confidentiality provision and agree to be bound

hereby, notwithstanding being obligated by law or professional ethical standards to maintain the confidentiality of such information, (d) as otherwise required by law.

Breach of the confidentiality provisions shall entitle PLAINTIFF to bring legal action to recover all remedies to which they he is entitled, including, but not limited to, compensatory, indirect and consequential damages, rescission or reformation of the Agreement, attorneys' fees and costs.

16. **Further Assurances.**  Each party agrees to execute such further and additional documents, instruments and writing as may be necessary, proper, required, desirable or convenient for the purpose of fully effectuating the terms and provisions of this Agreement.

**Deleted:** <#>Joint Preparation of Agreement  This Agreement shall not be construed against the party preparing it, but shall be construed as if it were prepared jointly by PLAINTIFF and Guardian and BLICOA, and any uncertainty or ambiguity, or both, shall not be interpreted against any person or entity.¶

Deleted: parties

**IN WITNESS WHEREOF**, the Parties and their respective counsel have executed this

Agreement on the dates acknowledged below.

DATE:_____          _____
                                STUART BITTERMAN

DATE:_____          Agreed as to form and confidentiality:
                                SCHINDEL, FARMAN, LIPSIUS, GARDNER &
                                RABINOVICH LLP

                                By:    _____
                                       Ira S. Lipsius ESQ
                                14 Penn Plaza, Suite 500
                                New York, New York 10122
                                (212) 563-1710
                                *Counsel for Plaintiff Stuart Bitterman*

DATE:_____          THE GUARDIAN LIFE INSURANCE COMPANY
                                OF AMERICA, BERKSHIRE LIFE INSURANCE
                                COMPANY and BERKSHIRE LIFE INSURANCE
                                COMPANY OF AMERICA

                                By:    _____
                                       Jeffrey Yeager, Vice President
                                       Berkshire Life Insurance Company of
                                       America as Administrator for The Guardian
                                       Life Insurance Company of America

DATE:_____          Agreed as to form and confidentiality:
                                McELROY, DEUTSCH, MULVANEY,&
                                CARPENTER LLP

                                By:    _____
                                       Steven P. Del Mauro
                                1300 Mount Kimble Avenue
                                P.O. Box 2075
                                Morristown, New Jersey 07962-2075
                                (973) 993-8100
                                *Counsel for The Guardian Life Insurance Company*
                                *of America, Berkshire Life Insurance Company and*
                                *Berkshire Life Insurance Company of America*

{10424750:1}                    10

11

## ACKNOWLEDGMENT

STATE OF NEW YORK        )
                                           : ss.:
COUNTY OF                      )

On this _____ day of _____, 2007, before me, the

undersigned, a Notary Public in and for said State, personally appeared ~~MICHAEL D. TRUE~~,

personally known to me or proved to me on the basis of satisfactory evidence to be the individual

whose name is subscribed to the within instrument and acknowledged to me that he executed the

same in his capacity and that by his signature on the instrument, the individual, or the person

upon behalf of which the individual acted, executed the instrument.

_____
      NOTARY PUBLIC

## SETTLEMENT AGREEMENT AND COMPLETE RELEASE

This Settlement Agreement and Complete Release (the "Agreement") is entered into between Stuart Bitterman ("PLAINTIFF") of 217 Steven Pl. Woodmere NY 11598, and The Guardian Life Insurance Company of America ("Guardian") of 7 Hanover Square, New York, NY as successor-in-interest to Berkshire Life Insurance Company ("Berkshire") and Berkshire Life Insurance Company of America ("BLICOA") of 700 South Street, Pittsfield, Massachusetts, on the last date acknowledged below. PLAINTIFF, Guardian, Berkshire and BLICOA shall hereinafter be collectively referred to as the "Parties."

### W I T N E S S E T H:

**WHEREAS,** on or about August 28, 1996 Berkshire issued Disability Income Policy No. HO337962 (the "Policy") to PLAINTIFF;

**WHEREAS,** Effective July 1, 2001, Berkshire merged into and with Guardian, Guardian became the successor-in-interest to the Policy, and BLICOA, a wholly-owned subsidiary of Guardian, assumed administration of the Policy and any claims and liabilities thereunder; and

**WHEREAS,** PLAINTIFF claims that on or about November 1, 2005 he became totally disabled under the Policy, and thereafter filed a claim for benefits (the "Claim") under the Policy alleging the disability (the "Disability"); and

**WHEREAS,** a dispute arose between PLAINTIFF, Guardian and BLICOA as to the Disability, the payment of benefits and the effectiveness of coverage under the Policy; and

**WHEREAS,** on or about October 19, 2007 PLAINTIFF filed an action against BLICOA in the Supreme Court of the State of New York, County of New York, Index No. 07113844 and

thereafter BLICOA removed the matter to the United States District Court for the Southern District of New York Case No. 07 CV 11061 (the "Suit"); and

**WHEREAS,** the Parties desire to settle and resolve their controversies under the Claim, the Disability, the Suit and the Policy; and

**WHEREAS,** the Parties intend that the full terms and conditions of the compromise and settlement be set forth in this Agreement.

**NOW, THEREFORE,** in consideration of the amounts to be paid hereunder and mutual promises and covenants herein set forth, and for other good and valuable consideration, the Parties AGREE as follows:

1. **Payment.** Guardian, through its administrator BLICOA, shall within ten (10) business days of its receipt of this Agreement signed by PLAINTIFF and acknowledged before a Notary Public and signed as to form and confidentiality by PLAINTIFF's attorneys, Schindel, Farman, Lipsius, Gardner & Rabinovich LLP, and its receipt of the documentation as provided for in paragraph 3, herein, pay PLAINTIFF the total sum of ONE HUNDRED SEVENTY THOUSAND AND NO/100 Dollars ($170,000.00), which PLAINTIFF accepts in full consideration for signing the Agreement. No representation is made by Guardian, Berkshire or BLICOA regarding any potential tax consequences of the above-cited payment, and PLAINTIFF agrees and understands that neither Guardian, Berkshire nor BLICOA have any responsibility for any tax consequences of the settlement payment made herein.

2. **Release.** PLAINTIFF, for himself, his heirs, representatives, assigns, and agents, RELEASES, ACQUITS, AND FOREVER DISCHARGES Guardian, Berkshire and BLICOA and their predecessors, representatives, parent companies, subsidiaries, affiliates, Policyholders, officers, directors, employees, agents, brokers, attorneys, successors, and assigns, any and all

other entities and person in privity with any of them, from all actions, causes of action, suits,

debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts,

controversies, agreements, promises, variances, trespasses, damages, judgments, extents,

executions, claims, claims, counterclaims, demands, debts, liabilities, actions and causes of

action, known or unknown, past, present, or future, liabilities and demands whatsoever, in law,

admiralty or equity, which against Guardian, Berkshire and/or BLICOA, PLAINTIFF,

PLAINTIFF's heirs, representatives, agents, executors, administrators, successors and assigns

ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter,

cause or thing whatsoever from the beginning of the world to the day of the date of this

Agreement, arising out of or relating to:  (1) the Policy and any and all claims (past, present, or

future) for coverage or benefits thereunder; (2) the Claim and Guardian's, Berkshire's, and

BLICOA's processing, investigation and/or evaluation thereof; (3) the Disability; (4) the Suit;

(5) all claims assertable against Guardian, Berkshire and/or BLICOA, including all contractual

and extra-contractual, federal or state, statutory or common law, causes of action, including,

without limitation, all claims for benefits, actual damages, treble damages, attorneys' fees and

costs, prejudgment and post-judgment interest, statutory penalties, and punitive and exemplary

damages and the like arising from the Suit and the Claim; (6) any claim for bad faith, fraud or

violation of New York Statutes and/or the New York Insurance Code arising from the Suit and

the Claim..

    3.  **Cancellation/Surrender of Policy.**  To the extent the Policy is or would be deemed

to be in effect as of the date of this Agreement, PLAINTIFF hereby surrenders the Policy, and

the Policy is hereby canceled and forever terminated.  PLAINTIFF understands and agrees that

no further benefits whatsoever will be payable under the Policy and that no rights or coverage

will exist under the Policy. The original Policy shall be returned to BLICOA as administrator for Guardian, or, if lost, an affidavit to that effect shall be executed by PLAINTIFF. PLAINTIFF further agrees that he will not seek to be insured under any Policy of insurance issued by Guardian or any of its current subsidiaries (including but not limited to BLICOA) nor will he permit anyone to enroll him for coverage or otherwise cause him to be covered under any Guardian or BLICOA insurance Policy

4. **Dismissal.** By executing this Agreement, the Parties authorize and instruct their respective attorneys to file a Stipulation of Discontinuance with Prejudice of the Suit, with each party to bear its own costs and attorneys' fees.

5. **Indemnification.** PLAINTIFF warrants and represents that he is the sole owner of the claims being released herein and has not assigned any such claims. In that regard, PLAINTIFF agrees to indemnify, defend, and hold Guardian, Berkshire and BLICOA harmless from any claim that might be asserted by or through him against Guardian, Berkshire and/or BLICOA relating to the Policy, or any other matter which is the subject of PLAINTIFF's release herein, including, without limitation, reasonable attorneys' fees and costs of court.

6. **No Admission.** The Parties to this Agreement expressly recognize that any payments, compromises, or agreements made herein are not considered admission of any liability or responsibility for, or of the correctness of, any of the claims or assertionm, which were or may have been asserted by PLAINTIFF, or by Guardian, Berkshire and BLICOA but are made solely for purposes of avoiding the costs and/or risks of further litigation.

7. **No Further Actions**. PLAINTIFF agrees never to commence, prosecute, or cause to be prosecuted against Guardian, Berkshire or BLICOA, any complaint, suit, or proceedings based on the Policy, the Disability, the Claim, or the Suit. PLAINTIFF represents that he is

unaware of any claim or cause of action he has against Guardian, Berkshire and/or BLICOA which is not released by this Agreement. Guardian, Berkshire or BLICOA agree never to commence, prosecute, or cause to be prosecuted against PLAINTIFF, any complaint, suit, or proceedings based on the Policy, the Disability, the Claim, or the Suit.

8. **Careful Review of Agreement and Understanding Thereof.** PLAINTIFF represents that he has CAREFULLY read this Agreement, and understands its terms and conditions without reservation. PLAINTIFF acknowledges that he has had ample opportunity to consult with his legal counsel and has not relied on any representations or statements of Guardian, Berkshire or BLICOA, or their counsel with respect to the subject matter of this Agreement. PLAINTIFF further understands that this is a FULL, COMPLETE, AND FINAL release and that PLAINTIFF is forever relinquishing and releasing any and all claims he has or may have against Guardian, Berkshire and BLICOA. PLAINTIFF acknowledges that he understands the terms and provisions of the Agreement, and that the Agreement contains the entire agreement between the Parties and supersedes any and all prior agreements, arrangements, or understandings between the Parties relating to the subject matter. PLAINTIFF further represents and acknowledges that he has taken into account not only the known and anticipated claims and defenses, but also unknown and unanticipated claims and defenses which he hereby recognizes and agrees are covered by this Agreement and the releases contained herein. PLAINTIFF further acknowledges that this Agreement has not been procured through coercion, duress, fraud or any other improper means.

9. **Capacity.** PLAINTIFF represents and warrants that he is of legal age, under no legal disability which would preclude him from entering into this Agreement and that he executes this Agreement freely, voluntarily, and with full knowledge of its terms and conditions.

10. **<u>Severability</u>.** If any portion or portions of this Agreement may be held by a court of competent jurisdiction to conflict with any federal, state or local law, and as a result such portion or portions are declared to be invalid and of no force or effect in such jurisdiction, all remaining provisions of this Agreement shall otherwise remain in full force and effect and be construed as if such invalid portion or portions has not been included herein.

11. **<u>Governing Law</u>.** This Agreement shall be governed and construed by the laws of the State of New York, without reference to choice of law principles.

12. **<u>Counterparts</u>.** This Agreement may be signed in several counterparts, but all when taken together shall constitute but a single document when executed by all Parties. This Agreement shall not constitute the agreement of the Parties until such time as it has been executed by all Parties.

13. **<u>Binding effect</u>.** This Agreement shall be binding upon and shall inure to the benefit of the Parties, their respective heirs, beneficiaries, personal representatives, successors, and assigns.

14. **<u>Amendments</u>.** This Agreement and all documents and instruments executed in connection herewith or in furtherance hereof may not be amended, modified or supplemented, except by an instrument in writing signed by all Parties hereto.

15. **<u>Confidentiality of this Agreement</u>.** The Parties and their attorneys agree that they will not divulge, reveal to or discuss with anyone or provide any materials or documents concerning, other than as may be mutually agreed to by the Parties in writing, any documents contained in the underwriting file, the claims file or any other file, whether that file be hard copy or on computer, of Guardian, Berkshire or BLICOA regarding PLAINTIFF, the Policy, the Claim or the Disability, any of the terms of this Agreement, the content of the discussions and

negotiations leading to the Agreement, and the facts or allegations concerning the handling of the Claim.

The Parties and their attorneys further agree that from the date of the Agreement, and forward, neither they nor their representatives shall initiate contact with the Trial Reporter, or any proprietary database such as LEXIS, Nexus, or ATLA, or any newspaper, magazine, television or radio station, or program or representative, agent or employee thereof, or any other public medium or institution, or any insurer, representative of any insurer, any database maintained by insurers or to which insurers provide information,  regarding the Claim the Suit or the Disability, nor shall they, in any case, where the contact is initiated by the media, or any insurer,  under any circumstances disclose the terms or amount of the settlement reached herein.

The Parties understands that this is an important and material part of the Agreement. If asked about the Suit, the Parties shall respond that it has been either "concluded" or "settled" "to the satisfaction of all Parties." The Parties shall not provide any further information.

The Parties and their attorneys shall not suggest to other attorneys, the clients of other attorneys, or other insurers that there has been a settlement of the Suit such that it prompts a subpoena to produce this Agreement, or any filed maintained by any party regarding the Claim, the Suit or the Disability..

Should either PLAINTIFF and/or his attorneys receive a subpoena, they/he shall immediately fax a copy of the subpoena to the following person so that Guardian and BLICOA have an opportunity to intervene and quash or otherwise oppose the subpoena:

Sean D. Quinn, Esq., Vice President & Lead Counsel
Berkshire Life Insurance Company of America
700 South Street, Pittsfield MA 01242
Fax:  413-395-4600

Should Guardian, Berkshire or BLICOA, or its attorneys receive a subpoena, they/it/he

shall immediately fax a copy of the subpoena to the following person so that PLAINTIFF shall

have an opportunity to intervene and quash or otherwise oppose the subpoena:

> Ira S. Lipsius
> Schindel, Farman, Lipsius, Gardner & Rabinovich, LLP
> 14 Penn Plaza
> New York, NY 10122
> Fax: 212-695-6602

PLAINTIFF and his attorneys may disclose the information discussed in this paragraph

only (a) upon receipt of a currently dated and executed authorization by Guardian and/or

BLICOA, (b) upon receipt of a valid court order, (c) as reasonably necessary to his attorneys,

accountants, tax advisors, financial planners and financial managers, and then only if such

persons are expressly made aware of this confidentiality provision and agree to be bound hereby,

notwithstanding being obligated by law or professional ethical standards to maintain the

confidentiality of such information, (d) to immediate family members, and then only if such

persons are expressly made aware of this confidentiality provision and agree to be bound hereby,

or (e) as otherwise required by law.

Breach of the confidentiality provisions shall entitle Guardian and/or BLICOA to bring

legal action to recover all remedies to which they are entitled, including, but not limited to,

compensatory, indirect and consequential damages, rescission or reformation of the Agreement,

attorneys' fees and costs.

Guardian, Berkshire and BLICOA and their attorneys may disclose the information

discussed in this paragraph only (a) upon receipt of a currently dated and executed authorization

by PLAINTIFF (b) upon receipt of a valid court order, (c) as reasonably necessary to their

attorneys, accountants, tax advisors, financial planners and financial managers, and then only if

such persons are expressly made aware of this confidentiality provision and agree to be bound

hereby, notwithstanding being obligated by law or professional ethical standards to maintain the confidentiality of such information, (d) as otherwise required by law.

Breach of the confidentiality provisions shall entitle PLAINTIFF to bring legal action to recover all remedies to which they he is entitled, including, but not limited to, compensatory, indirect and consequential damages, rescission or reformation of the Agreement, attorneys' fees and costs.

16. **Further Assurances.**  Each party agrees to execute such further and additional documents, instruments and writing as may be necessary, proper, required, desirable or convenient for the purpose of fully effectuating the terms and provisions of this Agreement.

**IN WITNESS WHEREOF**, the Parties and their respective counsel have executed this

Agreement on the dates acknowledged below.


DATE:_____        _____
                                    STUART BITTERMAN


DATE:_____        Agreed as to form and confidentiality:
                                    SCHINDEL, FARMAN, LIPSIUS, GARDNER &
                                    RABINOVICH LLP

                                    By:    _____
                                           Ira S. Lipsius ESQ
                                    14 Penn Plaza, Suite 500
                                    New York, New York 10122
                                    (212) 563-1710
                                    *Counsel for Plaintiff Stuart Bitterman*


DATE:_____        THE GUARDIAN LIFE INSURANCE COMPANY
                                    OF AMERICA, BERKSHIRE LIFE INSURANCE
                                    COMPANY and BERKSHIRE LIFE INSURANCE
                                    COMPANY OF AMERICA

                                    By:    _____
                                           Jeffrey Yeager, Vice President
                                           Berkshire Life Insurance Company of
                                           America as Administrator for The Guardian
                                           Life Insurance Company of America


DATE:_____        Agreed as to form and confidentiality:
                                    McELROY, DEUTSCH, MULVANEY,&
                                    CARPENTER LLP

                                    By:    _____
                                           Steven P. Del Mauro
                                    1300 Mount Kimble Avenue
                                    P.O. Box 2075
                                    Morristown, New Jersey 07962-2075
                                    (973) 993-8100
                                    *Counsel for The Guardian Life Insurance Company*
                                    *of America, Berkshire Life Insurance Company and*
                                    *Berkshire Life Insurance Company of America*

## **ACKNOWLEDGMENT**

STATE OF NEW YORK   )
                                : ss.:
COUNTY OF               )

On this _____ day of _____, 2007, before me, the

undersigned, a Notary Public in and for said State, personally appeared MICHAEL D. TRUE,

personally known to me or proved to me on the basis of satisfactory evidence to be the individual

whose name is subscribed to the within instrument and acknowledged to me that he executed the

same in his capacity and that by his signature on the instrument, the individual, or the person

upon behalf of which the individual acted, executed the instrument.


_____
    NOTARY PUBLIC

# EXHIBIT J

## Steven P. Del Mauro

**From:** Steven P. Del Mauro
**Sent:** Monday, March 10, 2008 10:40 AM
**To:** 'Ira S. Lipsius'
**Cc:** Edward K. Kimball (Edward_Kimball@berkshirelife.com)
**Subject:** RE: 4060.0001; Bitterman

This letter responds to your communication on Friday, March 7, and to confirm our telephone conversation immediately upon receipt. First, let me state at the outset that we did not reach any agreement regarding the time period by which the settlement agreement would be finalized for execution by our clients. The only agreement we reached concerned the time period by which settlement funds would be paid following our receipt of the executed agreement. While it is our practice to as quickly as possible finalize settlement documents, there are occasions when we cannot complete the task as promptly as we would like given the demands upon our time by the court, adversaries, clients and yes, even family. Certainly, we should proceed in a reasonable way.

Attached please find a redlined and original revised release agreement for your review. Please let us know if this is acceptable. Suffice it to say, we will not wire funds to your firm's account until an agreement is signed, nor will we pay any additional compensation to what we agreed. Thank you for your kind courtesy in this regard.

S

       **Steven P. Del Mauro**
       **McElroy, Deutsch, Mulvaney&Carpenter,LLP**
       **973 425-8206**
       **973 425-0161 (fax)**
       **sdelmauro@mdmc-law.com**

THE INFORMATION CONTAINED IN THIS MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE.

This message may be an attorney-client communication. and as such is privileged and confidential. If the reader of this message is not the intended recipient or any agent responsible for delivering it to the intended recipient. you are hereby notified that you have received this document in error. and that any review, dissemination. distribution or copying of this message is strictly prohibited. If you have received this communication in error. please notify us immediately by reply e-mail message or by telephone and delete the original message from your e-mail system and/or computer database. Thank you

      -----Original Message-----
      **From:** Ira S. Lipsius [mailto:iral@sfl-legal.com]
      **Sent:** Friday, March 07, 2008 9:18 AM
      **To:** Steven P. Del Mauro
      **Subject:** 4060.0001; Bitterman

      Steve:

      Tuesday will be one month since we settled the Bitterman/Berkshire matter.

      If you will recall, the settlement was premised upon the matter be completed immediately. In fact, because our agreement provided for quick payment, we had only asked the court for two weeks to consummate the settlement. The court, at its suggestion, issued the 30 day notice.

      You finally forwarded a rough draft agreement on Monday of this week. The very next day I replied with the corrections and additions. Four days have gone by without a response.

      I understand that the bottleneck is your client's issue, this, however does not excuse the delay.

Please, speak to your client to resolve the matter

While working out the terms, as a sign of good faith, please have your client wire the funds to our firm's IOLA account

You can obtain routing instructions by calling Ms. Levine at 212 563 1710 ext. 202

I believe that it would be appropriate for your client to add statutory interest of 9% for one month, $1,275, to the settlement. If your client is a "class act," as you claim, the interest should be provided without objection.

I would like to state, I have no complaints against you

Ira S. Lipsius
Schindel, Farman, Lipsius, Gardner & Rabinovich, LLP
14 Penn Plaza
New York, NY 10122
212-563-1710 ext. 202
fax: 212-695-6602

# EXHIBIT K

**Steven P. Del Mauro**

**From:** Ira S. Lipsius [iral@sfl-legal.com]

**Sent:** Monday, March 10, 2008 1:00 PM

**To:** Steven P Del Mauro

**Subject:** 4060.0001; Bitterman

I have reviewed your client's proposed changes.

I have one major issue and a number of minor issues.

The major problem:

The confidentiality agreement must be reciprocal. On one hand, your client insists on a detailed list as to whom my client cannot make contact and your client refuses to be restricted to any specifics. I have great concern that your client, by eliminating "insurers, et al", is looking to communicate (as it has done in the past) with other insurers and databases. If your client insists upon keeping its laundry list of prohibited contacts in the agreement, my client's laundry list must remain in the agreement. More troublesome is the restriction, or lack thereof, of disclosure. It is troublesome that your client is not willing to insert a restriction upon itself that is not identical to the restriction it wanted placed upon Dr. Bitterman. I am afraid of your client's definition of "as reasonably necessary to the conduct of its business" and "routine business functions and procedures." It appears your client is leaving itself open to report this anyone and everyone it may please

It was understood that my client wanted a confidentiality provision which protected it from your client spreading mis-information (your client may claim it is information). This agreement appears to be a carte blanche to your client's to do whatever it pleases under the guise of "routine business functions and procedures."

If we cannot resolve the above issue, it does not pay to waste my time on the other issues.

Please advise.

Ira

---

**From:** Steven P. Del Mauro [mailto:sdelmauro@mdmc-law.com]
**Sent:** Monday, March 10, 2008 10:40 AM
**To:** Ira S. Lipsius
**Cc:** Edward K. Kimball (Edward_Kimball@berkshirelife.com)
**Subject:** RE: 4060.0001; Bitterman

This letter responds to your communication on Friday, March 7, and to confirm our telephone conversation immediately upon receipt. First, let me state at the outset that we did not reach any agreement regarding the time period by which the settlement agreement would be finalized for execution by our clients. The only agreement we reached concerned the time period by which settlement funds would be paid following our receipt of the executed agreement. While it is our practice to as quickly as possible finalize settlement documents, there are occasions when we cannot complete the task as promptly as we would like given the demands upon our time by the court, adversaries, clients and yes, even family. Certainly, we should proceed in a reasonable way.

Attached please find a redlined and original revised release agreement for your review. Please let us know if this is acceptable. Suffice it to say, we will not wire funds to your firm's account until an agreement is signed, nor will we pay any additional compensation to what we agreed. Thank you for your kind courtesy in this regard.

S.

Steven P. Del Mauro
McElroy, Deutsch, Mulvaney&Carpenter,LLP
973 425-8206
973 425-0161 (fax)
sdelmauro@mdmc-law.com

**THE INFORMATION CONTAINED IN THIS MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE.**

This message may be an attorney-client communication. and as such is privileged and confidential  If the reader of this message is not the intended recipient or any agent responsible for delivering it to the intended recipient. you are hereby notified that you have received this document in error. and that any review. dissemination. distribution or copying of this message is strictly prohibited  If you have received this communication in error. please notify us immediately by reply e-mail message or by telephone and delete the original message from your e-mail system and/or computer database  Thank you

-----Original Message-----
**From:** Ira S. Lipsius [mailto:iral@sfl-legal.com]
**Sent:** Friday, March 07, 2008 9:18 AM
**To:** Steven P. Del Mauro
**Subject:** 4060.0001; Bitterman

Steve:

Tuesday will be one month since we settled the Bitterman/Berkshire matter.

If you will recall, the settlement was premised upon the matter be completed immediately.  In fact, because our agreement provided for quick payment, we had only asked the court for two weeks to consummate the settlement.  The court, at its suggestion, issued the 30 day notice.

You finally forwarded a rough draft agreement on Monday of this week. The very next day I replied with the corrections and additions. Four days have gone by without a response.

I understand that the bottleneck is your client's issue, this, however does not excuse the delay.

Please, speak to your client to resolve the matter.

While working out the terms, as a sign of good faith, please have your client wire the funds to our firm's IOLA account

You can obtain routing instructions by calling Ms. Levine at 212 563 1710 ext. 202.

I believe that it would be appropriate for your client to add statutory interest of 9%  for one month, $1,275, to the settlement   If your client is a "class act," as you claim, the interest should be provided without objection.

I would like to state, I have no complaints against you

Ira S. Lipsius
Schindel, Farman, Lipsius, Gardner & Rabinovich, LLP
14 Penn Plaza
New York, NY 10122
212-563-1710 ext. 202
fax: 212-695-6602

3/10/2008

# EXHIBIT L

## Bridgette Kliesh

**From:** Steven P. Del Mauro
**Sent:** Thursday, June 05, 2008 11:24 AM
**To:** Bridgette Kliesh
**Subject:** FW: bitterman


Steven P. Del Mauro
McElroy, Deutsch, Mulvaney&Carpenter,LLP
973 425-8206
973 425-0161 (fax)
sdelmauro@mdmc-law.com

THE INFORMATION CONTAINED IN THIS MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE.

This message may be an attorney-client communication. and as such is privileged and confidential  If the reader of this message is not the intended recipient or any agent responsible for delivering it to the intended recipient. you are hereby notified that you have received this document in error. and that any review. dissemination. distribution or copying of this message is strictly prohibited  If you have received this communication in error. please notify us immediately by reply e-mail message or by telephone and delete the original message from your e-mail system and/or computer database  Thank you

-----Original Message-----
**From:** Steven P. Del Mauro
**Sent:** Tuesday, March 11, 2008 12:50 PM
**To:** Ira Lipsius (ilipsius@sfl-legal.com)
**Cc:** Edward K. Kimball (Edward_Kimball@berkshirelife.com)
**Subject:** bitterman

Attached are the revised agreements that contain our discussions yesterday  Please be advised that my client is out of the office today, and hence did not see the revised agreements. Nonetheless, can you tell me if these are acceptable to you Thank you, S

Steven P. Del Mauro
McElroy, Deutsch, Mulvaney&Carpenter,LLP
973 425-8206
973 425-0161 (fax)
sdelmauro@mdmc-law.com

THE INFORMATION CONTAINED IN THIS MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE.

This message may be an attorney-client communication. and as such is privileged and confidential  If the reader of this message is not the intended recipient or any agent responsible for delivering it to the intended recipient. you are hereby notified that you have received this document in error. and that any review. dissemination. distribution or copying of this message is strictly prohibited  If you have received this communication in error. please notify us immediately by reply e-mail message or by telephone and delete the original message from your e-mail system and/or computer database  Thank you

## SETTLEMENT AGREEMENT AND COMPLETE RELEASE

This Settlement Agreement and Complete Release (the "Agreement") is entered into

between Stuart Bitterman ("PLAINTIFF") of 217 Steven Pl. Woodmere NY 11598, and The

Guardian Life Insurance Company of America ("Guardian") of 7 Hanover Square, New York,

NY as successor-in-interest to Berkshire Life Insurance Company ("Berkshire") and Berkshire

Life Insurance Company of America ("BLICOA") of 700 South Street, Pittsfield, Massachusetts,

on the last date acknowledged below. PLAINTIFF, Guardian, Berkshire and BLICOA shall

hereinafter be collectively referred to as the "Parties."

### W I T N E S S E T H:

**WHEREAS,** on or about August 28, 1996 Berkshire issued Disability Income Policy No.

HO337962 (the "Policy") to PLAINTIFF;

**WHEREAS,** Effective July 1, 2001, Berkshire merged into and with Guardian, Guardian

became the successor-in-interest to the Policy, and BLICOA, a wholly-owned subsidiary of

Guardian, assumed administration of the Policy and any claims and liabilities thereunder; and

**WHEREAS,** PLAINTIFF claims that on or about November 1, 2005 he became totally

disabled under the Policy, and thereafter filed a claim for benefits (the "Claim") under the Policy

alleging the disability (the "Disability"); and

**WHEREAS,** a dispute arose between PLAINTIFF, Guardian and BLICOA as to the

Disability, the payment of benefits and the effectiveness of coverage under the Policy; and

**WHEREAS,** on or about October 19, 2007, PLAINTIFF filed an action against BLICOA

in the Supreme Court of the State of New York, County of New York, Index No. 07113844 and

thereafter BLICOA removed the matter to the United States District Court for the Southern

District of New York Case No. 07 CV 11061 (the "Suit"); and

**WHEREAS,** the Parties desire to settle and resolve their controversies under the Claim,

the Disability, the Suit and the Policy; and

**WHEREAS,** the Parties intend that the full terms and conditions of the compromise and

settlement be set forth in this Agreement.

**NOW, THEREFORE,** in consideration of the amounts to be paid hereunder and mutual

promises and covenants herein set forth, and for other good and valuable consideration, the

Parties AGREE as follows:

1. **Payment.**  Guardian, through its administrator BLICOA, shall within ten (10)

business days of its receipt of this Agreement signed by PLAINTIFF and acknowledged before a

Notary Public and signed as to form and confidentiality by PLAINTIFF'S attorneys, Schindel,

Farman, Lipsius, Gardner & Rabinovich LLP, and its receipt of the documentation as provided

for in paragraph 3, herein, pay PLAINTIFF the total sum of ONE HUNDRED SEVENTY

THOUSAND AND NO/100 Dollars ($170,000.00), which PLAINTIFF accepts in full

consideration for signing the Agreement.  No representation is made by Guardian, Berkshire or

BLICOA regarding any potential tax consequences of the above-cited payment, and PLAINTIFF

agrees and understands that neither Guardian, Berkshire nor BLICOA have any responsibility for

any tax consequences of the settlement payment made herein.

2. **Release.**   PLAINTIFF, for himself, his heirs, representatives, assigns, and agents,

RELEASES, ACQUITS, AND FOREVER DISCHARGES Guardian, Berkshire and BLICOA

and their predecessors, representatives, parent companies, subsidiaries, affiliates, Policyholders,

officers, directors, employees, agents, brokers, attorneys, successors, and assigns, any and all

2

other entities and person in privity with any of them, from all actions, causes of action, suits,

debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts,

controversies, agreements, promises, variances, trespasses, damages, judgments, extents,

executions, claims, counterclaims, demands, debts, liabilities, actions and causes of action,

known or unknown, past, present, or future, liabilities and demands whatsoever, in law,

admiralty or equity, which against Guardian, Berkshire and/or BLICOA, PLAINTIFF,

PLAINTIFF's heirs, representatives, agents, executors, administrators, successors and assigns

ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter,

cause or thing whatsoever from the beginning of the world to the day of the date of this

Agreement, including, but not limited to, any and all claims, counterclaims, demands, debts,

liabilities, actions and causes of action, known or unknown, past, present, or future, arising out of

or relating to: (1) the Policy and any and all claims (past, present, or future) for coverage or

benefits thereunder; (2) the Claim and Guardian's, Berkshire's, and BLICOA's processing,

investigation and/or evaluation thereof; (3) the Disability; (4) the Suit; (5) all claims assertable

against Guardian, Berkshire and/or BLICOA, including all contractual and extra-contractual,

federal or state, statutory or common law, causes of action, including, without limitation, all

claims for benefits, actual damages, treble damages, attorneys' fees and costs, prejudgment and

post-judgment interest, statutory penalties, and punitive and exemplary damages and the like

arising from the Suit, the Policy and the Claim; (6) any claim for bad faith, fraud or violation of

New York Statutes and/or the New York Insurance Code; and (7) any act, transaction, or

occurrence through the date hereof.

     3.  **Cancellation/Surrender of Policy.**  To the extent the Policy is or would be deemed

to be in effect as of the date of this Agreement, PLAINTIFF hereby surrenders the Policy, and

the Policy is hereby canceled and forever terminated. PLAINTIFF understands and agrees that

no further benefits whatsoever will be payable under the Policy and that no rights or coverage

will exist under the Policy. The original Policy shall be returned to BLICOA as administrator for

Guardian, or, if lost, an affidavit to that effect shall be executed by PLAINTIFF. PLAINTIFF

further agrees that he will not seek to be insured under any Policy of insurance issued by

Guardian or any of its current subsidiaries (including but not limited to BLICOA) nor will he

permit anyone to enroll him for coverage or otherwise cause him to be covered under any

Guardian or BLICOA insurance Policy

4. **Dismissal.** By executing this Agreement, the Parties authorize and instruct their

respective attorneys to file a Stipulation of Discontinuance with Prejudice of the Suit, with each

party to bear its own costs and attorneys' fees.

5. **Indemnification.** PLAINTIFF warrants and represents that he is the sole owner of

the claims being released herein and has not assigned any such claims. In that regard,

PLAINTIFF agrees to indemnify, defend, and hold Guardian, Berkshire and BLICOA harmless

from any claim that might be asserted by or through him against Guardian, Berkshire and/or

BLICOA relating to the Policy, or any other matter which is the subject of PLAINTIFF's release

herein, including, without limitation, reasonable attorneys' fees and costs of court.

6. **No Admission.** The Parties to this Agreement expressly recognize that any

payments, compromises, or agreements made herein are not considered admission of any liability

or responsibility for, or of the correctness of, any of the claims or assertions, which were or may

have been asserted by PLAINTIFF, or by Guardian, Berkshire and BLICOA but are made solely

for purposes of avoiding the costs and/or risks of further litigation.

4

7.  **No Further Actions**.  PLAINTIFF agrees never to commence, prosecute, or cause to be prosecuted against Guardian, Berkshire or BLICOA, any complaint, suit, or proceedings based on the Policy, the Disability, the Claim, or the Suit.  PLAINTIFF represents that he is unaware of any claim or cause of action he has against Guardian, Berkshire and/or BLICOA which is not released by this Agreement.  Guardian, Berkshire or BLICOA agree never to commence, prosecute, or cause to be prosecuted against PLAINTIFF, any complaint, suit, or proceedings based on the Policy, the Disability, the Claim, or the Suit.

8.  **Careful Review of Agreement and Understanding Thereof.**  PLAINTIFF represents that he has CAREFULLY read this Agreement, and understands its terms and conditions without reservation.  PLAINTIFF acknowledges that he has had ample opportunity to consult with his legal counsel and has not relied on any representations or statements of Guardian, Berkshire or BLICOA, or their counsel with respect to the subject matter of this Agreement.  PLAINTIFF further understands that this is a FULL, COMPLETE, AND FINAL release and that PLAINTIFF is forever relinquishing and releasing any and all claims he has or may have against Guardian, Berkshire and BLICOA.  PLAINTIFF acknowledges that he understands the terms and provisions of the Agreement, and that the Agreement contains the entire agreement between the Parties and supersedes any and all prior agreements, arrangements, or understandings between the Parties relating to the subject matter.  PLAINTIFF further represents and acknowledges that he has taken into account not only the known and anticipated claims and defenses, but also unknown and unanticipated claims and defenses which he hereby recognizes and agrees are covered by this Agreement and the releases contained herein.  PLAINTIFF further acknowledges that this Agreement has not been procured through coercion, duress, fraud or any other improper means.

5

9.  **Capacity.**  PLAINTIFF represents and warrants that he is of legal age, under no legal disability which would preclude him from entering into this Agreement and that he executes this Agreement freely, voluntarily, and with full knowledge of its terms and conditions.

10. **Severability.**  If any portion or portions of this Agreement may be held by a court of competent jurisdiction to conflict with any federal, state or local law, and as a result such portion or portions are declared to be invalid and of no force or effect in such jurisdiction, all remaining provisions of this Agreement shall otherwise remain in full force and effect and be construed as if such invalid portion or portions has not been included herein.

11. **Governing Law.**  This Agreement shall be governed and construed by the laws of the State of New York, without reference to choice of law principles.

12. **Counterparts.**  This Agreement may be signed in several counterparts, but all when taken together shall constitute but a single document when executed by all Parties.  This Agreement shall not constitute the agreement of the Parties until such time as it has been executed by all Parties.

13. **Binding effect.**  This Agreement shall be binding upon and shall inure to the benefit of the Parties, their respective heirs, beneficiaries, personal representatives, successors, and assigns.

14. **Amendments.**  This Agreement and all documents and instruments executed in connection herewith or in furtherance hereof may not be amended, modified or supplemented, except by an instrument in writing signed by all Parties hereto.

15. **Confidentiality of this Agreement.**  The Parties and their attorneys agree that they will not divulge, reveal to or discuss with anyone or provide any materials or documents concerning, other than as may be mutually agreed to by the Parties in writing, any documents

contained in the underwriting file, the claims file or any other file, whether that file be hard copy

or on computer, of Guardian, Berkshire or BLICOA regarding PLAINTIFF, the Policy, the

Claim or the Disability, any of the terms of this Agreement, the content of the discussions and

negotiations leading to the Agreement, and the facts or allegations concerning the handling of the

Claim.

The Parties and their attorneys further agree that from the date of the Agreement, and

forward, neither they nor their representatives shall initiate contact with the Trial Reporter, or

any proprietary database such as LEXIS, Nexus, or ATLA, or any newspaper, magazine,

television or radio station, or program or representative, agent or employee thereof, or any other

public medium or  any insurer other than a reinsurer, representative of any insurer or to which

insurer provides information regarding the Suit, the claim or the disability, nor shall they, in any

case, where the contact is initiated by the media or any insurer other than a reinsurer, under any

circumstances disclose the terms or amount of the settlement reached herein.

The Parties understand that this is an important and material part of the Agreement. If

asked about the Suit, the Parties shall respond that it has been either "concluded" or "settled" "to

the satisfaction of all Parties." The Parties shall not provide any further information.

The Parties and their attorneys shall not suggest to other attorneys, the clients of other

attorneys, or other parties  that there has been a settlement of the Suit such that it prompts a

subpoena to produce this Agreement, or any filed maintained by any party regarding the Claim,

the Policy, the Suit or the Disability.  The Parties understand that nothing in this Agreement shall

be interpreted to require either of the Parties to refuse to comply with any subpoena issued by a

court of competent jurisdiction.

Should either PLAINTIFF and/or his attorneys receive a subpoena regarding the Policy,

7

the Claim, the Disability, the Suit, and/or this Agreement they/he shall immediately fax a copy of

the subpoena to the following person so that Guardian and BLICOA have an opportunity to

intervene and quash or otherwise oppose the subpoena:

> Sean D. Quinn, Esq., Vice President & Lead Counsel
> Berkshire Life Insurance Company of America
> 700 South Street, Pittsfield MA 01242
> Fax: 413-395-4600

Should Guardian, Berkshire or BLICOA, or its attorneys receive a subpoena regarding

the Policy, the Claim, the Disability, the Suit, and/or this Agreement, they/it/he shall

immediately fax a copy of the subpoena to the following person so that PLAINTIFF shall have

an opportunity to intervene and quash or otherwise oppose the subpoena:

> Ira S. Lipsius
> Schindel, Farman, Lipsius, Gardner & Rabinovich, LLP
> 14 Penn Plaza
> New York, NY 10122
> Fax: 212-695-6602

PLAINTIFF and his attorneys may disclose the information discussed in this paragraph

only (a) upon receipt of a currently dated and executed authorization by Guardian and/or

BLICOA, (b) upon receipt of a valid court order, (c) as reasonably necessary to his attorneys,

accountants, tax advisors, financial planners and financial managers, and then only if such

persons are expressly made aware of this confidentiality provision and agree to be bound hereby,

notwithstanding being obligated by law or professional ethical standards to maintain the

confidentiality of such information, (d) to immediate family members, and then only if such

persons are expressly made aware of this confidentiality provision and agree to be bound hereby,

or (e) as otherwise required by law.

Breach of the confidentiality provisions shall entitle Guardian and/or BLICOA to bring

legal action to recover all remedies to which they are entitled, including, but not limited to,

compensatory, indirect and consequential damages, rescission or reformation of the Agreement, attorneys' fees and costs.

Guardian, Berkshire and BLICOA and their attorneys may disclose the information discussed in this paragraph only (a) upon receipt of a currently dated and executed authorization by PLAINTIFF (b) upon receipt of a valid court order, (c) as reasonably necessary to its attorneys, accountants, auditors, actuaries, and such other persons in furtherance of the routine business functions and procedures of Guardian, Berkshire and BLICO and then only if such person(s) are expressly made aware of the confidentiality provision and agree to be bound thereby, notwithstanding being obligated by law or professional ethical standards to maintain confidentiality of said information; or (d) as is otherwise required by law.

Breach of the confidentiality provisions shall entitle PLAINTIFF to bring legal action to recover all remedies to which he is entitled, including, but not limited to, compensatory, indirect and consequential damages, rescission or reformation of the Agreement, attorneys' fees and costs.

16. **Further Assurances.** Each party agrees to execute such further and additional documents, instruments and writing as may be necessary, proper, required, desirable or convenient for the purpose of fully effectuating the terms and provisions of this Agreement.

17. **Joint Preparation of Agreement**. This Agreement shall not be construed against the party preparing it, but shall be construed as if it were prepared jointly by PLAINTIFF and Guardian and BLICOA, and any uncertainty or ambiguity, or both, shall not be interpreted against any person or entity.

9

**IN WITNESS WHEREOF**, the Parties and their respective counsel have executed this

Agreement on the dates acknowledged below.


DATE:_____        _____

                              STUART BITTERMAN


DATE:_____        Agreed as to form and confidentiality:
                              SCHINDEL, FARMAN, LIPSIUS, GARDNER &
                              RABINOVICH LLP

                              By:    _____
                                     Ira S. Lipsius ESQ
                              14 Penn Plaza, Suite 500
                              New York, New York 10122
                              (212) 563-1710
                              *Counsel for Plaintiff Stuart Bitterman*


DATE:_____        THE GUARDIAN LIFE INSURANCE COMPANY
                              OF AMERICA, BERKSHIRE LIFE INSURANCE
                              COMPANY and BERKSHIRE LIFE INSURANCE
                              COMPANY OF AMERICA

                              By:    _____
                                     Jeffrey Yeager, Vice President
                                     Berkshire Life Insurance Company of
                                     America as Administrator for The Guardian
                                     Life Insurance Company of America

DATE:_____        Agreed as to form and confidentiality:
                              McELROY, DEUTSCH, MULVANEY,&
                              CARPENTER LLP

                              By:    _____
                                     Steven P. Del Mauro
                              1300 Mount Kimble Avenue
                              P.O. Box 2075
                              Morristown, New Jersey 07962-2075
                              (973) 993-8100
                              *Counsel for The Guardian Life Insurance Company*
                              *of America, Berkshire Life Insurance Company and*
                              *Berkshire Life Insurance Company of America*

## **ACKNOWLEDGMENT**

STATE OF NEW YORK   )
                         ) ss.:
COUNTY OF              )

On this _____ day of _____, 2007, before me, the

undersigned, a Notary Public in and for said State, personally appeared STUART BITTERMAN,

personally known to me or proved to me on the basis of satisfactory evidence to be the individual

whose name is subscribed to the within instrument and acknowledged to me that he executed the

same in his capacity and that by his signature on the instrument, the individual, or the person

upon behalf of which the individual acted, executed the instrument.


_____
    NOTARY PUBLIC

11

## ACKNOWLEDGMENT

STATE OF NEW YORK    )
                      ) ss.:
COUNTY OF            )

    Personally appeared the above-named _____ who made oath that the execution of this document is his/her own free act and deed in his/her capacity as _____ of Guardian Life Insurance Company of America as successor-in-interest to Berkshire Life Insurance Company this ___ day of _____ , 2007.

GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA

Date: _____           By:_____
                             Name:
                             Title:

                             _____
                             Notary Public of _____
                             My Commission Expires_____

## ACKNOWLEDGMENT

STATE OF NEW YORK    )
                          ) ss.:
COUNTY OF               )

Personally appeared the above-named _____ who made oath that the execution of this document is his/her own free act and deed in his/her capacity as _____ of Berkshire Life Insurance Company of America this ___ day of _____ , 2007.

BERKSHIRE LIFE INSUARNCE
COMPANY OF AMERICA

Date: _____

By:_____
Name:
Title:

_____
Notary Public of _____
My Commission Expires_____

13

# EXHIBIT M

**Steven P. Del Mauro** .

| | |
|---|---|
| **From:** | Steven P. Del Mauro |
| **Sent:** | Thursday, March 13, 2008 2:21 PM |
| **To:** | 'Ira S. Lipsius' |
| **Cc:** | Edward K. Kimball (Edward_Kimball@berkshirelife.com) |
| **Subject:** | RE: Bitterman |

The revisions are acceptable. Can you finalize the formatting of the release and send to me for execution. Also confirm the payee of the check and you firm's tax id if you are also a payee. Thank you

Steven P. Del Mauro
McElroy, Deutsch, Mulvaney & Carpenter,  LLP
973 425-8206
973 425-0161 (fax)
sdelmauro@mdmc-law.com

THE INFORMATION CONTAINED IN THIS MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND
CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE.
This message may be an attorney-client communication, and as such is privileged and
confidential.  If the reader of this message is not the intended recipient or any agent
responsible for delivering it to the intended recipient, you are hereby notified that you
have received this document in error, and that any review, dissemination, distribution or
copying of this message is strictly prohibited.  If you have received this communication
in error, please notify us immediately by reply e-mail message or by telephone and delete
the original message from your e-mail system and/or computer database.  Thank you.


-----Original Message-----
From: Ira S. Lipsius [mailto:iral@sfl-legal.com]
Sent: Wednesday, March 12, 2008 6:37 PM
To: Steven P. Del Mauro
Subject: Bitterman

 <<481197.DOC>>

I made a few changes, non of which, I trust should be problematic.

I expressed my concerns regarding other claims that are unknown.  I have therefore added a represrntation by both parties regarding other policies of insurance.

I also expanded the language with regard to whom Berkshire may provide information I believe it reflects the spirit of the deal.

Thank you

# EXHIBIT N

**Steven P. Del Mauro**

| | |
|---|---|
| **From:** | Steven P Del Mauro |
| **Sent:** | Thursday, March 13, 2008 4:44 PM |
| **To:** | 'Ira S. Lipsius' |
| **Cc:** | Edward_Kimball@berkshirelife.com; blevine@sfl-legal.com |
| **Subject:** | RE: 4060 2001: Bitterman |

Thank you Ira. S

Steven P. Del Mauro
McElroy, Deutsch, Mulvaney & Carpenter, LLP
973 425-8206
973 425-0161 (fax)
sdelmauro@mdmc-law.com

THE INFORMATION CONTAINED IN THIS MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND
CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE.
This message may be an attorney-client communication, and as such is privileged and
confidential. If the reader of this message is not the intended recipient or any agent
responsible for delivering it to the intended recipient, you are hereby notified that you
have received this document in error, and that any review, dissemination, distribution or
copying of this message is strictly prohibited. If you have received this communication
in error, please notify us immediately by reply e-mail message or by telephone and delete
the original message from your e-mail system and/or computer database. Thank you.


-----Original Message-----
From: Ira S. Lipsius [mailto:iral@sfl-legal.com]
Sent: Thursday, March 13, 2008 4:45 PM
To: Steven P. Del Mauro
Cc: Edward_Kimball@berkshirelife.com; blevine@sfl-legal.com
Subject: 4060.2001: Bitterman

Steve:


I have forwarded the agreement to my secretary to finalize. You should have it before
day's end. I will have Dr. Bitterman execute the agreement and will forward an executed
copy to you. Please hold the document in escrow until receipt of the funds by this firm.

The check should be made payable to Dr. Stuart Bitterman and Schindel, Farman, Lipsius,
Gardiner & Rabinovich LLP

Dr. Bitterman's social security # is in your client's possession. Our firm's employer ID
# is 13-385-8209.

Thank you for your cooperation and professionalism.

Ira S. Lipsius
Schindel, Farman, Lipsius, Gardner & Rabinovich, LLP
14 Penn Plaza
New York, NY 10122
212-563-1710 ext. 202
fax: 212-695-6602


-----Original Message-----
From: Steven P. Del Mauro [mailto:sdelmauro@mdmc-law.com]
Sent: Thursday, March 13, 2008 2:21 PM
To: Ira S. Lipsius
Cc: Edward K. Kimball (Edward_Kimball@berkshirelife.com)

1

Subject: RE: Bitterman

The revisions are acceptable. Can you finalize the formatting of the release and send to me for execution. Also confirm the payee of the check and you firm's tax id if you are also a payee. Thank you

Steven P. Del Mauro
McElroy, Deutsch, Mulvaney & Carpenter, LLP
973 425-8206
973 425-0161 (fax)
sdelmauro@mdmc-law.com

THE INFORMATION CONTAINED IN THIS MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE. This message may be an attorney-client communication, and as such is privileged and confidential.  If the reader of this message is not the intended recipient or any agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by reply e-mail message or by telephone and delete the original message from your e-mail system and/or computer database.  Thank you.


-----Original Message-----
From: Ira S. Lipsius [mailto:iral@sfl-legal.com]
Sent: Wednesday, March 12, 2008 6:37 PM
To: Steven P. Del Mauro
Subject: Bitterman

 <<481197.DOC>>

I made a few changes, non of which, I trust should be problematic.

I expressed my concerns regarding other claims that are unknown.  I have therefore added a represrntation by both parties regarding other policies of insurance.

I also expanded the language with regard to whom Berkshire may provide information I believe it reflects the spirit of the deal.

Thank you

2

# EXHIBIT O

**Steven P. Del Mauro**

| | |
|---|---|
| **From:** | Ira S. Lipsius [iral@sfl-legal.com] |
| **Sent:** | Monday, March 24, 2008 1:09 PM |
| **To:** | Steven P. Del Mauro |
| **Cc:** | Cheryl Lipsius |
| **Subject:** | 4060 2001: Bitterman |

Steve:

I have forwarded the proposed agreement to my client. He has reviewed the agreement and advised that the settlement is not acceptable to him.

The current Court order provides "counsel for any party may apply by letter for restoration of the action to the calendar . . . if the settlement is not effected, in which event the action will be restored."

We will apply for restoration to the calendar.

I regret we were unable to finalize the settlement.

Please call me to discuss.

Ira S. Lipsius
Schindel, Farman, Lipsius, Gardner & Rabinovich, LLP
14 Penn Plaza
New York, NY 10122
212-563-1710 ext. 202
fax: 212-695-6602